1 IVY T. NGO (CA State Bar No. 249860)
  ngo1@fdazar.com
2 **FRANKLIN D. AZAR & ASSOCIATES, P.C.**
  14426 East Evans Avenue
3 Aurora, CO 80014
  Telephone:     (303) 757-3300
4 Facsimile:     (720) 213-5131

5

6                **UNITED STATES DISTRICT COURT**
                 **NORTHERN DISTRICT OF CALIFORNIA**
7

8  BRENDAN LUNDY, AN INDIVIDUAL      Case No.:
   AND COLORADO RESIDENT, AND
9  MYRIAH WATKINS, AN INDIVIDUAL     **CLASS ACTION COMPLAINT**
   AND COLORADO RESIDENT,
10                                   JURY TRIAL DEMANDED
                 Plaintiffs,
11
   vs.
12                                        (1) UCL – Unlawful Business Practice
   FACEBOOK, INC., GOOGLE, LLC,           (2) UCL – Unfair Business Practice
13 ALPHABET, INC., and APPLE INC.,        (3) UCL – Fraudulent/Deceptive Business
                                              Practice
14               Defendants.              (4) Intrusion upon Seclusion
                                          (5) Violation of California's Constitutional
15                                            Right to Privacy
                                          (6) Intentional Misrepresentation and
16                                            Omission
                                          (7) Unjust Enrichment
17                                        (8) Violation of CIPA
                                          (9) Violation of California's Right to
18                                            Publicity Statute
                                          (10)    Violation of California's Consumer
19                                            Legal Remedies Act (CLRA)
                                          (11)    Violation of Colorado Consumer
20                                            Protection Act
21

22

23

24

25

26

27

28

# Table of Contents

PRELIMINARY STATEMENT ....................................................................................................... 4

JURISDICTION AND VENUE ...................................................................................................... 5

PARTIES ......................................................................................................................................... 5

   A.  Plaintiffs ................................................................................................................................. 5

   B.  Defendants ............................................................................................................................. 7

FACTUAL BACKGROUND .......................................................................................................... 8

   A.  Google Specifically Represented to Users That They Had the Ability to Opt-Out of Location Tracking on Their Android Devices .................................................................................... 8

   B.  Apple Specifically Represented to Users That They Had the Ability to Opt-Out of Location Tracking on Their iOS Devices ......................................................................................... 10

   C.  Facebook Specifically Represented to Users That They Had the Ability to Opt-Out of Location Tracking by Turning Location Services Off on Their Android and/or iOS Devices ........................... 11

   D.  Facebook Received and Stored Location Data from Its Users' Devices Without Permission (and in Contravention of Its Users' Wishes) ............................................................................... 13

   E.  Facebook Profited Enormously from Tracking and Storing Users' Location Data ...................... 15

   F.  Tracking Users' Location Without Permission (and in Contravention of Their Wishes) Violates the Federal Trade Commission Act as a Deceptive Trade Practice ........................................... 16

   G.  Defendant Google and Facebook's History of Poor Protection of User Data ............................ 17

      1.   Google's Poor Protection of User Data ........................................................................... 17

      2.   Facebook's Poor Protection of User Data ....................................................................... 18

   H.  Apple Was Aware, Or Should Have Been Aware, of Facebook's Improper Collection of User Data Due to Its Data-Sharing Partnership with Facebook ..................................................... 19

CLASS ALLEGATIONS ............................................................................................................... 21

CLAIMS ALLEGED ON BEHALF OF ALL CLASSES ............................................................. 26

   First Claim for Relief ................................................................................................................. 26

      Violation of California's Unfair Competition Law ("UCL")-Unlawful Business Practices  (Cal. Bus. & Prof. Code §17200, *et seq.*) ............................................................................. 26

   Second Claim for Relief ............................................................................................................. 28

   Violation of California's UCL – Unfair Business Practices (Cal. Bus. & Prof. Code § 17200, *et seq.*) 28

   Third Claim for Relief ................................................................................................................ 31

      Violation of California's UCL – Fraudulent/Deceptive Business Practices (Cal. Bus. & Prof. Code § 17200, et seq.) ............................................................................................................. 31

   Fourth Claim for Relief .............................................................................................................. 32

      Intrusion Upon Seclusion ....................................................................................................... 32

   Fifth Claim for Relief ................................................................................................................. 34

**Violation of California's Constitutional Right to Privacy** ..................................... 34

**Sixth Claim for Relief** ............................................................................................... 35

**Intentional Misrepresentation and Omission** ....................................................... 35

**Seventh Claim for Relief** .......................................................................................... 35

**Unjust Enrichment** .................................................................................................. 35

**Eighth Claim for Relief** ............................................................................................ 36

**Violation of CIPA (Cal. Pen. Code §§ 630, et seq.)** ................................................ 36

**Ninth Claim for Relief Against Defendant Facebook Only** ..................................... 36

**Violation of California's Right of Publicity Statute (Cal. Cv. Code § 3344, et seq.)** .......... 36

**Tenth  Claim for Relief Against Defendants Google and Apple Only** ..................... 39

**Violation of California's Consumer Legal Remedies Act ("CLRA") – Unfair and Deceptive Acts and Practices (Cal. Civ. Code §§ 1750, *et seq.*)** .................................................................. 39

**CLAIMS ALLEGED ON BEHALF OF THE COLORADO SUB-CLASS ONLY** ................................. 41

**Eleventh  Claim for Relief** ........................................................................................ 41

**Violation of Colorado Consumer Protection Act (Colo. Rev. Stat 6-1-101, et seq.)** ....................... 41

**PRAYER FOR RELIEF** ................................................................................................ 44

**JURY TRIAL DEMAND** .............................................................................................. 44

**CLASS ACTION COMPLAINT**

Plaintiffs Brendan Lundy and Myriah Watkins ("Plaintiffs"), on behalf of themselves and all others similarly situated, allege the following against Defendants Facebook, Inc. ("Facebook"), Google, LLC ("Google"), Alphabet, Inc. ("Alphabet"), and Apple Inc. ("Apple") (collectively, "Defendants"), based on personal knowledge as to Plaintiffs and Plaintiffs' own acts and on information and belief as to all other matters based upon, *inter alia*, the investigation conducted by and through Plaintiffs' undersigned counsel.

**PRELIMINARY STATEMENT**

1.      This case involves Facebook's clandestine access to, and collection of, detailed location data from its users' mobile and/or tablet devices who have never explicitly opted in, or specifically opted out of, Facebook's access to location tracking, aided and abetted by various misrepresentations and omissions by operating system developers Google and Apple.

2.      Just this summer, Chief Justice John Roberts observed that "a cell phone – almost a 'feature of human anatomy[]' – tracks nearly exactly the movements of its owner . . . . A cell phone faithfully follows its owner beyond public thoroughfares and into private residences, doctor's offices, political headquarters, and other potentially revealing locales," and when a third-party has access to the information stored on one's cell phone, that entity "achieves near perfect surveillance, as if it had attached an ankle monitor to the phone's user." *Carpenter v. United States*, 138 S. Ct. 2206 at 2218 (2018).

3.      The overwhelming majority of mobile and tablet devices ("Devices") run on one of two operating systems: Android or iOS, which were developed by Google and Apple, respectively.

4.      Google and Apple represented to Android and iOS users that through certain settings on their Devices, they had the ability to expressly opt-in or opt-out of allowing specific third-party applications access to their Devices' location tracking, including the Facebook application.

5.      Google, Apple, and Facebook categorically represented to users that, absent users' explicit opt-in to the Facebook application's access to location tracking from their Devices, Google and/or Apple would prevent Facebook from accessing and storing their location information.

6.      However, Facebook accessed and stored user' detailed location information-through their Devices' location services – even when they did not affirmatively agree to, or expressly opt

**CLASS ACTION COMPLAINT**

out of, Facebook accessing and storing their location data.  Facebook used this location information to significantly benefit itself – to the tune of millions of dollars from increased advertising revenue – at the expense of its users' privacy rights.

## JURISDICTION AND VENUE

7.     This court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs, there are more than 100 proposed class members, and Defendants are citizens of this state and at least one proposed class member is a citizen of a foreign state. In addition, the Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

8.     Venue is proper under 28 U.S.C. § 1391(c) because Defendants are corporations that do business in and are subject to personal jurisdiction in this District. Venue is also proper because a substantial part of the events or omissions giving rise to the claims in this action occurred in or emanated from this District, including the decisions made by Defendants' governance and management personnel that led to the misrepresentations and invasions of privacy. Further, Facebook, Google, and Apple's terms of service governing Users all over the world provide for venue in the Northern District of California for all claims arising out of Plaintiffs' relationships with Facebook, Google, and/or Apple.

## PARTIES

**A. Plaintiffs**

9.     Plaintiff Brendan Lundy is, and at all relevant times was, a citizen of the State of Colorado. Since at least 2014 and continuously to the present, Plaintiff Lundy has owned and used an Apple iPhone6, powered by iOS, with the third-party Facebook application downloaded onto the device.

10.     While using the iOS mobile device, Plaintiff Lundy never expressly opted-in to granting Facebook access of his location data through his Location Services settings. Based on Plaintiff Lundy never expressly opting-in the Facebook's access of Location Tracking on his iOS mobile device, Facebook's Settings represented that his "Location History" was set to "off."

Nevertheless, and unbeknownst to Plaintiff, Facebook continued to collect location information from his device, and thereby was able to store his location information and exploit it.

