ROSEMARIE T. RING (SBN 220769)
Rose.Ring@mto.com
ANDREW CATH RUBENSTEIN (SBN 295116)
Andrew.Rubenstein@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street
Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone: (415) 512-4000
Facsimile: (415) 512-4077

LAURA D. SMOLOWE (SBN 263012)
Laura.Smolowe@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
Telephone:  (213) 683-9100
Facsimile:  (213) 687-3702

ZOE BEDELL (*pro hac vice*)
Zoe.Bedell@mto.com
MUNGER, TOLLES & OLSON LLP
1155 F Street N.W.
Seventh Floor
Washington, D.C. 20004-1357
Telephone: (202) 220-1100
Facsimile: (202) 220-2300

*Attorneys for Defendant Facebook, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| BRENDAN LUNDY, an individual and Colorado resident, and MYRIAH WATKINS, an individual and Colorado resident,<br><br>    Plaintiffs,<br><br>  vs.<br><br>FACEBOOK, INC.,<br><br>    Defendant. | Case No. 4:18-cv-06793-JD<br><br>**FACEBOOK, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge:  Hon. James Donato<br>Date:   February 13, 2020<br>Time:   10:00 a.m.<br>Courtroom: 11<br><br>Trial Date: None set |

1

# TABLE OF CONTENTS

2

**Page**

3    NOTICE OF MOTION AND MOTION TO DISMISS ................................................. vi

4    MEMORANDUM OF POINTS AND AUTHORITIES ...............................................1

5    I.      INTRODUCTION.............................................................................1

6    II.     PROCEDURAL HISTORY ................................................................3

7    III.    RELEVANT ALLEGATIONS ...........................................................3

8            A.      Facebook's Policies Regarding the Use of Location Information .............................3

9            B.      Plaintiffs' Settings and the IP Address Information Facebook Collected.................4

10           C.      Facebook's Accurate Disclosures .........................................5

11   IV.     ARGUMENT ...................................................................................6

12           A.      Plaintiffs Fail to Allege Facts Establishing Article III Standing...............................6

13                   1.      Plaintiffs Fail to Plead an Actionable Economic Injury.................................7

14                   2.      Plaintiffs Fail to Plead Injury Based on the Alleged Privacy Violation ..............8

15

16           B.      Plaintiffs Fail to State A Fraud Claim ..........................................9

17                   1.      Plaintiffs Fail to Plead Any Misrepresentations..........................................10

18                   2.      Plaintiffs Fail to Plead Any Omission of Material Fact or Duty to Disclose ..........11

19                   3.      Plaintiffs Fail to Satisfy Rule 9(b).............................................12

20           C.      Plaintiffs Fail to State Any Claim for Intrusion Upon Seclusion or Invasion of Privacy Under the California Constitution as a Matter of Law ..........................13

21                   1.      Plaintiffs Have No Reasonable Expectation of Privacy in their IP Addresses ..............13

22

23                   2.      The Collection and Use of IP Addresses is a Routine Commercial Practice that Cannot Constitute an Egregious Breach of Social Norms ..........................13

24

25           D.      Plaintiffs Fail to State a Contract or Implied Covenant Claim...............................15

26           E.      Plaintiffs Fail to State a Claim For Unjust Enrichment ...........................................15

27   V.      CONCLUSION ................................................................................15

28

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Aguilera v. Pirelli Armstrong Tire Corp.*,
    223 F.3d 1010 (9th Cir. 2000) ................................................................15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................8, 9, 12

*Astiana v. Hain Celestial Group, Inc.*,
    783 F.3d 753 (9th Cir. 2015) ................................................................15

*Bassett v. ABM Parking Services, Inc.*,
    883 F.3d 776 (9th Cir. 2018) ..................................................................9

*Bias v. Wells Fargo & Co.*,
    942 F. Supp. 2d 915 (N.D. Cal. 2013) ......................................................6

*Cahen v. Toyota Motor Corp.*,
    717 F. App'x 720 (9th Cir. 2017) ........................................................8, 9

*Chevron Corp. v. Donziger*,
    2013 WL 4536808 (N.D. Cal. Aug. 22, 2013) ...........................................13

*Digital Shape Techs., Inc. v. Glassdoor, Inc.*,
    2016 WL 5930275 (N.D. Cal. Oct. 12, 2016) ...........................................13

*Dutta v. State Farm Mut. Auto. Ins. Co.*,
    895 F.3d 1166 (9th Cir. 2018) .................................................................6

*E.D.C. Techs., Inc. v. Seidel*,
    216 F. Supp. 3d 1012 (N.D. Cal. 2016) .....................................................15

*In re Facebook Internet Tracking Litig.*,
    140 F. Supp. 3d 922 (N.D. Cal. 2015) .......................................................7

*In re Facebook Internet Tracking Litig.*,
    263 F. Supp. 3d 836 (N.D. Cal. 2017) ......................................................13

*Girard v. Toyota Motor Sales, U.S.A., Inc.*,
    316 F. App'x 561 (9th Cir. 2008) .......................................................10, 15

*Gonzalez v. Planned Parenthood of L.A.*,
    759 F.3d 1112 (9th Cir. 2014) ...............................................................12

*In re Google, Inc. Privacy Policy Litig.*,
    2015 WL 4317479 (N.D. Cal. July 15, 2015) ..........................................7, 8

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

*Hougue v. City of Holtville*,
  2008 WL 1925249 (S.D. Cal. Apr. 30, 2008) ............................................................15

*In re iPhone Application Litig.*,
  844 F. Supp. 2d 1040 (N.D. Cal. 2012) ...................................................................13

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ........................................................................10, 12

*Landucci v. State Farm Ins. Co.*,
  65 F. Supp. 3d 694 (N.D. Cal. 2014) ......................................................................15

*Lintz v. Bank of America, N.A.*,
  2013 WL 5423873 (N.D. Cal. Sept. 27, 2013) ...........................................................12