11.     Plaintiff Lundy downloaded a copy of the information obtained by Facebook, specific to him, by using Facebook's "Download Your Information" feature.  Plaintiff Lundy downloaded his "location_history" folder, which revealed no data. However, when Plaintiff Lundy reviewed the "security_and_login_information" folder, including the "login_protection_data" and "where_you're_logged_in" files, Plaintiff Lundy was shocked to find that Facebook had access to and had obtained and stored his location information.  Plaintiff Lundy saw that Facebook had obtained and stored multiple entries of specific location information, providing his location by latitude and longitude, on a specific date, at a specific time.  For example, when viewing this data, Plaintiff Lundy saw that Facebook had recorded and stored his location information, including but not limited to, where he lives, places he has traveled for work and vacation, even down to the road he frequently cycles on. This location information went back to 2014.   After viewing this voluminous location data detailing his location on specific dates, at specific times, continuously updating over the years, Plaintiff Lundy felt that his privacy was significantly violated by the collection of detailed location information without his consent.

12.     Plaintiff Myriah Watkins is, and at all relevant times was, a citizen of the State of Colorado. Since at least 2013 and continuously to the present, Plaintiff has owned and used a mobile device powered by Android's operating system, developed by Google.  Plaintiff has the third-party Facebook application downloaded onto her Android mobile device. Since 2013, Plaintiff has owned and used a Samsung Galaxy S6, Samsung Galaxy S7, and Samsung Galaxy S8. She currently owns and uses a Samsung Galaxy S8.

13.     While using each of these devices, Plaintiff Watkins expressly attempted to limit Facebook's access to her location data through her Application Manager, App Permissions settings – toggling the Facebook application's location tracking permissions to "off." Plaintiff Watkin's Facebook page represented that her "Location History" was set to "off," reflecting the permissions given on her mobile device.  Nevertheless, and unbeknownst to Plaintiff, Facebook continued to

access her location information from her device, and thereby was able to collect her location information and exploit it.

14. Plaintiff Watkins downloaded a copy of the information obtained by Facebook using Facebook's "Download Your Information" feature. Plaintiff Watkins downloaded her "location_history" folder, which revealed no data. However, when Plaintiff Watkins viewed the "security_and_login_information" folder, including the "login_protection_data" and "where_you're_logged_in" files, Plaintiff Watkins was shocked to find that Facebook had access to and had obtained and stored her location information. Plaintiff Watkins saw that Facebook had obtained and stored multiple entries of detailed location information, providing her specific location, by latitude and longitude, on specific dates, at specific times. For example, when viewing this data, Plaintiff Watkins saw that Facebook had recorded and stored her location information, including but not limited to, where she lives, where she works, places she has traveled for vacation, and places she frequently visits. This location information went back to 2015. After viewing this voluminous location data detailing her location on specific dates, at specific times, continuously updating over the years, Plaintiff Watkins felt that her privacy was significantly violated by the collection of detailed location information without her consent.

**B. Defendants**

15. Defendant Facebook, Inc. ("Facebook") is a Delaware corporation with its principal executive offices located at 1601 Willow Road, Menlo Park, California 94025.

16. Defendant Google, LLC ("Google") is a Delaware corporation with its principal headquarters in Mountain View, California.

17. Defendant Alphabet, Inc. ("Alphabet") is a Delaware corporation with its principal headquarters in Mountain View, California. Alphabet is a public holding company formed in a corporate reorganization by Google. Through the corporate restructuring, Defendant Google is now a direct, wholly owned subsidiary of Defendant Alphabet.

18. Defendant Apple Inc. ("Apple") is a California corporation with its principal place of business in Cupertino, California.

**CLASS ACTION COMPLAINT**

19.     At all relevant times, Defendants were and are engaged in business in San Mateo County and throughout the U.S. and world.

## FACTUAL BACKGROUND

**A.     Google Specifically Represented to Users That They Had the Ability to Opt-Out of Location Tracking on Their Android Devices**

20.     At all relevant times, Google adopted a Privacy Policy, covering all Google products and services, which purported to help users "understand what information we collect, why we collect it, and how you can update, manage, export, and delete your information.[1]

21.     Additionally, Google's Privacy Policy demonstrated its understanding of the significant position of trust that users placed with Google and, in light of that trust, the importance of users' ability to control their private information: "[w]hen you use our services, ***you're trusting us with your information***. We understand this is a ***big responsibility*** and work hard to protect your information and ***put you in control.***[2]

22.     In its Privacy Policy, under the "Your location information" section, Google specifically represented to users that they can control Google's collection of their location information, providing that "[t]he types of location data we collect ***depend in part on your device and account settings***. For example, ***you can turn your Android device's location on or off using the device's settings app.***[3]

23.     Next, under the "Managing, reviewing, and updating our information" section in its Privacy Policy, Google represented to users that they could "[d]ecide which types of activity you'd like saved in your account," specifically referencing "Location History" as an example of a choice users could make regarding the private information they chose to share[4]:

---

[1] Google, *Privacy Policy* (May 25, 2018), *available at* https://policies.google.com/privacy (last visited November 1, 2018).
[2] *Id* (emphasis added).
[3] *Id* (emphasis added).
[4] *Id.*

**CLASS ACTION COMPLAINT**

Privacy controls

 **Activity Controls**

Decide what types of activity you'd like saved in your account. For example, you can turn on Location History if you want traffic predictions for your daily commute, or you can save your YouTube Watch History to get better video suggestions.

**Go to Activity Controls**

24.     Later in its Privacy Policy, Google again emphasized to users that they could control the location information sent to Google and third-parties by modifying the location setting on their Devices, providing that[5]:

- Device-level settings: Your device may have controls that determine what information we collect. For example, you can modify location settings ⧉ on your Android device.

There are other ways to control the information Google collects whether or not you're signed in to a Google Account, including:

25.     To effectuate users' control over information sent to Google and third-parties, Google provided a setting on Android devices titled App Permissions whereby users can opt-in or opt-out of an application's access to location tracking and location data storage by switching a toggle "on" or "off." Theoretically, users can opt-out of location information being sent to Facebook by accessing the Facebook application's App Permissions setting and switching the location toggle to "off."

26.     If accessing location tracking under the Facebook application's App Permissions setting, users are given an additional, even more detailed disclosure from Google on their Devices. This disclosure designated the type of location information that Facebook will collect if, *and only if*, access to location tracking is toggled "on" by the user: location tracking for Facebook "[a]llows the app to get your precise location using the Global Positions System (GPS) or network location

---

[5] *Id.*

**CLASS ACTION COMPLAINT**

sources such as cell towers and Wi-Fi. ***These location services must be turned on and available to your device for the app to use them***."

> **B.    Apple Specifically Represented to Users That They Had the Ability to Opt-Out of Location Tracking on Their iOS Devices**

27.    At all relevant times, Apple's Privacy Policy, which purported to provide a "a clear explanation of how we collect, use, disclose, transfer, and store your information"[6] for all Apple products and services, specified under the "Location-Based Services" section that users' location information is only imparted to third-party application providers if the user affirmatively opted in:

> **Location-Based Services**
>
> To provide location-based services on Apple products, Apple and our partners and licensees may collect, use, and share precise location data, including the real-time geographic location of your Apple computer or device. Where available, location-based services may use GPS, Bluetooth, and your IP Address, along with crowd-sourced Wi-Fi hotspot and cell tower locations, and other technologies to determine your devices' approximate location. Unless you provide consent, this location data is collected anonymously in a form that does not personally identify you and is used by Apple and our partners and licensees to provide and improve location-based products and services. ***For example, your device may share its geographic location with application providers when you opt in to their location services.***[7]

28.    On its "Location Services & Privacy" support page, Apple again specifically represented to Users that they controlled what location information was sent to Apple and third-parties through the Location Services setting on iOS devices:

> Location Services is designed to protect your information and ***enable you to choose what you share***.
>
> ***Location Services allows Apple and third-party apps and websites to gather and use information based on the current location of your iPhone*** or Apple Watch to provide a variety of location-based services. For example, an app might use your location data and location search query to help you find nearby coffee shops or theaters, or your device may set its time zone automatically based on your current location. To use features such as these, ***you must enable Location Services on your iPhone and give your permission to each app or website***

---

[6] Apple, *Apple Customer Privacy Policy*, *available at* https://www.apple.com/legal/privacy/ (last visited November 1, 2018).

[7] Apple, *Privacy Policy* (May 22, 2018), *available at* https://www.apple.com/legal/privacy/en-ww/ (last visited November 1, 2018) (emphasis added).

**CLASS ACTION COMPLAINT**

***before it can use your location data***. Apps may request limited access to your location data (only when you are using the app) or full access (even when you are not using the app) . . . .

Location Services uses GPS and Bluetooth (where those are available) along with crowd-sourced Wi-Fi hotspot and cell tower locations to determine your device's approximate location.

***If Location Services is on***, your iPhone will periodically send the geo-tagged locations of nearby Wi-Fi hotspots and cell towers in an anonymous and encrypted form to Apple, to be used for augmenting this crowd-sourced database of Wi-Fi hotspot and cell tower locations . . . .

***You may choose to disable Location Services at any time. To do so, open Settings on your iPhone, tap Privacy, tap Location Services, and either turn off the global Location Services switch or turn off the individual location switch of each location-aware app or feature by setting it to "Never"[8]***

29. To effectuate users' control over what location information was sent to Apple and third-parties, Apple provided a setting on iOS devices titled Location Services whereby users can opt-in or opt-out of an application's access to location tracking and storage of location data by choosing between three allowances of access to location information: "Always", "While Using", or "Never." Theoretically, users can opt-out of location information being collected by Facebook by accessing Apple's Location Services settings and selecting "Never" for the Facebook application.