*Marble Bridge Funding Grp., Inc. v. Euler Hermes Am. Credit Indem. Co.*,
  225 F. Supp. 3d 1034 (N.D. Cal. 2016) ...................................................................10

*Med. Lab. Mgmt. Consultants v. Am. Broad. Companies, Inc.*,
  306 F.3d 806 (9th Cir. 2002) ..............................................................................14

*Moreno v. San Francisco Bay Area Rapid Transit Dist.*,
  2017 WL 6387764 (N.D. Cal. Dec. 14, 2017) ............................................................14

*In re Napster, Inc. Copyright Litig.*,
  479 F.3d 1078 (9th Cir. 2007) .............................................................................10

*Opperman v. Path, Inc.*,
  87 F. Supp. 3d 1018 (N.D. Cal. 2014) ..................................................................7, 8

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*,
  96 F.3d 1151 (9th Cir. 1996) ...............................................................................15

*Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*,
  522 F.3d 1049 (9th Cir. 2008) .............................................................................10

*Register.com, Inc. v. Verio, Inc.*,
  356 F.3d 393 (2d Cir. 2004) ..................................................................................8

*Rojas-Lozano v. Google, Inc.*,
  159 F. Supp. 3d 1101 (N.D. Cal. 2016) ..................................................................12

*Ruiz v. Gap, Inc.*,
  380 F. App'x 689 (9th Cir. 2010) .........................................................................15

*Ruiz v. Gap, Inc.*,
  540 F. Supp. 2d 1121 (N.D. Cal. 2008) ..................................................................14

## **TABLE OF AUTHORITIES**
### (Continued)

**Page(s)**

*Smith v. Facebook, Inc.*,
    745 F. App'x 8 (9th Cir. 2018)................................................................................10

*Smith v. Ford Motor Co.*,
    749 F. Supp. 2d 980 (N.D. Cal. 2010) ...................................................................11

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001)..................................................................................13

*Tran v. Kansas City Life Ins. Co.*,
    228 F. Supp. 3d 1068 (C.D. Cal. 2017)..................................................................15

*United States v. Acevedo-Lemus*,
    2016 WL 4208436 (C.D. Cal. Aug. 8, 2016) ..........................................................9

*United States v. Jean*,
    207 F. Supp. 3d 920 (W.D. Ark. 2016), aff'd, 891 F.3d 712 (8th Cir. 2018) ...........8

*Wang v. OCZ Tech. Grp., Inc.*,
    276 F.R.D. 618 (N.D. Cal. 2011) ..........................................................................12

*Wheeler v. MicroBilt Corp.*,
    700 F. App'x 725 (9th Cir. 2017)............................................................................9

*Williams v. Facebook, Inc.*,
    384 F. Supp. 3d 1043 (N.D. Cal. 2018) ..................................................................9

**STATE CASES**

*Catsouras v. Dep't of Cal. Highway Patrol*,
    181 Cal. App. 4th 856 (2010)................................................................................14

*Charnay v. Cobert*,
    145 Cal. App. 4th 170 (2006)................................................................................10

*Folgestrom v. Lamps Plus, Inc.*,
    195 Cal. App. 4th 986 (2011)................................................................................14

*Hernandez v. Hillsides, Inc.*,
    47 Cal. 4th 272 (2009)...........................................................................................13

*Hill v. Nat'l Collegiate Athletic Ass'n*,
    7 Cal. 4th 1 (1994)................................................................................................13

*Planned Parenthood v. Superior Court*,
    83 Cal. App. 4th 347 (2000)..................................................................................14

1

## TABLE OF AUTHORITIES
### (Continued)

2

Page(s)

3

*Small v. Fritz Companies, Inc.*,
    30 Cal. 4th 167 (2003)................................................................10

4

*Susan S. v. Israels*,
    55 Cal. App. 4th 1290 (1997)........................................................14

5

6

*Urbaniak v. Newton*,
    226 Cal. App. 3d 1128 (1991)........................................................14

7

8

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    2017 WL 3727318 (N.D. Cal. Aug. 30, 2007)..............................15

9

**STATE STATUTES**

10

California Civil Code §§ 1709, 1710 ..............................................9

11

**FEDERAL RULES**

12

Federal Rule of Civil Procedure 9(b) ..............................2, 10, 12

13

14

**CONSTITUTIONAL PROVISIONS**

15

Fourth Amendment ........................................................................9

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that on February 13, 2020, at 2:00 p.m., before the Honorable James Donato in Courtroom 11 on the 19th floor of the above-entitled court located in San Francisco, California, Defendant Facebook, Inc. ("Facebook") will and hereby does move to dismiss all claims advanced by Plaintiffs Brendan Lundy and Myriah Watkins ("Plaintiffs") in this case. This motion is brought pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and is based on the Notice of Motion and Motion, the Memorandum of Points and Authorities, the Request for Incorporation by Reference, the Declaration of Laura D. Smolowe, all pleadings and papers on file, and such other matters as may be presented to this Court.

## STATEMENT OF RELIEF SOUGHT

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Facebook requests that the Court dismiss with prejudice all of Plaintiffs' claims.

## STATEMENT OF ISSUES TO BE DECIDED

Whether Plaintiffs' First Amended Complaint ("FAC") alleges facts demonstrating Article III standing under Federal Rule of Civil Procedure 12(b)(1) and whether the FAC states a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.      INTRODUCTION**

Plaintiffs Brendan Lundy and Myriah Watkins accuse Facebook of fraud, breach of contract, and privacy violations based on allegations that Facebook collects and uses Internet Protocol addresses ("IP addresses") to *estimate* the locations of users. But Facebook has not misrepresented its practices or breached any contract in doing so. To the contrary, Facebook offers users the ability to download reports showing IP addresses that have been collected and estimated locations inferred from those addresses, and it clearly notifies users of this feature in its Data Policy. Nor does Facebook's collection and use of IP addresses to estimate user locations violate any reasonable expectation of privacy. IP addresses are freely, publicly, and automatically shared as a necessary component of every internet communication, and *any* party to such communication can estimate the location of the other party's IP address by using generally available online tools. *E.g.*, First Amended Complaint (Dkt. 80) ("FAC") ¶ 54 (listing fifteen different such tools, such as IP2Location.net and Ipgeolocation.io). Indeed, despite their contention that the challenged practices "significantly violate" their privacy rights, Plaintiffs admit that they did not stop using Facebook after "discovery" of these practices, and have instead continued using Facebook while they search for a viable theory of liability in this case. Like their initial complaint, Plaintiffs' FAC fails to state any claim, and must be dismissed.