### C. Facebook Specifically Represented to Users That They Had the Ability to Opt-Out of Location Tracking by Turning Location Services Off on Their Android and/or iOS Devices

30. Prior to a change in policy in or around May 2018, Facebook's Data Policy, which purported to explain which kind of information Facebook collected from its users, provided[9]:

---

[8] Apple, *Location Services & Privacy*, *available at* https://support.apple.com/en-us/HT207056 (last visited November 1, 2018) (emphasis added).
[9] Facebook, *Data Policy*, *available at*
https://support.google.com/accounts/answer/3118687?hl=en (visited April 16, 2018, using Wayback Machine).

**CLASS ACTION COMPLAINT**

**Device information.**

We collect information from or about the computers, phones, or other devices where you install or access our Services, depending on the permissions you've granted. We may associate the information we collect from your different devices, which helps us provide consistent Services across your devices. Here are some examples of the device information we collect:

- Attributes such as the operating system, hardware version, device settings, file and software names and types, battery and signal strength, and device identifiers.

- Device locations, including specific geographic locations, such as through GPS, Bluetooth, or WiFi signals.

- Connection information such as the name of your mobile operator or ISP, browser type, language and time zone, mobile phone number and IP address.

31.     Notably, Facebook represented that it collected "[d]evice information" including "[d]evice locations, including specific geographic locations, such as through GPS, Bluetooth, or WiFi signals" "***depending on the permissions you've granted***."[10]  The granted permissions referred to the setting selected by users through the location services setting if using an iOS device, or the App Permissions setting if using an Android device.

32.     This ability to opt-in or opt-out of Facebook compiling and storing location information on a user's Device is verified in Facebook's "Location Settings" page within the user's Facebook profiles, accessible by logging into his or her Facebook account on a computer. The "Location Settings" page specifies that "[y]ou can change your Location Settings in the app on your device," which again references the control selections on users' Devices.  If a Facebook user has

---

[10] *Id* (emphasis added).

**CLASS ACTION COMPLAINT**

not expressing opted in to or set the access or permissions of the Facebook application to "off" or "never" on his or her Device, this page will confirm that selection by providing that "[y]our Location History is off."

33.     Facebook CEO Mark Zuckerberg reiterated this opt-in process during his April 10, 2018, Congressional testimony following Facebook's Cambridge Analytica scandal, providing the following responses to Senator Debra Fischer's (R-NE) questioning:

> FISCHER: How much do you store of that? All of it? All of it? Everything we click on, is that in storage somewhere?
>
> ZUCKERBERG: Senator, we store data about what people share on the service and information that's required to do ranking better, to show you what you care about in news feed.
>
> FISCHER: Do you — do you store text history, user content, activity, ***device location***?
>
> ZUCKERBERG: Senator, some of that content ***with people's permission, we do store***.
>
> FISCHER: Do you disclose any of that?
>
> ZUCKERBERG: Yes, it — Senator, in order to — ***for people to share that information with Facebook, I believe that almost everything that you just said would be <u>opt in</u>***.[11]

**D.     Facebook Received and Stored Location Data from Its Users' Devices Without Permission (and in Contravention of Its Users' Wishes)**

34.     Despite Google's and Apple's representations that Facebook will not receive location information if users do not expressly opt-in or select "off" or "never" on their Devices, and despite Facebook's representation that it will only receive location information from users' Devices if they permitted, Facebook has been covertly obtaining detailed location information from users regardless of whether a user has opted in or opted out on his or her Device.

---

[11] The Washington Post, *Transcript of Mark Zuckerberg's Senate hearing* (April 10, 2018), *available at* https://www.washingtonpost.com/news/the-switch/wp/2018/04/10/transcript-of-mark-zuckerbergs-senate-hearing/?utm_term=.ca3abe9c3500 (emphasis added).

35.     Facebook represents the users' "Location History" in the settings menu of the users' account. Facebook users' "Location History" is displayed as "off" if user has not expressly opted-in or selected "off" or "never" on their mobile device. The Facebook application also offers users a "Download Your Information" feature allowing them to download reports compiling the information that Facebook has collected about them.

36.     One of the many reports Facebook users can download is their "location_history." When "Location History" is set to "off" the report reads, "[y]ou have no data in this section." However, buried within the myriad of folders containing the user information obtained by Facebook is a folder titled "security_and_login_information" which has two files: "login_protection_data" and "where_you're_logged_in."  These two files show specific personal location information about the user, including but not limited to, a description of the user's location, by latitude and longitude, on specific dates, at specific times.

37.     In or around May 2018, prompted by the implementation of Europe's strict new data protection and privacy regulation, Facebook realized that it had to come clean about its data collection practices in its Data Policy.  Prior to that date, Facebook specifically represented that its collection of any location information depended on "the permissions" users had "granted" on their Devices.[12]

38.     In an attempt to correct this misrepresentation, Facebook changed the aforementioned "Device Information" section of its Data Policy in or around May 2018 to remove the language "depending on the permissions you've granted," and instead represented that Facebook *will* obtain location information from users' Devices, including "GPS location" and "Device signals: Bluetooth signals, and information about nearby Wi-Fi access points, beacons, and cell towers.[13]

39.     However, Facebook had already obtained valuable location data from users for years without their consent based on Facebook's Data Policy regarding its location information

---

[12] Facebook, *Data Policy, available at*
https://support.google.com/accounts/answer/3118687?hl=en (visited April 16, 2018, using Wayback Machine).
[13] Facebook, *Data Policy, available at*
https://support.google.com/accounts/answer/3118687?hl=en (visited June 3, 2018, using Wayback Machine).

**CLASS ACTION COMPLAINT**

collection practices.  Facebook's attempt to paper over the misrepresentations and omissions in its Data Policy after its deceptive practice of secretly amassing a considerable amount of profitable data does not absolve it of liability.

**E.    Facebook Profited Enormously from Tracking and Storing Users' Location Data**

40.    Most of Facebook's revenue comes from the sale of targeted advertising services. For example, during 2017 alone, Facebook generated $40.65 billion in revenue, of which $39.94 billion was advertising revenue.[14]

41.    Facebook offers advertising services to its customers (advertisers) that include or have included at various points in time, *inter alia*, assisting customers in developing and creating advertisements and advertising strategies, obtaining information about users from Facebook's website and third-party sources, compiling user data and maintaining databases of user information, developing a marketing and advertising strategy to target and/or exclude certain groups of users from receiving advertisements, tracking and evaluating the effectiveness of advertisements and user targeting strategies, implementing advertising campaigns, and delivering advertisements to users, including via News Feed.

42.    Facebook's customers can use Facebook's advertising services to target its users with specific attributes.  Facebook applies its own algorithm to categorize users and to determine which users and groups of users will be targeted to receive advertisements via its advertising platform. As touted on Facebook's website: "With our powerful audience selection tools, you can target people who are right for your business. Using what you know about your customers—like demographics, interests and behaviors—you can connect with people similar to them."

43.    Facebook also provides detailed analytical data to advertisers on how their advertisement campaigns are performing, including among certain groups of Facebook users with specified attributes and characteristics that the advertiser seeks to target. By monitoring this data and providing this information to its customers on an ongoing basis, Facebook captures consumer

---

[14] Facebook, *Form 10-K, for the fiscal year ended December 31, 2017*, at 34.

**CLASS ACTION COMPLAINT**

behavior, profile, preferences, lifestyle, and other attributes which allows it to run targeted advertisements. This enables customers to target specific groups of users for advertisements.

44.     Targeting advertising of this nature requires Facebook to compile an enormous amount of personal information from its users, including location information. This information is highly valuable because the average cost per click for an online Facebook advertisement in 2017 was $1.72[15], and the average U.S. Facebook user is reportedly worth about $200 a year.[16]

45.     Location data presents one of the most valuable forms of data that Facebook collects about its users for its advertisers not only because of what the data point alone says about an individual (i.e., where he or she is at any particular point in time), but because of the massive amount of personal and private information that can be extracted from the location data (such as medical treatment, personal relationships, and private interests).

46.     On June 8, 2018, Congress released Facebook's responses to post-hearing questions stemming from Facebook CEO Mark Zuckerberg's April 10, 2018, Congressional testimony following Facebook's Cambridge Analytica scandal. Regarding how Facebook constructs digital profiles for purposes of selling advertisements, Zuckerberg stated, "We use data from devices (such as location data) to help advertisers reach people in particular areas. For example, if people have shared their device locations with Facebook or checked into a specific restaurant, we can show them ads from an advertiser that wants to promote its services in their area or from the restaurant."[17]

**F.      Tracking Users' Location Without Permission (and in Contravention of Their Wishes) Violates the Federal Trade Commission Act as a Deceptive Trade Practice**

47.     Federal Trade Commission ("FTC") enforcement actions have specifically found that conduct similar to that alleged herein against Defendants is a deceptive trade practice in violation of § 5 of the FTC Act.

---

[15] Mark Irvine, *Facebook Ad Benchmarks for YOUR Industry [New Data]* (August 13, 2018), *available at* https://www.wordstream.com/blog/ws/2017/02/28/facebook-advertising-benchmarks (last visited November 1, 2018).
[16] Sam Harnett, *Here's How Much You Are Worth To Facebook In Dollars and Cents* (April 11, 2018), *available at* https://www.kqed.org/news/11661387/heres-how-much-you-are-worth-to-facebook-in-dollars-andcents (last visited November 1, 2018).
[17] *Zuckerberg Responses to Judiciary Committee QFRs* (June 8, 2018), *available at* https://www.judiciary.senate.gov/imo/media/doc/Zuckerberg%20Responses%20to%20Judiciary%20Committee%20QFRs.pdf at 16.