Plaintiffs' initial complaint was based on Facebook's alleged misrepresentations regarding collection and use of a different type of data—*precise location data* (*i.e.*, GPS, Bluetooth, and other data identifying the precise location of user devices and transmitted from those devices to Facebook). *E.g.*, Complaint (Dkt. 1) ("Compl.") ¶¶ 1, 11, 14. But as Facebook pointed out in its motion to dismiss the initial complaint, Plaintiffs' own records contradicted this allegation, as those files did not contain the precise location data alleged by Plaintiffs—only IP addresses and estimated locations. *See* Dkts. 80-1 at 2-5; 80-3 at 2-4.

In the FAC, Plaintiffs abandoned these allegations for a new theory of liability based solely on the collection and use of IP addresses to infer estimated user locations. *E.g.*, FAC ¶¶ 1-3, 47-48. But Plaintiffs do not identify any representation by Facebook that turning off the settings at

issue (which have nothing to do with IP addresses) stops the collection or use of IP addresses—because Facebook never made any such representation.  Nor would such a representation make any sense given that a user's IP address is a necessary component of every internet communication and Facebook cannot communicate with its users without it.  That is why Facebook has been transparent about its collection and use of IP addresses, and, as Plaintiffs admit, has even built tools that allow users to see that Facebook continues to collect IP addresses and infer estimated locations when the settings at issue are off.  Plaintiffs' claim that they were deceived is belied by the actual facts they allege.  Likewise, their contention that the challenged practices are so egregious as to violate their common law or constitutional privacy rights is contradicted by their admission that after learning of these practices they have continued using Facebook.

Plaintiffs' claims fail as a matter of law.  *First*, Plaintiffs cannot establish Article III standing because their conclusory and speculative allegations do not constitute injury in fact.  *Second*, Plaintiffs fail to state any fraud claim because Facebook did not misrepresent its practices.  Moreover, Plaintiffs admit that they *still use* Facebook even after discovering the challenged practices, FAC ¶¶ 10, 12, 15, 17, which is fatal to any argument that they relied on the alleged misrepresentations to their detriment.  And Plaintiffs do not even attempt to meet Rule 9(b)'s heightened pleading standard for their fraud claims.  *Third*, Plaintiffs' privacy claims fail because they did not have a reasonable expectation of privacy in their IP addresses, and Facebook's alleged practices are not, as a matter of law, "egregious" breaches of social norms.  *Fourth*, there was no breach of contract because Facebook has acted consistent with its policies and Plaintiffs have failed to adequately allege any damages.  And the claim for breach of the implied covenant of good faith and fair dealing fails because it is based on the same conduct as the breach of contract claim, and because Plaintiffs have failed to adequately allege bad faith.  *Fifth*, Plaintiffs' claim for unjust enrichment fails because there is no dispute that the parties have a binding contract that covers the alleged misconduct in question, and because there was no actionable fraud.

Because amendment would be futile, Facebook requests that the Court dismiss the FAC with prejudice.

## II.      PROCEDURAL HISTORY

On November 8, 2018, Plaintiffs filed their initial complaint against Facebook, Google, and Apple alleging that the defendants misrepresented to a putative class of users that turning off a setting on their mobile devices (phones, iPads, tablets, etc.), known as Location Services, would stop the collection of precise location data by the defendants.  Compl. ¶¶ 1, 11, 14.  Each defendant moved to dismiss, arguing, *inter alia*, that Plaintiffs failed to allege that the defendants in fact collected precise location data.  Contrary to Plaintiffs' allegations, Facebook collected only IP addresses and inferred estimated locations from those IP addresses.  *E.g.*, Dkt. 48 at 5-7.  Facebook's motion further argued that Facebook never misrepresented this practice.  Dkt. 48 at 2-5.  On August 16, 2019, after the motions to dismiss were fully briefed but not yet heard, Plaintiffs voluntarily dismissed Google and Apple.  Dkt. 72.

Plaintiffs filed their FAC against Facebook only on September 27, 2019, substantially revising their allegations in several fundamental respects.  Dkt. 80.  First, whereas the initial complaint had no time limitation, Compl. ¶ 63, the FAC limits the alleged wrongdoing to the period *prior to* April 19, 2018, FAC ¶ 99.  Plaintiffs now concede that Facebook's representations after April 2018 fully and accurately described Facebook's practices.  *See id.* ¶¶ 25-28.  Second, Plaintiffs removed the allegation that Facebook collected precise location data about Plaintiffs, *e.g.*, Compl. ¶¶ 1, 11, 14.  Now, the FAC alleges that Facebook collected only IP addresses and estimated locations inferred from those addresses.  *E.g.*, FAC ¶¶ 1-3, 47-48.

## III.     RELEVANT ALLEGATIONS

### A.      Facebook's Policies Regarding the Use of Location Information

Facebook operates an online social networking platform, which users access free of charge.  FAC ¶¶ 10, 15, 20.  To create an account, all users must accept and are bound by Facebook's Statement of Rights and Responsibilities ("SRR").  *Id.* ¶¶ 29, 160.  Facebook also has a Data Policy[1] governing what information Facebook collects and how it is used.  *Id.* ¶¶ 23-24; Dkt. 80-1 at 2.  These policies form the basis of Plaintiffs' contract claims.  FAC ¶ 160.

---

[1] Although Plaintiffs repeatedly refer to this policy as Facebook's "Privacy Policy," it is actually entitled "Data Policy," and this Motion refers to it accurately as such.  *See* Dkt. 80-1 at 1.