**CLASS ACTION COMPLAINT**

48.    For example, in June 2018, the FTC announced that it had settled charges against a mobile advertising company, InMobi PTE ("InMobi"), for deceptively tracking the locations of hundreds of millions of individuals without their knowledge or consent in order to serve them geo-targeted advertising (i.e., advertisements tailored to individuals based on where they live or places they frequent).[18]

49.    In that action, the FTC alleged that InMobi misleadingly represented that its advertising software would only track consumers' locations if they opted in to being tracked, and in a manner consistent with their devices' privacy settings.[19]  According to the FTC complaint, InMobi was actually tracking consumers' locations whether or not the applications using InMobi's software asked for their permission to do so, and even where consumers had denied permission to access their location information.[20]

50.    As a result of the FTC enforcement action, InMobi agreed to pay $950,000 in civil penalties and to implement a comprehensive privacy program which included a prohibition against collecting consumers' location information without their affirmative express consent as well as requirements that InMobi honor consumers' location privacy settings and for the program to be independently audited every two years for the next 20 years.[21]  InMobi was further required to delete all of the consumers' location information that it had collected without their consent and was prohibited from further misrepresenting its privacy practices.[22]

G.    **Defendant Google and Facebook's History of Poor Protection of User Data**

1.    **Google's Poor Protection of User Data**

51.    Google has been on notice of deficiencies regarding its policies, processes, and procedures involving the collection and protection of user data since at least 2010.

52.    After the FTC charged Google with using deceptive tactics and violating its own privacy promises to consumers when launching its first social network product, Google Buzz, in

---

[18] U.S. FTC, *Mobile Advertising Network InMobi Settles FTC Charges It Tracked Hundreds of Millions of Consumers' Locations Without Permission* (June 22, 2018), *available at* https://www.ftc.gov/news-events/pressreleases/2016/06/mobile-advertising-network-inmobi-settles-ftc-charges-it-tracked.
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.*

**CLASS ACTION COMPLAINT**

2010, Google entered into a consent decree as part of a proposed settlement in March 2011.[23] Under the settlement, the FTC barred Google from misrepresenting the privacy of personal information or the extent to which consumers may exercise control over the collection, use, or exposure of certain personal information.[24] The FTC also required Google to establish a "comprehensive privacy program that was reasonably designed to: (1) address privacy risks related to the development and management of new and existing products and services for consumers, and (2) protect the privacy and confidentiality of covered information."[25]  Included in the privacy program was the "regular testing or monitoring of the effectiveness of those privacy controls and procedures," which would be audited by an independent third-party professional.[26]

53.   Less than a year after entering into the FTC consent decree, Google violated it – becoming one of the rare companies in the country that has violated an FTC consent decree – and paid a record fine for its circumvention of privacy protections in the web browser Safari.[27]  In discussing the settlement, Jon Leibowitz, Chairman of the FTC, said, "The record setting penalty in this matter sends a clear message to all companies under an FTC privacy order. No matter how big or small, all companies must abide by FTC orders against them and keep their privacy promises to consumers, or they will end up paying many times what it would have cost to comply in the first place."[28]

### 2.   Facebook's Poor Protection of User Data

55.   Facebook has been on notice of deficiencies regarding its policies, processes, and procedures involving the collection and protection of user data for even longer than Google.

---

[23] U.S. FTC, *In the Matter of GOOGLE INC., a corporation* (October 13, 2011), Docket No. C-4436, *available at* https://www.ftc.gov/sites/default/files/documents/cases/2011/10/111024googlebuzzdo.pdf
[24] *Id.*
[25] *Id.*
[26] *Id.*
[27] U.S. FTC, *Google Will Pay $22.5 Million to Settle FTC Charges It Misrepresented Privacy Assurances to Users of Apple's Safari Internet Browser* (August 9, 2012), *available at* https://www.ftc.gov/news-events/press-releases/2012/08/google-will-pay-225-million-settle-ftc-charges-it-misrepresented (last visited November 1, 2018).
[28] *Id.*

18

56.     In 2008, a Facebook technical glitch revealed the confidential birthdates of 80 million users' profiles.[29]  Then, in 2013, Facebook disclosed a software flaw that exposed 6 million users' phone numbers and email addresses to unauthorized viewers for a year.[30]

57.     Earlier this year in March, news broke that Facebook had allowed for the personal data of up to 87 million user profiles to be harvested by Cambridge Analytica.[31]  This scandal was significant for inciting a public discussion on the ethical standards of data collection by social media companies, resulting in a call for greater consumer protection over users' right to privacy in online media and eventually leading to Facebook CEO Mark Zuckerberg's testimony before Congress.[32]  Most recently, in September 2018, a security breach exposed the personal information of up to 50 million Facebook users.[33]  This already egregious exposure of Facebook users' personal information was exponentially worsened by Facebook's collection of location data without users' consent.  The breach allowed hackers to gain access to, and potentially take control of, user accounts which, given the troubling data practices alleged herein, included detailed location history that users had not consented to Facebook having – much less hackers.[34]

### H.     Apple Was Aware, Or Should Have Been Aware, of Facebook's Improper Collection of User Data Due to Its Data-Sharing Partnership with Facebook

58.     Apple knew, or should have known, that Facebook was improperly accessing location data from users with iOS Devices.

59.     As detailed in a June 3, 2018, New York Times article titled "Facebook Gave Device Makers Deep Access to Data on Users and Friends," Facebook had formed data-sharing

---

[29] Reuters, *Facebook says big breach exposed 50 million accounts to full takeover* (September 28, 2018), *available at* https://www.reuters.com/article/us-facebook-cyber/facebook-unearths-security-breach-affecting-50-million-users-idUSKCN1M82BK?feedType=RSS&feedName=newsOne (last visited November 1, 2018)
[30] *Id.*
[31] The New York Times, *Facebook Says Cambridge Analytica Harvested Data of Up to 87 Million Users* (April 4, 2018), *available at* https://www.nytimes.com/2018/04/04/technology/mark-zuckerberg-testify-congress.html (last visited November 1, 2018).
[32] *See id.*
[33] The New York Times, *Facebook Security Breach Exposes Accounts of 50 Million Users* (September 28, 2018), *available at* https://www.nytimes.com/2018/09/28/technology/facebook-hack-data-breach.html (last visited November 1, 2018).
[34] *Id.*

**CLASS ACTION COMPLAINT**

partnerships with various device makers, including Apple.[35]  The article described how extensive the scope of the partnerships were, providing, in relevant parts:

> But the partnerships, whose scope has not previously been reported, raise concerns about the company's privacy protections and compliance with a 2011 consent decree with the Federal Trade Commission. Facebook allowed the device companies access to the data of users' friends without their explicit consent, even after declaring that it would no longer share such information with outsiders. Some device makers could retrieve personal information even from users' friends who believed they had barred any sharing, The New York Times found . . . .
> Most of the partnerships remain in effect, though Facebook began winding them down in April . . . .
>
> **The company views its device partners as extensions of Facebook**, serving its more than two billion users, the officials said . . . .
> Facebook's view that the device makers are not outsiders lets the partners go even further, The Times found: They can obtain data about a user's Facebook friends, even those who have denied Facebook permission to share information with any third parties . . . .
>
> An Apple spokesman said the company relied on private access to Facebook data for features that enabled users to post photos to the social network without opening the Facebook app, among other things.[36]

60.     In the New York Times article, Serge Egelman, a privacy researcher at the University of California, Berkeley who studies the security of mobile apps, noted with regard to data-sharing relationships, "You might think that Facebook or the device manufacturer is trustworthy, but the problem is that as more and more data is collected on the device — and if it can be accessed by apps on the device — it creates serious privacy and security risks."[37]

61.     In responding to the New York Times article, Facebook admitted that Facebook had formed a "partnership" with device makers "including many household names such as Amazon, *Apple*, Blackberry, HTC, Microsoft and Samsung" in a June 3, 2018 news release titled "Why We Disagree with The New York Times."[38]

---

[35] The New York Times, *Facebook Gave Device Makers Deep Access to Data on Users and Friends* (June 3, 2018), *available at* https://www.nytimes.com/interactive/2018/06/03/technology/facebook-device-partners-users-friends-data.html (last visited November 1, 2018).
[36] *Id* (emphasis added).
[37] *Id.*
[38] Facebook, *Why We Disagree with The New York Times* (June 3, 2018), *available at* https://newsroom.fb.com/news/2018/06/why-we-disagree-with-the-nyt/ (last visited November 1, 2018) [emphasis added].

**CLASS ACTION COMPLAINT**

62.     Due to Apple's comprehensive data-sharing partnership with Facebook, including its role as an "extension" of Facebook, Apple knew or should have known the extent to which Facebook was accessing location data through iOS Devices.  Indeed, in a June 4, 2018, interview with CNN, Apple CEO Tim Cook stated that "[t]he privacy thing has gotten totally out of control. I think most people are not aware of who is tracking them, how much they're being tracked and sort of the large amounts of detailed data that are out there about them."[39]

## CLASS ALLEGATIONS

63.     Pursuant to Rule 23(b)(2), (b)(3), and (c)(4) of the Federal Rules of Civil Procedure, Plaintiffs, individually and on behalf of all others similarly situated, bring this lawsuit on behalf of themselves and as a class action on behalf of the following Classes and Sub-Class:

> **Nationwide Apple Class**: All natural persons who own iOS devices who did not explicitly opt-in to, or did explicitly opt-out of, allowing the Facebook application access to location tracking, and whose location information was nonetheless accessed, recorded, and exploited by Facebook.