To provide its services, and consistent with user settings, Facebook collects different types of information from users, including information about users' locations.  Dkt. 80-1 at 2-4 (Data Policy); *see also* Smolowe Decl., Ex. A (Location Settings Learn More).[2]  Facebook uses this information for a variety of purposes, including to support and improve its services, communicate with users, show users relevant ads, and promote safety and security both on and off the Facebook platform.  *See* Dkt. 80-3 at 2-4.  Location information specifically can be used to help users find nearby events, show them local news, or provide geographically relevant advertisements.  *Id*. Location information also helps power features that let friends check in as "safe" during a crisis, and keeps users' accounts secure by enabling Facebook to identify suspicious login activity.  *Id.*

**B.      Plaintiffs' Settings and the IP Address Information Facebook Collected**

Plaintiffs allege that they own and use mobile devices—an Apple iPhone 6 and various Android devices—on which they downloaded the Facebook mobile application.  FAC ¶¶ 10, 15. Plaintiffs further allege that there are two settings that Facebook represented to users "would prevent Facebook from tracking, collecting, storing and using their location data" if turned off.  *Id*. ¶ 4.  The first is a setting on the mobile devices themselves—referred to as "Location Services" on Apple devices and "App Permissions" on Android devices (referred to here and in the FAC together as "Location Services").  *E.g.*, *id*. ¶¶ 11, 16, 33, 41.  The second, "Location History," is a setting within the Facebook application itself.  *Id.* ¶¶ 4, 11, 16, 38.  Plaintiffs' initial complaint alleged that they turned off only Location Services; the FAC now alleges that Plaintiffs turned off both Location Services and Location History.  *Compare* Compl. ¶¶ 10, 13, *with* FAC ¶¶ 11, 16. Plaintiffs allege that, even though they turned off those settings, "Facebook nevertheless collected users' IP addresses" and "identified the users' locations through their IP addresses."  *E.g.,* FAC ¶¶ 3, 47.  Plaintiffs no longer allege that Facebook collected their precise locations based on GPS, Bluetooth, or Wi-Fi.  *E.g.* Compl. ¶¶ 1, 11, 14.  It did not.

---

[2] The exhibit attached to the Declaration of Laura D. Smolowe in Support of Facebook's Motion to Dismiss ("Smolowe Decl.") may be considered for the reasons explained in Facebook's Request for Incorporation by Reference, filed concurrently herewith.

**C.**     **Facebook's Accurate Disclosures**

Although Plaintiffs claim in conclusory fashion that Facebook "represent[ed] . . . that it would not collect location information of any kind, including location information derived from IP addresses" if users turned off Location Services and Location History, FAC ¶¶ 2-3, they do not actually identify any such representations.  Nor could they.

In its Data Policy (Exhibit 1 to the FAC), Facebook discloses that it collects different kinds of information from or about users, including: "Things you do and information you provide," "Things others do and information they provide," "Your network and connections," and "Device information," which explicitly includes "IP address."  Dkt. 80-1 at 1-2; FAC ¶ 24.  Plaintiffs focus on Facebook's description of "Device information," but contrary to their claim, the description does *not* say that Facebook "would not collect device information of any kind, including location data through IP addresses, unless a user expressly permitted Facebook to do so."  FAC ¶ 23. Rather, it explains that "depending on the permissions you've granted" Facebook *may* collect several different types of device information.  The language does not mention Location Services or Location History at all, let alone that those settings control the collection or use of IP addresses.

The Location Services and Location History settings are described in greater detail on the "Learn More" page in Location Settings.  *E.g.*, *id.* ¶¶ 38-40; Smolowe Decl., Ex. A.  This page, which Plaintiffs allege was in effect during the relevant time period and is incorporated by reference in the FAC, FAC ¶¶ 38-40, explains that *Location History* is an application setting that builds a history of precise locations received through Location Services on user devices, and that *Location Services* is a device setting that "helps Facebook provide [users] with location features." *Id.*; Smolowe Decl., Ex. A.  Facebook explains that "[w]hen Location History is turned off, Facebook will stop adding new information to your Location History" but that if Location Services is on, "Facebook may still receive your most recent precise location."  FAC ¶ 40.[3] Facebook also explains that if "Location Services is turned off, Facebook won't add new information to your Location History, even if you've turned on Location History."  *Id.*  This page

---

[3] As Plaintiffs acknowledge, as of April 2018, the language in Facebook's disclosures is even more explicit in describing Facebook's collection and use of IP addresses.

does not represent that turning off these settings will stop all collection of IP addresses; indeed, it does not mention IP address at all.

Facebook makes clear that it is collecting IP addresses, and inferring approximate locations therefrom, even when Location Services and Location History are off.  As the FAC itself alleges, Facebook allows users to download reports showing information Facebook has collected about them (known as the "Download Your Information" or "DYI" tool).  *E.g.*, FAC ¶¶ 11-12, 16-17, 40.  Facebook clearly notifies users of this feature in the Data Policy.  Dkt. 80-1 at 6.  The "Login Protection Data" and "Where You're Logged In" folders—both contained within the same DYI file—transparently disclose that Facebook collects IP addresses and "estimated location[s] inferred from IP" even when Location Services and Location History are off.  FAC ¶¶ 11-12, 16-17, 48.  Indeed, Plaintiffs admit that, when they accessed the DYI tool, they could see from the Facebook website that it was collecting their IP address information.  That, in fact, is how they claim to have learned about Facebook's collection and use of IP addresses in the first place.  *See id.*

Nowhere in the 195-paragraph FAC do Plaintiffs allege that they relied upon, were injured by, or even saw any of the alleged misrepresentations (which, as noted, are not misrepresentations at all).  Plaintiffs allege that they "would not have installed or used the Facebook App" had they known about Facebook's practices.  FAC ¶¶ 13, 18, 35, 46.  But they are now unquestionably aware that Facebook collects their IP addresses whenever their app communicates with the services, even if they turn off the Location Services and Location History settings.  And by their own admission, Plaintiffs should have known of this practice as early as April 19, 2018, the point at which Plaintiffs themselves admit Facebook's policies adequately disclosed this practice.  Remarkably, Plaintiffs admit that, nevertheless, *they still use* Facebook.  *Id.* ¶¶ 10, 12, 15, 17.