> **Nationwide Google Class**: All natural persons who own Android devices, who did not explicitly permit or explicitly turned off permissions to location tracking for the Facebook application, and whose location information was nonetheless accessed, recorded, and  exploited by Facebook.

> **Colorado Sub-Class**: All natural persons residing in Colorado who own iOS or Android devices, who did not explicitly allow or permit access, or explicitly opted out or turned "off" permissions or access to location tracking, to the Facebook application, and whose location information was nonetheless accessed, recorded, and exploited by Facebook.

64.     Excluded from the Classes and Sub-Class are Defendants and any entities in which Defendants or their subsidiaries or affiliates have a controlling interest, as well as Defendants' officers, agents, and employees. Also excluded from the Classes and Sub-Class are the judge assigned to this action, members of the judge's staff, and any member of the judge's immediate family.  Plaintiffs reserve the right to amend the definitions of the Classes and/or Sub-Class if discovery and further investigation reveal that they should be expanded or otherwise modified.

---

[39] CNN, *Tim Cook reveals his tech habits: I use my phone too much* (June 4, 2018), *available at* https://money.cnn.com/2018/06/04/technology/apple-tim-cook-screen-time/index.html (last visited November 1, 2018).

**CLASS ACTION COMPLAINT**

**Numerosity**: The members of each Class and Sub-Class are so numerous that joinder of all members of every Class and Sub-Class would be impracticable.  Plaintiffs reasonably believe that Class and Sub-Class members number hundreds of thousands of people or more in the aggregate and well over 1,000 in the smallest of the classes or sub-class.  The names and addresses of Class and Sub-Class members are identifiable through documents maintained by Defendants.

**Commonality and Predominance**: This action involves common questions of law or fact, which predominate over any questions affecting individual Class and Sub-Class members, including:

a.      Whether Defendants represented that Facebook would not access, record, and exploit location information from Plaintiffs and Class and Sub-Class members if they never explicitly agreed to such use of their location information, or if they expressly turned off permissions or access to location tracking on their Devices;

b.      Whether Facebook's alleged misconduct amounts to the use of an electronic tracking device to determine the location or movement of a person, in violation of Cal. Pen. Code § 637.7;

c.      Whether the Android and iOS devices which inherently contain the technology utilized by Facebook are "electronic tracking devices" under Cal. Pen. Code § 637.7(d);

d.      Whether Defendants' alleged misconduct was an unlawful, unfair and/or deceptive business practice under Cal. Bus. & Prof. Code § 17200, *et seq*.;

e.      Whether Defendants intentionally intruded on and into Plaintiffs' and the other Class members' solitude, seclusion, or private affairs by the conduct alleged herein;

f.      Whether Defendants were unjustly enriched by the conduct alleged herein;

g.      Whether Defendants engaged in the unauthorized appropriation of Plaintiffs' and Class members' identity for commercial gain in violation of Cal. Civ. Code § 3344, *et seq*.;

h.      Whether Defendants Apple's and Google's conduct alleged herein constitutes unfair methods of competition and unfair and deceptive acts and practices in

22

**CLASS ACTION COMPLAINT**

violation of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*;

i.     Whether Defendants' alleged misconduct violated the Colorado Consumer Protection Act, Colo. Rev. Stat. 6-1-101, *et seq.*;

j.     Whether Defendants, in engaging in the conduct alleged herein, made intentional misrepresentations and/or omissions to Plaintiffs and the other Class members;

k.     Whether Defendants' alleged misconduct amounts to egregious breaches of social norms; and

l.     Whether Defendants acted intentionally in violating the privacy rights of Plaintiffs and Class and Sub-Class members.

65.     Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs individually and on behalf of the members of the Classes and Sub-Class.  Similar or identical statutory and common law violations, business practices, and injuries are involved.  Individual questions, if any, pale by comparison, in both quantity and quality, to the numerous common questions that dominate this action.

66.     As further indication of the common questions of law, Defendants' terms of service provide that users agree that the laws of California, excluding California's choice of law rules, will apply to any disputes between users and Defendants.

67.     Facebook's terms of service provide "[f]or any claim, cause of action, or dispute you have against us that arises out of or relates to these Terms or the Facebook Products . . . . the laws of the State of California will govern these Terms and any claim."[40]

68.     Google's terms of service provide that "you agree that the laws of California, U.S.A., excluding California's choice of law rules, will apply to any disputes arising out of or relating to these terms or the Services."[41]

---

[40] Facebook, *Terms of Service* (April 19, 2018), *available at* https://www.facebook.com/terms.php (last visited November 8, 2018).
[41] Google, *Terms of Service* (October 25, 2017), *available at* https://policies.google.com/terms?hl=en&gl=ZZ (last visited November 8, 2018).

**CLASS ACTION COMPLAINT**

69.     Apple's terms of service provide "this Agreement and the relationship between you and Apple shall be governed by the laws of the State of California, excluding its conflicts of law provisions."[42]

**Typicality**: Plaintiffs' claims are typical of the claims of the other members of their respective classes because, *inter alia*, Plaintiffs and Class and Sub-Class members were injured through the substantially uniform misconduct by Defendants.  Plaintiffs are advancing the same claims on behalf of themselves and all other Class and Sub-Class members, and there are no defenses that are unique to Plaintiffs.  The claims of Plaintiffs and those of other Class and Sub-Class members arise from the same operative facts and are based on the same legal theories.

**Adequacy of Representation**: Plaintiffs are adequate representatives of the Classes and Sub-Class because their interests do not conflict with the interests of the other Class and Sub-Class members they seek to represent; they have retained counsel competent and experienced in complex class action litigation; and they will prosecute this action vigorously. The interests of Class and Sub-Class members will be fairly and adequately protected by Plaintiffs and their counsel.

**Superiority**: A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this matter as a class action.  The damages, harm, or other financial detriment suffered individually by Plaintiffs and the other Class and Sub-Class members are relatively small compared to the burden and expense that would be required to litigate their claims on an individual basis against Defendants, making it impracticable for Class and Sub-Class members to individually seek redress for Defendants' wrongful conduct.  Even if Class and Sub-Class members could afford individual litigation, the court system could not.  Individualized litigation would create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

---

[42] Apple, *Apple Media Services Terms and Conditions, available at* https://www.apple.com/ca/legal/internet-services/itunes/ca/terms.html (last visited November 8, 2018).

**CLASS ACTION COMPLAINT**

70.     Further, Defendants have acted or refused to act on grounds generally applicable to the Classes and Sub-Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the members of the Classes and Sub-Class as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

71.     Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.  Such particular issues include, but are not limited to:

a.     Whether Defendants represented that Facebook would not access and exploit location information from Plaintiffs and the other Class and Sub-Class members who never explicitly agreed to such use of their location information, or if they expressly turned off permissions or access to location tracking on their Devices;

b.     Whether Facebook's alleged misconduct amounts to the use of an electronic tracking device to determine the location or movement of a person, in violation of Cal. Pen. Code § 637.7;

c.     Whether the Android and iOS devices which inherently contain the technology utilized by Facebook are "electronic tracking devices" under Cal. Pen. 6 Code § 637.7(d);

d.     Whether Defendants' alleged misconduct was an unlawful, unfair and/or deceptive business practice under Cal. Bus. & Prof. Code § 17200, *et seq*.;

e.     Whether Defendants intentionally intruded on and into Plaintiffs' and the other Class members' solitude, seclusion, or private affairs by the conduct alleged herein;

f.     Whether Defendants were unjustly enriched by the conduct alleged herein;

g.     Whether Defendants engaged in the unauthorized appropriation of Plaintiffs' and Class members' identity for commercial gain in violation of Cal. Civ. Code § 3344, *et seq*.;

h.     Whether Defendants Apple's and Google's conduct alleged herein constitutes unfair methods of competition and unfair and deceptive acts and practices in

violation of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*;

    i.    Whether Defendants' alleged misconduct violated the Colorado Consumer Protection Act, Colo. Rev. Stat. 6-1-101, *et seq.*;

    j.    Whether Defendants, in engaging in the conduct alleged herein, made intentional misrepresentations and/or omissions to Plaintiffs and the other Class members;

    k.    Whether Defendants' alleged misconduct amounts to egregious breaches of social norms; and

    l.    Whether Defendants acted intentionally in violating the privacy rights of Plaintiffs and Class and Sub-Class members.

## CLAIMS ALLEGED ON BEHALF OF ALL CLASSES

### First Claim for Relief

**Violation of California's Unfair Competition Law ("UCL")-Unlawful Business Practices
(Cal. Bus. & Prof. Code §17200, *et seq.*)**

72.    Plaintiffs hereby repeat, reallege, and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

73.    Defendants' terms of service provide that the laws of California will apply to any disputes between users, including Plaintiffs and Class members, and Defendants.

74.    By reason of the conduct alleged herein, Defendants engaged in unlawful practices within the meaning of the UCL. The conduct alleged herein is a "business practice" within the meaning of the UCL.

75.    Defendants Google and Apple represented that they would not disclose Plaintiffs' and other Class Members' detailed location data to third-parties, such as Facebook unless they consented to third-party applications having access to location tracking on their Devices.

76.    Defendant Facebook further represented that it would collect and store location data from Plaintiffs and the other Class members only if they opted out or did not explicitly consent to access to location tracking on their Devices.

77.     Defendants failed to abide by these representations, as Defendant Facebook intentionally collected and stored detailed location data from Plaintiffs and the other Class members who had specifically opted out of, or never explicitly agreed to, allowing Facebook access to location tracking on their Devices.