## IV.    ARGUMENT[4]

### A.    Plaintiffs Fail to Allege Facts Establishing Article III Standing

Plaintiffs fail to plead adequately the "injury in fact" necessary to demonstrate Article III standing.  *Dutta v. State Farm Mut. Auto. Ins. Co.*, 895 F.3d 1166, 1173 (9th Cir. 2018).

---

[4] Facebook assumes, without, conceding, that California law applies for purposes of this Motion only.  *See, e.g.*, *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 928 (N.D. Cal. 2013).

1                       1.      *Plaintiffs Fail to Plead an Actionable Economic Injury*

2        Economic injury for alleged privacy violations requires non-speculative allegations not

3 only (a) that information at issue has a market value but also (b) that the information has lost value

4 or the plaintiffs' ability to participate in the market has been impaired as a result of the defendant's

5 conduct.[5]  Plaintiffs fail to plead either of these elements.

6        First, Plaintiffs' allegations of market value—that Facebook "bundled" their location data

7 with other personal information about them and that these bundles have an "established market

8 value of at least $0.05 per individual (per bundle)," FAC ¶¶ 14, 19—are purely conjectural.

9 Plaintiffs' sole basis for this claim is that, in unrelated litigation, a court "accepted plaintiffs'

10 allegation that call and text logs are often sold for, and have an established market value of,

11 approximately $0.05 for individual [sic]."  *Id.* ¶ 76.  This is a complete non-sequitur.  That a

12 different plaintiff in unrelated litigation alleged that different information (call and text logs) has a

13 market value of $0.05 does not remotely support the allegation that the information in this case (IP

14 addresses) has any monetary value—much less the same value.  Plaintiffs' further assertion that

15 the "average cost per click for an online Facebook advertisement" in 2017 was $1.72 is equally

16 irrelevant.  FAC ¶ 75.  Even assuming (without conceding) that this allegation accurately reflects

17 Facebook's ad pricing, that pricing suggests nothing about the "market value" of the IP addresses

18 at issue here.  Moreover, Plaintiffs' allegations of "market value" all relate to the value of the

19 alleged *bundles* of their location data combined with other personal information—information

20 *which Plaintiffs have not alleged was improperly collected or used*.  *E.g., id.* ¶¶ 14, 19, 77.  The

21 alleged value of the "bundles" says nothing about the value of Plaintiffs' IP addresses.  Plaintiffs'

22 allegations are particularly implausible given that users freely share their IP addresses any time

23 they communicate over the internet.  *See infra*, § IV.A.2.

24        Second, Plaintiffs have failed to allege a *loss* in value or an impairment of their ability to

25 participate in the "established" market.  *See In re Facebook Internet Tracking Litig.*, 140 F. Supp.

26

27 [5] *See, e.g., In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 931-32 (N.D. Cal. 2015) (requiring both elements and citing cases); *In re Google, Inc. Privacy Policy Litig.*, 2015 WL

28 4317479, at *5 (N.D. Cal. July 15, 2015) (same); *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1056-57 (N.D. Cal. 2014) (same).

           Case No. 4:18-cv-06793-JD

FACEBOOK'S MEM. OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS FAC

3d at 931-32 (rejecting claim of standing where, as here, the plaintiffs failed to "adequately connect this value to a realistic economic harm or loss that is attributable to Facebook's conduct" by showing that plaintiffs "personally lost the opportunity to sell their information or that the value of their information was somehow diminished."); *In re Google, Inc. Privacy Policy Litig.*, 2015 WL 4317479, at *5 (rejecting standing on same grounds).  Plaintiffs here include nothing but a conclusory allegation that their information "has diminishing value now that Facebook has collected and sold it."  FAC ¶¶ 14, 19, 76.  That "'naked assertion[]' devoid of 'further factual enhancement'" is insufficient.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Opperman*, 87 F. Supp. 3d at 1056-57 (rejecting similar conclusory allegation of diminution in value).

2.      *Plaintiffs Fail to Plead Injury Based on the Alleged Privacy Violation*

Nor can Plaintiffs establish standing based on non-economic injury from the alleged privacy violation.  In the Ninth Circuit, the routine collection and use of IP addresses as alleged in this case, particularly without disclosure, is not actionable.  *See, e.g.*, *Cahen v. Toyota Motor Corp.*, 717 F. App'x 720, 724 (9th Cir. 2017) (no Article III injury based on the collection and disclosure of user location data, absent "specific allegations" that the location data at issue was "sensitive or individually identifiable").  Here, Plaintiffs do not—and cannot—allege that they have a reasonable expectation of privacy in IP addresses, let alone that IP addresses are sensitive or individually identifiable.  To the contrary, as numerous courts (and even the FAC itself) recognize, IP addresses—and a user's sharing of that information widely—are an essential part of how the internet functions.  Every device that is connected to the internet is assigned an IP address that identifies its particular connection to the internet, FAC ¶ 1 n.1, and that "serves as the routing address for [all] data sent across the Internet from other end-users."  *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 409 (2d Cir. 2004); *see also United States v. Jean*, 207 F. Supp. 3d 920, 928-29 (W.D. Ark. 2016), *aff'd*, 891 F.3d 712 (8th Cir. 2018) (An IP address "is always attached, like a 'return address,' to every 'envelope' of information exchanged back and forth by computers that are actively communicating with each other over the internet.").  The sharing of IP addresses is thus inherent in every internet communication.