78.     Even without these misrepresentations, Plaintiffs and other Class members were entitled to assume, and did assume, that Defendants Apple and Google would not disclose their location data to a third-party, such as Facebook when they had specifically opted out of, or never explicitly agreed to, third-parties having access to location tracking, and that Defendant Facebook would not collect, store, and financially benefit from Plaintiffs and the other Class members detailed location data when they had specifically opted out of, or never explicitly agreed to, Facebook receiving or collecting this location data.

79.     Defendants violated the UCL by misrepresenting, both by affirmative conduct and by omission, that Defendant Facebook would not collect and store detailed location data from Plaintiffs and the other Class members.

80.     As a result of engaging in the misconduct alleged herein, Defendants violated the UCL's proscription against engaging in unlawful conduct by virtue of: (i) their fraudulent and deceitful conduct in violation of California Civil Code §§ 1709 through 1711; (ii) their violations of the Consumers Legal Remedies Act, California Civil Code §§ 1770(a)(5), (a)(7), and (a)(9); (iii) their violations of Cal. Bus. & Prof. Code § 22576 (as a result of Defendant Facebook, Google, and Apple's failure to comply with their own posted privacy policies); (iv) their violation of Cal. Penal Code § 630, *et. seq.*; and (v) Defendants Google and Facebook's violations of the terms of the 2011 Consent Decrees with the FTC.

81.     Defendants' violations of the UCL continue to this day.  As a direct and proximate result of Defendants' violations of the UCL, Plaintiffs have suffered actual damage, *inter alia*, as detailed herein.

82.     As a result of Defendants' unlawful business practices, which are violations of the UCL, Plaintiffs and the Class members are entitled to restitution, disgorgement of wrongfully

obtained profits, and injunctive relief.  Accordingly, pursuant to § 17203 of the UCL, Plaintiffs and the other Class members seek an order that requires Defendants to:

        a.     modify Defendants' operating systems, services, and applications in a manner that prevents location tracking absent affirmative user consent;

        b.     modify Defendants' operating systems, services, and applications in a manner that truthfully advises users of location tracking;

        c.     make full restitution of all moneys wrongfully obtained from their violations of the UCL, as alleged herein; and

        d.     pay the attorney fees and costs incurred by counsel for Plaintiffs and the proposed class in accordance with California Code of Civil Procedure § 1021.5.

## Second Claim for Relief

**Violation of California's UCL – Unfair Business Practices**
**(Cal. Bus. & Prof. Code § 17200, *et seq.*)**

83.     Plaintiffs hereby repeat, reallege, and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

84.     Defendants' terms of service provide that the laws of California will apply to any disputes between users, including Plaintiffs and Class members, and Defendants.

85.     By reason of the misconduct alleged herein, Defendants engaged in unfair "business practices" within the meaning of the UCL.

86.     Defendants Google and Apple represented that they would not disclose Plaintiffs' and Class Members' detailed location data to third-parties, such as Facebook, unless Plaintiffs and Class Members consented to third-parties having access to location tracking on their Devices.

87.     Defendant Facebook further represented that it would not collect and store location data from Plaintiffs and the other Class members if they expressly opted out, or did not explicitly consent, to data tracking on their Devices.

88.     Defendants failed to abide by these representations, as Defendant Facebook intentionally collected and stored detailed location data from Plaintiffs and the other Class members

who had specifically opted out of, or never explicitly agreed to, allowing location tracking on their Devices.

89.     Even without these misrepresentations, Plaintiffs and other Class members were entitled to assume, and did assume, that Defendants Apple and Google would not disclose their location data to a third-party, such as Facebook, when they had specifically opted out of, or never explicitly agreed to, allowing location tracking by a third-party, and that Defendant Facebook would not collect, store, and financially benefit from Plaintiffs and the other Class members detailed location data when they had specifically opted out of, or never explicitly agreed to, Facebook receiving their location data.

90.     All Defendants knew or should have known, of the material misrepresentations and omissions alleged herein.

91.     Defendants violated the UCL's proscription against unfair conduct as a result of engaging in the conduct alleged herein, which violates legislatively-declared policies articulated in, *inter alia*, California Civil Code §§ 1709 through 1711; CLRA, California Civil Code §§ 1770(a)(5), (a)(7), and (a)(9); Cal. Bus. & Prof. Code § 22576 (as a result of Defendant Facebook, Google and Apple's failure to comply with their own posted privacy policies); Cal. Penal Code § 630, *et. seq.*

92.     Defendants engaged in unfair acts and business practices by falsely representing that Defendants Apple and Google would not disclose Plaintiffs and the other Class members' location data to a third-party, such as Facebook, when they had specifically opted out of, or never explicitly agreed to, third-parties having access to location tracking, and that Defendant Facebook would not collect, store, and financially benefit from Plaintiffs and the other Class members' detailed location data when they had specifically opted out of, or never explicitly agreed to, Facebook receiving their location data.

93.     In engaging in the unfair acts and business practices alleged herein, Defendants Facebook, Google and Apple failed to comply with their own policies and applicable laws or the regulations and industry standards relating to the privacy of users' data.

94.     Defendants engaged in unfair business practices under the "balancing test" because the harm caused by their actions and omissions, as described in detail *supra*, greatly outweigh any perceived utility.  Indeed, Defendants' unconsented tracking of Class Members cannot be said to have had any utility at all, beyond that of an unfair and deceptive financial benefit to Defendants at the expense of Class Members.

95.     Defendants engaged in unfair business practices under the "tethering test" because their actions and omissions, as described in detail *supra*, violated fundamental public policies expressed by the California Legislature.

96.     Defendants engaged in unfair business practices under the "FTC test" because the harm caused by their actions and omissions, as described in detail *supra*, is substantial in that it affected thousands of Class members and has caused those persons to suffer substantial injury and lost money or property, including but not limited to the loss of their legally protected interest in the confidentiality and privacy of their personal data.  Defendants' actions and omissions violated, *inter alia,* § 5(a) of the FTC Act, 15 U.S.C. § 45.

97.     Defendants' violations of the UCL continue to this day.  As a direct and proximate result of Defendants' violations of the UCL, Plaintiffs and the other Class members have suffered actual damages, *inter alia*, as detailed herein.

98.     As a result of Defendants' unfair business practices, which are violations of the UCL, Plaintiffs and the other Class members are entitled to restitution, disgorgement of wrongfully obtained profits, and injunctive relief.  Accordingly, pursuant to § 17203 of the UCL, Plaintiffs and the other Class members seek an order that requires Defendants to:

a.     modify Defendants' operating systems, services, and applications in a manner that prevents access to location tracking absent affirmative user consent;

b.     modify Defendants' operating systems, services, and applications in a manner that     truthfully advises users of access and usage of location tracking;

c.     make full restitution of all moneys wrongfully obtained from their violations of the UCL, as alleged herein; and

**CLASS ACTION COMPLAINT**

d.      pay the attorney fees and costs incurred by counsel for Plaintiffs and the proposed class in accordance with California Code of Civil Procedure § 1021.5.

### Third Claim for Relief

### Violation of California's UCL – Fraudulent/Deceptive Business Practices

### (Cal. Bus. & Prof. Code § 17200, *et seq.*)

99.     Plaintiffs hereby repeat, reallege, and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

100.     Defendants' terms of service provide that the laws of California will apply to any disputes between users, including Plaintiffs and Class members, and Defendants.

101.     Defendants violated the UCL's proscription against fraud as a result of engaging in the fraudulent and deceitful conduct herein.

102.     Defendants engaged in fraudulent and deceptive acts and practices with regard to the services they provided to the Class by Defendants Apple and Google representing that they would not disclose Class members' location data to a third-party, such as Facebook, when they had specifically opted out of, or never explicitly agreed to, third-parties having access to location tracking, and by Defendant Facebook representing that it would not collect, store, and financially benefit from Class members' detailed location data when they had specifically opted out of, or never explicitly agreed to, Facebook receiving their location data.

103.     These representations were likely to deceive members of the public, including Plaintiff and the other Class Members, into believing that their detailed location data would not be collected when they had specifically opted out of, or never explicitly agreed to, Facebook receiving their location data.

104.     Defendants engaged in fraudulent and deceptive acts and practices with regard to the services provided to the Class by omitting, suppressing, and concealing the material fact that Facebook was continuing to receive, collect, and store detailed location data from Plaintiffs and the other Class Members even when had specifically opted out of, or never explicitly agreed to, Facebook receiving their location data.

105.    As a direct and proximate result of Defendants' deceptive practices and acts, Plaintiffs and the Class were injured and lost money or property, including but not limited to, the loss of their legally protected interest in the confidentiality and privacy of their personal information.

106.    Defendants' actions in engaging in the above-named unlawful practices and acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the Class.

107.    Defendants' violations of the UCL continue to this day.  As a direct and proximate result of Defendants' violations of the UCL, Plaintiffs have suffered actual damage, *inter alia*, as detailed herein.

108.    As a result of Defendants' fraudulent and deceptive business practices, which are violations of the UCL, Plaintiffs and the Class members are entitled to restitution, disgorgement of wrongfully obtained profits, and injunctive relief.  Accordingly, pursuant to § 17203 of the UCL, Plaintiffs and the other Class members seek an order that requires Defendants to:

       a.    modify Defendants' operating systems, services, and applications in a manner that prevents access to location tracking absent affirmative user consent;

       b.    modify Defendants' operating systems, services, and applications in a manner that truthfully advises users of access and usage of location tracking;

       c.    make full restitution of all moneys wrongfully obtained from their violations of the UCL, as alleged herein; and

       d.    pay the attorney fees and costs incurred by counsel for Plaintiffs and the proposed class in accordance with California Code of Civil Procedure § 1021.5.