Indeed, an IP address by itself does not identify the location of computers or devices.  As the FAC concedes, it must be combined with other data to estimate location.  *E.g.*, FAC ¶¶ 3, 48. And publicly available tools can readily identify the estimated location associated with any given IP address.  *Id.* ¶ 54 (citing fifteen different examples of such tools, including specific websites where they can be accessed).  Thus, in the Fourth Amendment context, "the Ninth Circuit has on a number of occasions concluded that Internet users do not have reasonable expectations of privacy in their own IP addresses."  *United States v. Acevedo-Lemus*, 2016 WL 4208436, at *4 (C.D. Cal. Aug. 8, 2016) (collecting cases).  Nor do Plaintiffs allege that Facebook disclosed their IP addresses or the estimated locations inferred from those addresses to any third party, further undermining their claim of injury.[6]  *See, e.g.*, *Bassett v. ABM Parking Services, Inc.*, 883 F.3d 776, 780 (9th Cir. 2018)  ("Without disclosure of private information to a third party, it hardly matters that '[a]ctions to remedy . . . invasions of privacy, intrusion upon seclusion, and nuisance have long been heard by American courts, and the right of privacy is recognized by most states.'"); *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1050 (N.D. Cal. 2018) (holding that standing for common law privacy claims "depends on the sufficiency of the averred disclosure of sensitive private information to third parties").[7]

## B.     Plaintiffs Fail to State A Fraud Claim

Plaintiffs' FAC alleges three overlapping fraud claims: intentional misrepresentation and omission (count 3), deceit by concealment or omission under California Civil Code sections 1709 and 1710 (count 4), and negligent misrepresentation (count 7).  All require: (1) a misrepresentation or omission of material fact; (2) knowledge of falsity; (3) intent to defraud or to induce reliance;

---

[6] The FAC claims that Facebook "sold" the location data it collected by allegedly "bund[ling] [users'] location information with other user information and . . . selling it for targeted advertising purposes."  FAC ¶¶ 1, 3, 14, 19, 63-73.  But enabling advertisers to target ads by location does not involve *disclosure* of the allegedly sensitive personal information.

[7] Plaintiffs' other formulaic recitations of injury are insufficient.  *E.g.*, FAC ¶ 148.  *Iqbal*, 556 U.S. at 678; *see also, e.g.*, *Cahen*, 717 F. App'x at 723-24 (no standing where plaintiffs failed to allege specific facts about how collection of information caused actual injury); *Wheeler v. MicroBilt Corp.*, 700 F. App'x 725, 727 (9th Cir. 2017) (rejecting conclusory allegations of damage).

(4) justifiable reliance; and (5) resulting damage.[8]  Negligent misrepresentation relaxes only the intent element.  *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1055 (9th Cir. 2008); *Charnay v. Cobert*, 145 Cal. App. 4th 170, 184 (2006).  Rule 9(b) requires that "'[a]verments of fraud must be accompanied by "the who, what, when, where, and how" of the misconduct charged.'"  *Kearns*, 567 F.3d at 1124-25.  The claims fail for several reasons.

### 1.    *Plaintiffs Fail to Plead Any Misrepresentations*

Aside from conclusory allegations that they were misled, Plaintiffs' FAC does not identify a single statement in which Facebook represented that it "would not collect [Plaintiffs'] location data, including location data obtained from IP addresses, if they toggled the 'Location History' setting to 'off' and turned off the location services settings on their respective devices."  FAC ¶¶ 2, 46.  To the contrary, Facebook fully and accurately discloses its practices.  *See supra*, § III.C.  No reasonable user would misunderstand Facebook's representations as Plaintiffs allege.  *See Girard v. Toyota Motor Sales, U.S.A., Inc.,* 316 F. App'x 561, 563 (9th Cir. 2008) (rejecting alleged understanding of representations as unreasonable); *Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018) (same, explaining that "Facebook is not bound by promises it did not make").[9]

Indeed, Plaintiffs say that they "assumed" that Facebook had not collected their IP addresses because they downloaded their "location_history" DYI folder, and it contained no data. FAC ¶¶ 11, 16, 48.  But by Plaintiffs' own admission, those same DYI files contained IP addresses from Plaintiffs and "estimated location[s] inferred from IP."  *Id.* ¶¶ 11-12, 16-17, 48.  In other words, Plaintiffs admit in their own pleading that they *learned from Facebook's own disclosures* that it was collecting and using IP addresses.  As described *supra* at § IV.A.2, the sharing of IP address is fundamental to every communication on the internet.  And Facebook explicitly shows

---

[8] *See Marble Bridge Funding Grp., Inc. v. Euler Hermes Am. Credit Indem. Co.*, 225 F. Supp. 3d 1034, 1039 (N.D. Cal. 2016) (intentional misrepresentation); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (fraudulent omission); *In re Napster, Inc. Copyright Litig.*, 479 F.3d 1078, 1096 (9th Cir. 2007) (§§ 1709-10); *Small v. Fritz Companies, Inc.*, 30 Cal. 4th 167, 172 (2003) (§§ 1709-10 "codify the common law actions for fraud and deceit").

[9] The FAC refers to other statements by Facebook, such as congressional testimony and other public statements.  *E.g.* FAC ¶¶ 43, 57, 59.  But Plaintiffs do not allege that these statements are deceptive or that Plaintiffs ever saw or relied upon them.

1  users (through the DYI files) that it collects and uses this information.  This is not fraud; it is a

2  basic feature of communicating over the internet.

3        2.      *Plaintiffs Fail to Plead Any Omission of Material Fact or Duty to Disclose*

4        Tacitly acknowledging that they cannot identify any actual misrepresentations, Plaintiffs

5  pivot in the FAC to a theory based on alleged omissions.  First, the FAC alleges that Facebook

6  failed to disclose that it not only inferred estimated locations from users' IP addresses but also

7  used "enhanced location tracking methodologies" to "more accurately pinpoint locations from IP

8  addresses."  FAC ¶¶ 51-58.  Second, the FAC alleges that Facebook failed to disclose that, in

9  addition to inferring estimated locations from IP addresses, Facebook "bundle[d] this enhanced

10 location information with users' other personal information obtained from their Facebook pages,

11 including their browsing history, profiles and likes" and "then monetized this bundled personal

12 information for targeted advertising purposes."  *Id.* ¶ 63.  These theories fail as well.