### Fourth Claim for Relief

### Intrusion Upon Seclusion

109.    Plaintiffs hereby repeat, reallege, and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

110.    Plaintiffs and the other Class members have reasonable expectations of privacy in their Devices.  Their private affairs include their behavior on their Devices as well as any other

behavior that may be monitored by the surreptitious tracking employed or otherwise enabled by location tracking.

111.   The reasonableness of such expectations of privacy is supported by Defendants' unique position to monitor Plaintiffs' and the other Class members' behavior through Defendants' access to their private Devices.  It is further supported by the surreptitious and non-intuitive nature of Defendants' tracking.

112.   Defendants intentionally intruded on and into Plaintiffs' and the other Class members' solitude, seclusion, or private affairs by intentionally collecting and storing detailed location data from Plaintiffs and the other Class members.

113.   These intrusions are highly offensive to a reasonable person. This is evidenced by, *inter alia*, Supreme Court precedent (most recently and forcefully articulated in the *Carpenter* opinion), legislation enacted by Congress, rules promulgated and enforcement actions undertaken by the FTC, and countless studies, op-eds, and articles decrying location tracking.  Moreover, Defendants engaged in true tracking of location information deceptively and in direct contradiction of the express instructions of Plaintiffs and the other Class members.  Also supporting the highly offensive nature of Defendants' conduct is the fact that their principal goal was to surreptitiously monitor Plaintiffs and the other Class members and to allow third-parties to do the same.

114.   Plaintiffs and the other Class members were harmed by the intrusion into their private affairs as detailed herein.

115.   Defendants' actions and conduct complained of herein were a substantial factor in causing the harm suffered by Plaintiffs and the other Class members.

116.   As a result of Defendants' actions, Plaintiffs and the other Class members seek damages and punitive damages in an amount to be determined at trial.  They seek punitive damages because Defendants' actions – which were malicious, oppressive, and willful – were calculated to injure Plaintiffs and the other Class members and made in conscious disregard of their rights and wishes.  Punitive damages are warranted to deter Defendants from engaging in future misconduct.

**CLASS ACTION COMPLAINT**

**Fifth Claim for Relief**

**Violation of California's Constitutional Right to Privacy**

117.   Plaintiffs hereby repeat, reallege, and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

118.   Defendants' terms of service provide that the laws of California will apply to any disputes between users, including Plaintiffs and Class members, and Defendants.

119.   Plaintiffs and the other Class members have reasonable expectations of privacy in their Devices.  Their private affairs include their behavior on their Devices as well as any other behavior that may be monitored by the surreptitious tracking employed or otherwise enabled by location tracking.

120.   Defendants intentionally intruded on and into Plaintiffs' and the other Class members' solitude, seclusion, right of privacy, or private affairs by intentionally collecting and storing detailed location data from Plaintiffs and the other Class members.

121.   These intrusions are highly offensive to a reasonable person because they disclosed sensitive and confidential location tracking information, constituting an egregious breach of social norms.  This is evidenced by, *inter alia*, Supreme Court precedent (most recently and forcefully articulated in the *Carpenter* opinion), legislation enacted by Congress, rules promulgated and enforcement actions undertaken by the FTC, and countless studies, op-eds, and articles decrying location tracking.  Further, the extent of the intrusion cannot be fully known, as the nature of privacy invasion involves sharing Plaintiffs' and the other Class members' location information with potentially countless third-parties, known and unknown, for undisclosed and potentially unknowable purposes, in perpetuity.

122.   Plaintiffs and the other Class members were harmed by the intrusion into their private affairs as detailed herein.

123.   Defendants' actions and conduct complained of herein were a substantial factor in causing the harm suffered by Plaintiffs and the other Class members.

124.   As a result of Defendants' actions, Plaintiffs and the other Class members seek damages and punitive damages in an amount to be determined at trial.  They seek punitive damages

because Defendants' actions – which were malicious, oppressive, and willful – were calculated to injure Plaintiffs and the other Class members and made in conscious disregard of their rights and wishes. Punitive damages are warranted to deter Defendants from engaging in future misconduct.

**Sixth Claim for Relief**
**Intentional Misrepresentation and Omission**

125.    Plaintiffs hereby repeat, reallege, and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

126.    Defendants, through themselves and their agents, employees and/or subsidiaries, made materially false representations and omissions to Plaintiffs and the Class that Defendants Google and Apple's operating systems and applications did not secretly collect location information from users against their explicit wishes.

127.    These material misrepresentations and omissions were contained in the Purchase Agreements, Instructions, Terms and Conditions, in Defendants Google and Apple's operating systems, and various public statements by Defendants.

128.    Defendants knew or recklessly disregarded the false and misleading nature of their material misrepresentations and omissions.

129.    Defendants Google and Apple made the materially false and misleading statements and omissions for the purpose of inducing Plaintiffs and the other members of the Class to purchase Android and iOS Devices and purchase, install, and use Google and Apple applications.

130.    In purchasing and using Defendants Google and Apple's operating systems and applications, Plaintiffs and the other Class members reasonably relied on Defendants' materially misleading statements and omissions that their location information would not be monitored and stored contrary to their explicit wishes.

131.    As a result of Defendants' materially false and misleading representations and omissions, Plaintiffs and the other Class members sustained damages as set forth herein.

**CLASS ACTION COMPLAINT**

### Seventh Claim for Relief
### Unjust Enrichment

132.    Plaintiffs hereby repeat, reallege, and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

133.    Defendants' terms of service provide that the laws of California will apply to any disputes between users, including Plaintiffs and Class members, and Defendants.

134.    Plaintiffs bring this claim for unjust enrichment against all Defendants as a quasi-contractual claim seeking restitution.   California law permits a standalone claim for unjust enrichment, allowing the court to construe the cause of action as a quasi-contract claim seeking restitution.  *E.g., Astiana v. Hain Celestial Group, Inc.,* 783 F.3d 753, 756 (9th Cir. 2015).

135.    By collecting and making use of Class Members' detailed location data when they had specifically opted out of, or never affirmatively agreed to, Defendants' collection and use of that data, Defendants were unjustly enriched at the expense of Plaintiffs and the other members of the Class.  It would be inequitable and unconscionable for Defendants to retain the profit, benefit, and other compensation they obtained from using Class Members' detailed location data.

136.    Plaintiffs and the other members of the Class seek restitution from Defendants and an order from this Court requiring Defendants to disgorge all proceeds, profits, benefits, and other compensation obtained by Defendants from their improper and unlawful collection and use of use of Class Members' detailed location data.

137.    In the alternative, Plaintiffs and the other members of the Class seek compensatory damages in the form of the commercial value of the data Defendants improperly collected and used, which can be reasonably ascertained using documents maintained by Defendants.

### Eighth Claim for Relief
### Violation of CIPA
### (Cal. Pen. Code §§ 630, *et seq.*)

138.    Plaintiffs hereby repeat, reallege, and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

139.    Defendants' terms of service provide that the laws of California will apply to any disputes between users, including Plaintiffs and Class members, and Defendants.

140.    Cal. Pen. Code § 630 provides that "[t]he Legislature hereby declares that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communication and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society."

141.    Defendants' acts and practices complained of herein, engaged in for purposes of acquiring and using the detailed location information of Plaintiffs and the other Class members, without their consent – and indeed in direct contravention of instructions they clearly expressed by not affirmatively agreeing to, or expressly opting out of, location tracking on their Devices – violated and continues to violate Cal. Pen. Code § 637.7.

142.    Cal. Pen. Code § 637.7 prohibits the use of an electronic tracking device to determine the location or movement of a person.

143.    In direct violation of this prohibition and without the consent of Plaintiffs or the other Class members – and indeed in direct contravention of their clearly-expressed wishes – Defendants continued to record, store, and use Plaintiffs and the other Class members' location information after they did not affirmatively agree to, or expressly opted out of, third-parties accessing the location tracking on their Devices.

144.    As described herein, Defendants Google and Apple's Devices are "electronic tracking devices" under Cal. Pen. Code § 637.7(d) in that they are embedded with a host of technology – including but not limited to device components and operating system software – which allows Defendants Google and Apple to track Class members' location (and thereby "reveals [Class Members'] location or movement by the transmission of electronic signals."). Class Members' person is a "movable thing" under the statute.

145.    As a result of Defendants' violations of Cal. Pen. Code § 637.7, and pursuant to Cal. Pen. Code § 637.2, Plaintiffs and the other Class members are entitled to the following relief:

a.      A declaration that Defendants' alleged misconduct violates CIPA;

b.      Statutory damages and/or trebled actual damages;

c.      Injunctive relief in the form of, inter alia, an order enjoining Defendants from geolocating Class members in violation of CIPA;

d.      Injunctive relief in the form of, inter alia, an order requiring Defendants to destroy all data created or otherwise obtained from its illegal geolocation of Class members; and

e.      An award of attorney's fees and costs of litigation as provided by CIPA, the private attorney general doctrine existing at common law and codified at California Civil Code § 1021.5, and all other applicable laws.

### Ninth Claim for Relief Against Defendant Facebook Only

### Violations of California's Right of Publicity Statute
### (Cal. Civ. Code § 3344, *et seq.*)

146.   Plaintiffs hereby repeat, reallege, and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

147.   Defendant Facebook's terms of service provide that the laws of California will apply to any disputes between users, including Plaintiffs and Class members, and Defendant Facebook.

148.   California's Right of Publicity Statute, Cal. Civ. Code § 3344, *et seq.*, protects persons from the unauthorized appropriation of their identity by another for commercial gain.

149.   During the Class Period, Defendant Facebook knowingly used Plaintiffs' and the other Class Members' likeness, in the form of detailed location information, to directly advertise or sell a product or service.