13       For one thing, Facebook *does* disclose that it uses the information it collects by itself or in

14 conjunction with other information.  Per the Data Policy: "We use all of the information we have

15 to help us provide and support our services," and "When we have location information, we use it

16 to tailor our Services for you and others . . . ."  Dkt. 80-1 at 3.  The policy also contains a lengthy

17 description of the personal information that Facebook collects about users—including "[y]our

18 network and connections," and "[d]evice information" (including IP addresses) —and it clearly

19 discloses that Facebook "use[s] the information we have to improve our advertising and

20 measurement systems so we can show you relevant ads on and off our services."  *Id.* at 2-4.

21       Further, Plaintiffs do not, and cannot, allege the necessary predicate facts giving rise to a

22 duty to disclose—a requirement for a fraud claim based on concealment or omission: that the

23 defendant (1) is in a fiduciary relationship with plaintiff; (2) had exclusive knowledge of material

24 facts not known to plaintiff; (3) actively concealed a material fact from plaintiff; or (4) made

25 partial representations but also suppressed some material facts.  *See Smith v. Ford Motor Co.*, 749

26 F. Supp. 2d 980, 987 (N.D. Cal. 2010).  Plaintiffs do not even try to claim that the parties were in

27 a "fiduciary" relationship.  Nor did Facebook have any "exclusive knowledge."  Facebook not

28 only discloses that it uses IP addresses to improve its services and provide targeted advertising,

1   but also it built a tool that allows users to see and download a report (which Plaintiffs did) that

2   includes IP addresses associated with their Facebook account and estimated locations associated

3   with those IP addresses.  Nor can Plaintiffs claim that any allegedly omitted facts were "material"

4   to them as they *still use Facebook* to this day.  FAC ¶¶ 10, 12, 15, 17; *see also Rojas-Lozano v.*

5   *Google, Inc.*, 159 F. Supp. 3d 1101, 1113 (N.D. Cal. 2016) (rejecting omission claim where

6   plaintiffs did not plausibly allege that, "had the omitted fact been disclosed, Plaintiff would not

7   have . . . signed up for a free Gmail account").

8                    3.       *Plaintiffs Fail to Satisfy Rule 9(b)*

9          To satisfy Rule 9(b), a plaintiff must plead "when he was exposed to the [alleged

10   misrepresentation]," *Kearns*, 567 F.3d at 1126, as well as "which exact misrepresentation [she]

11   relied on, whether that misrepresentation induced [her] decision, or whether [she] would have

12   acted different had there been no misrepresentation," *Lintz v. Bank of America, N.A.*, 2013 WL

13   5423873, at *6 (N.D. Cal. Sept. 27, 2013).  The FAC fails to meet this standard.

14          Plaintiffs do not allege that they saw any of the allegedly deceptive representations, let

15   alone when or how they reasonably relied on them in deciding to use Facebook.  *See Kearns*, 567

16   F.3d at 1126 (rejecting fraud claim where plaintiff failed to allege the "particular circumstances

17   [of]" *his exposure* to the challenged representations, including "when he was exposed to" them,

18   "which ones he found material," and "which . . . he relied upon in making his decision); *Wang v.*

19   *OCZ Tech. Grp., Inc.*, 276 F.R.D. 618, 627 (N.D. Cal. 2011) (same); *Lintz*, 2013 WL 5423873, at

20   *6 (same).  Plaintiffs' conclusory allegations that they "reasonably understood" or "justifiably

21   relied" on Facebook's representations, *e.g.*, FAC ¶¶ 4, 35, 146, are merely "formulaic recitation[s]

22   of the elements of a cause of action" that fail to state a fraud claim.  *Iqbal*, 556 U.S. at 678.

23          Moreover, Plaintiffs admit they downloaded their DYI files, which transparently contained

24   IP addresses and estimated locations, and that nonetheless they *still* use Facebook.  *See supra*,

25   § III.C.  This further undermines any allegation of deception, let alone reasonable reliance.  *See*

26   *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014) ("[W]e 'need not . .*

27   . accept as true allegations that contradict matters properly subject to judicial notice or by

28

1   exhibit.'"); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("[A] plaintiff

2   can . . . plead himself out of a claim by including unnecessary details contrary to his claims.").

### C.   Plaintiffs Fail to State Any Claim for Intrusion Upon Seclusion or Invasion of Privacy Under the California Constitution as a Matter of Law

With respect to the claims for intrusion upon seclusion and invasion of privacy, "courts conduct a combined inquiry that considers '(1) the nature of any intrusion upon reasonable expectations of privacy, and (2) the offensiveness or seriousness of the intrusion, including any justification and other relevant interests.'" *In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 846 (N.D. Cal. 2017). Plaintiffs must demonstrate (1) that they had an objectively reasonable expectation of privacy and (2) that any invasion of their privacy was "sufficiently serious . . . to constitute an egregious breach of the social norms underlying the privacy right." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 37 (1994); *see also Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287-88 (2009). Plaintiffs cannot satisfy either element.

### 1.   Plaintiffs Have No Reasonable Expectation of Privacy in their IP Addresses

Plaintiffs cannot establish that they had a reasonable expectation of privacy in IP addresses. Facebook never represented that it would stop collecting or using IP addresses when Location Services or Location History was off. *See supra*, § III.C. To the contrary, Facebook *discloses*, through the DYI files, that it has collected IP addresses and inferred estimated locations from those addresses. *See supra*, § III.C. In any case, as noted *supra* at § IV.A.2, Plaintiffs can claim "no right to privacy with respect to an IP address because an IP address alone does not provide any personal identifying information." *Digital Shape Techs., Inc. v. Glassdoor, Inc.*, 2016 WL 5930275, at *5 (N.D. Cal. Oct. 12, 2016); *see also Chevron Corp. v. Donziger*, 2013 WL 4536808, at *10 (N.D. Cal. Aug. 22, 2013) (same).