150.   Facebook did not have Plaintiffs' or the other Class Members' consent to use their likeness to advertise or sell a product or service.

151.   Plaintiffs and the other Class Members received no compensation or other consideration for Facebook's use of their likeness to advertise or sell a product or service.

152.   Plaintiffs and the other Class Members were harmed by Facebook's actions.

153.   Facebook's actions were a substantial factor in causing Plaintiffs' and the other Class Members' harm.

154.    Use of Plaintiffs' and Class Members' likeness, in the form of detailed location information, was directly connected to Facebook's commercial use.

155.    The advertisements were not used in conjunction with news, public affairs, a sports broadcast or account, or a political campaign.

156.    Each incident is a separate and distinct violation of Cal. Civ. Code § 3344.

157.    Plaintiffs and the other Class Members therefore seek injunctive relief, and other such preliminary and other equitable or declaratory relief as may be appropriate.

158.    Plaintiffs and the other Class Members also seek remedy as provided for by Cal. Civ. Code § 3344(a) in the amount equal to the greater of $750 per incident, or actual damages, any profits attributive to Facebook's illegal action, before taking into account any actual damages, punitive damages, attorneys' fees and costs, and any other relief as may be appropriate.

### Tenth  Claim for Relief Against Defendants Google and Apple Only

**Violation of California's Consumer Legal Remedies Act ("CLRA") –
Unfair and Deceptive Acts and Practices (Cal. Civ. Code §§ 1750, *et seq.*)**

159.    Plaintiffs hereby repeat, reallege, and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

160.    Defendant Apple's and Google's terms of service provide that the laws of California will apply to any disputes between users, including Plaintiffs and Class members, and Defendants Apple and Google.

161.    This claim for relief is brought pursuant to the CLRA.  Plaintiffs and the other class members are "consumers," as that term is defined by Civil Code §1761(d), because they used their Devices for personal, family, or household purposes.

162.    Plaintiffs and the other Class members have engaged in a "transaction" with Defendants Apple and Google, as that term is defined by Civil Code §1761(e).

163.    The conduct alleged herein constitutes unfair methods of competition and unfair and deceptive acts and practices for the purposes of the CLRA, and were undertaken by Defendants Apple and Google in transactions intended to result in, and did result in, the sale of goods to consumers; namely, the purchase of their Devices containing Defendant Apple and/or Google's

operating system or installation of Defendant Apple and/or Google's applications onto their Devices.

164.   By engaging in the conduct described herein, Defendants Apple and Google violated subdivisions (a)(5), (a)(7), and (a)(9) of California Civil Code §1770 by, *inter alia*, misrepresenting and concealing the true nature of Defendants Apple and Google's operating systems and applications.

165.   By concealing the true nature and function of Defendants Apple and Google's operating systems and applications from Plaintiffs and the other Class members, Defendants Apple and Google represented, and continues to represent, that their  operating system and applications have characteristics, uses and benefits, or qualities that they do not have, and that they are of a particular standard, quality, or grade, when they are not, in violation of California Civil Code §1770, subsections (a)(5) and (a)(7).

166.   By engaging in the conduct alleged herein, Defendants Apple and Google also advertised, and continues to advertise, goods with the intent not to sell them as advertised, in violation of California Civil Code §1770(a)(9).

167.   Plaintiffs now seek an order requiring Defendants Apple and Google to: (a) cease violating the CLRA by using their operating system and applications to secretly monitor the location of users without their consent and to provide this location information to third-parties, such as Facebook; and (b) provide users of Defendants Apple and Google's operating systems and applications with notice of what improper data collection has taken place.

168.   Unless Defendants Apple and Google agree to correct, repair, replace, or otherwise rectify the problems created by their conduct as alleged herein, Plaintiffs will amend this Class Action Complaint to seek an order awarding actual damages and – because Defendants Apple and Google engaged in the conduct alleged herein deliberately and with willful and malicious intent – punitive damages.

**CLASS ACTION COMPLAINT**

## CLAIMS ALLEGED ON BEHALF OF THE COLORADO SUB-CLASS ONLY

### Eleventh  Claim for Relief

### Violation of Colorado Consumer Protection Act
### (Colo. Rev. Stat 6-1-101, *et seq.*)

169.    Plaintiffs hereby repeat, reallege, and incorporate by reference each and every allegation contained above as though the same were full set forth herein.

170.    Plaintiffs bring this cause of action on behalf of themselves and on behalf of the Colorado Sub-Class who are all Colorado residents.

171.    Defendants are a "person" as defined by Colo. Rev. Stat. § 6-1-102(6).  Plaintiffs and Colorado Sub-Class Members are actual or potential consumers of the products and services offered by the Defendants.

172.    Defendants operating in Colorado, engaged in deceptive, unfair, and unlawful trade acts or practices in the course of their business, vocation, or occupation in violation of Colo. Rev. Stat. § 6-1- 105, including but not limited to the following:

        a.    Knowingly misrepresenting and fraudulently advertising material facts pertaining to their products and services to the Colorado Sub-Class by representing and advertising that they would prevent Facebook's collection, use, and storage of Colorado Plaintiffs' and the other Colorado Sub-Class members' detailed location data in violation of Colo. Rev. Stat. §§ 6-1-105(e) and (g) by Defendant Facebook, and in violation of Colo. Rev. Stat. §§ 6-1-105(e), (g), (i), and (u) by Defendants Google and Apple; and

        b.    Knowingly omitting, suppressing, and concealing the material fact that the activation of certain settings would not prevent Facebook's collection, use, and storage of Colorado Plaintiffs' and the other Colorado Sub-Class members' detailed location data in violation of Colo. Rev. Stat. §§ 6-1-105(e) and (g) by Defendant Facebook, and in violation of Colo. Rev. Stat. §§ 6-1-105(e), (g), (i), and (u) by Defendants Google and Apple.

173.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers about Facebook's unauthorized collection, use, and storage of Plaintiffs' and the other Colorado Sub-Class members' detailed location data

174.    Defendants intended to mislead Plaintiffs and the other Colorado Sub-Class members and induce them to rely on Defendants' misrepresentations and omissions.

175.    Had Plaintiffs and the other Colorado Sub-Class members known the truth about Facebook's collection, use, and storage of their detailed location data, they would not have used, or would have limited their use of, Defendants' operating systems, applications, products and/or services.

176.    Defendants engaged in the above unfair and deceptive acts or practices in the course of their business.

177.    Defendants engaged in above unfair and deceptive acts or practices with malice and/or willfulness.

178.    As a direct and proximate result of Defendants' unfair and deceptive practices, Plaintiffs and Colorado Sub-Class members suffered injuries to legally protected interests, including their legally protected interest in the confidentiality and privacy of their personal information.

179.    The above unfair and deceptive practices and acts by Defendants were immoral, unethical, oppressive, and unscrupulous.   These acts caused substantial injury to Plaintiffs and Colorado Sub-Class members that they could not reasonably avoid even though they specifically opted out of, or never affirmatively agreed to, Defendants' collection and use of their location data. This substantial injury outweighed any benefits to consumers or to competition.

180.    Defendants knew or should have known that their misrepresentations and omissions would deceive Plaintiffs and Colorado Sub-Class members.   Defendants' actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiffs and Colorado Sub-Class members.

181.    Plaintiffs and other Colorado Sub-Class members seek relief under Colo. Rev. Stat. §§ 6-1-101, *et seq.*, including, but not limited to, compensatory damages, statutory damages, restitution, penalties, injunctive relief, and/or attorneys' fees and costs.

**CLASS ACTION COMPLAINT**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the other Class and Sub-Class members, respectfully request that this Court enter an Order:

A.      Certifying the Classes and the Colorado Sub-Class, and appointing Plaintiffs as Class Representatives and Colorado Plaintiffs as the Colorado Sub-Class Representative;

B.      Awarding monetary damages, including but not limited to, compensatory, incidental and consequential damages commensurate with proof at trial for the acts complained of herein;

C.      Awarding punitive damages in an amount consistent with applicable statutes and precedent for those causes of action that permit such recovery;

D.      Pursuant to California Civil Code § 1780(a)(2), requiring Defendants to:

      1.      provide users of Defendants operating systems, services, and/or applications with notice of their location monitoring activities; and

      2.      modify Defendants operating systems, services, and/or applications in a manner that prevents unauthorized monitoring of user location and other activities;

E.      For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendants' wrongful conduct;

F.      Appropriate declaratory relief against Defendants;

G.      Injunctive relief in the form of, inter alia, enjoining Defendants from continuing their practice of recording and using Plaintiffs' and the other Class members' location information against their wishes and in violation of CIPA;

H.      Injunctive relief related to CIPA in the form of, *inter alia*, requiring Defendants to destroy all data acquired, created, or otherwise obtained from the unlawful recording and use of the location information of Plaintiffs and the other Class members;

I.      Awarding damages pursuant to Cal. Pen. Code § 637.2;

J.      Awarding attorneys' fees, where applicable;

K.      Awarding costs;

L.      Awarding of pre- and post-judgment interest on any amounts awarded; and

43

M.    For any and all other relief, the Court deems just and appropriate.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury of all claims in this Class Action Complaint so triable.

DATED:  November 8, 2018                    Respectfully submitted,

*/s/ Ivy T. Ngo*
Ivy T. Ngo (249860)
Franklin D. Azar & Associates, P.C.
14426 E. Evans Avenue
Aurora, CO  80014
Telephone: 303-757-3300
Facsimile:  720-213-5131
Email:     ngoi@fdazar.com
*Counsel for Plaintiffs*

**CLASS ACTION COMPLAINT**