### 2.   The Collection and Use of IP Addresses is a Routine Commercial Practice that Cannot Constitute an Egregious Breach of Social Norms

Nor can Plaintiffs establish an "'[a]ctionable invasion[] of privacy . . . sufficiently serious in [its] nature, scope, and actual or potential impact to constitute an egregious breach of the social norms'" because it is "'routine commercial behavior'" for websites to collect IP addresses and use them to infer location. *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal.

2012).  Plaintiffs must show "an exceptional kind of prying into another's private affairs," *Med. Lab. Mgmt. Consultants v. Am. Broad. Companies, Inc.*, 306 F.3d 806, 819 (9th Cir. 2002), along with public disclosure of highly private facts in sensitive situations—such as disclosing to abortion clinic protesters the names, home addresses, and phone numbers of clinic employees and volunteers; images of an accident victim over the internet; a patient's HIV status to third parties; or confidential mental health records.[10]  But any internet user can use publicly available, free services to estimate the location of an IP address.  *See* FAC ¶ 53-55.  This does not come close to the kind of "prying" that courts have found actionable.  Thus, courts in California have repeatedly held that a business's collection *and even disclosure* of customer data is a "routine commercial behavior" that does not rise to an "egregious breach of social norms."  *Folgestrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011) (no violation for obtaining individual's home "address without his knowledge or permission, and us[ing] it to mail him coupons and other advertisements").  Facebook's alleged collection and use (not disclosure) of IP addresses is a far more "routine commercial practice" than other practices that failed to state a claim.  *E.g.*, *In re iPhone Application Litigation*, 844 F. Supp. 2d at 1050-51, 1063 (collection *and disclosure* of precise locations from devices after users turned off Location Services not actionable).[11]

As Plaintiffs recognize, *see, e.g.,* FAC ¶¶ 53-55, estimating location based on IP addresses is both a routine practice and a publicly available function, and Facebook's combination and use of that information to provide and improve Facebook's services—as disclosed in its Data Policy—does not render that practice an "egregious breach of social norms."  Plaintiffs themselves apparently do not find this behavior especially shocking, as they continue to use Facebook even after learning of the practices they now challenge.

---

[10] *Planned Parenthood v. Superior Court*, 83 Cal. App. 4th 347 (2000); *Catsouras v. Dep't of Cal. Highway Patrol*, 181 Cal. App. 4th 856 (2010); *Urbaniak v. Newton*, 226 Cal. App. 3d 1128 (1991); *Susan S. v. Israels*, 55 Cal. App. 4th 1290 (1997).

[11] *See also, e.g.*, *Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1127-28 (N.D. Cal. 2008) (negligence resulting in the theft of highly personal information, including social security numbers, did not "'approach [the] standard'" of actionable privacy violation); *Moreno v. San Francisco Bay Area Rapid Transit Dist.*, 2017 WL 6387764, at *7-8 (N.D. Cal. Dec. 14, 2017) (mobile application secretly accessing user locations insufficiently egregious to state claim).

**D.      Plaintiffs Fail to State a Contract or Implied Covenant Claim**

Plaintiffs cannot establish either breach or damages to make out the breach of contract claim. *E.D.C. Techs., Inc. v. Seidel*, 216 F. Supp. 3d 1012, 1015 (N.D. Cal. 2016).  Facebook's practices were entirely consistent with its policies.  *See supra*, § II.C.  Further, as described *supra* at § IV.A, Plaintiffs have failed to allege any actual harm, and thus have failed to allege required contract damages.  *See Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000); *Ruiz v. Gap, Inc.*, 380 F. App'x 689, 692 (9th Cir. 2010).

Plaintiffs' implied covenant claim fails because, "where there is no breach of contract, there can be no breach of the implied covenant." *Tran v. Kansas City Life Ins. Co.*, 228 F. Supp. 3d 1068, 1079 (C.D. Cal. 2017).  Further, an implied covenant claim "cannot be based on the same breach as the contract claim." *Landucci v. State Farm Ins. Co.*, 65 F. Supp. 3d 694, 716 (N.D. Cal. 2014).  Here, the two claims focus on the exact same allegedly injurious conduct.  *Compare* FAC ¶ 164, *with id.* ¶ 176.  Lastly, Plaintiffs have not alleged the requisite "unfair interference" with the contract, which requires "bad faith" and cannot lie where the conduct is based on "'honest mistake, bad judgment or negligence.'" *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL 3727318, at *49 (N.D. cal. Aug. 30, 2007); *Hougue v. City of Holtville*, 2008 WL 1925249, at *4 (S.D. Cal. Apr. 30, 2008).  Plaintiffs' conclusory charge that Facebook acted "without regard to Plaintiffs' privacy settings and in violation of its own" policy, FAC ¶ 177, is not enough.

**E.      Plaintiffs Fail to State a Claim For Unjust Enrichment**

Plaintiffs' unjust enrichment claim fails because "[i]n California, there is not a standalone cause of action for 'unjust enrichment.'" *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762 (9th Cir. 2015).  Nor can the claim appropriately be construed as a quasi-contract claim because here undisputedly "an enforceable, binding agreement exists defining the rights of the parties." *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996).  Further, Plaintiffs fail to plead any misrepresentation or unfair action by Facebook, so there is no unjust benefit to restitute or disgorge.  *See Girard*, 316 F. App'x at 563.

**V.      CONCLUSION**

For these reasons, the FAC should be dismissed in its entirety with prejudice.

1    DATED:  November 15, 2019                 Respectfully submitted,

2                                              MUNGER, TOLLES & OLSON LLP

3

4                                              By:   */s/ Laura D. Smolowe*

5                                                    ROSEMARIE T. RING
                                                     LAURA D. SMOLOWE
6                                                    ANDREW CATH RUBENSTEIN
                                                     ZOE BEDELL
7

8                                              *Attorneys for Defendant Facebook, Inc.*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FACEBOOK'S MEM. OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS FAC