1  SABITA J. SONEJI (SBN 224262)
   ssoneji@tzlegal.com
2  **TYCKO & ZAVAREEI LLP**
   The Tower Building
3  1970 Broadway, Suite 1070
   Oakland, California 94612
4  Telephone: (510) 254-6808

5  BARRETT J. VAHLE (*pro hac vice*)
   vahle@stuevesiegel.com
6  JILLIAN R. DENT (*pro hac vice*)
   dent@stuevesiegel.com
7  **STUEVE SIEGEL HANSON LLP**
   460 Nichols Road, Suite 200
8  Kansas City, Missouri 64112
   Telephone: (816) 714-7100
9
   *Counsel for Plaintiffs and the Proposed Class*
10
   *Additional Counsel on Signature Page*
11

12                 **UNITED STATES DISTRICT COURT**
                 **NORTHERN DISTRICT OF CALIFORNIA**
13                    **SAN FRANCISCO DIVISION**

14  BRENDAN LUNDY, MYRIAH WATKINS,          Case No. 3:18-cv-6793-JD
15  ELIZABETH CHILDERS, MICHELLE
    AGNITTI, AND ROBIN HODGE,               **PLAINTIFFS' NOTICE OF**
16                                          **MOTION, MOTION FOR**
                                            **PRELIMINARY APPROVAL OF**
                Plaintiffs,                 **CLASS ACTION SETTLEMENT,**
17                                          **AND MEMORANDUM OF POINTS**
                                            **AND AUTHORITIES**
18                     v.
                                            **Date:** September 29, 2022
19  META PLATFORMS, INC.,                   **Time:** 10 a.m.
                                            **Place:** Courtroom 11, San Francisco, 19th
20              Defendant.                   Floor
21
22
23
24
25
26
27
28

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:18-cv-6793-JD

# TABLE OF CONTENTS

**PAGE**

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ..................................................1

II.  FACTUAL AND PROCEDURAL BACKGROUND ......................................................2

III. SUMMARY OF MATERIAL SETTLEMENT TERMS ................................................5

    A.  The Proposed Settlement Class .............................................................................5

    B.  Benefits to the Settlement Class ............................................................................6

    C.  Settlement Administrator and Administration Costs ............................................7

    D.  Class Member Release ..........................................................................................8

    E.  Proposed Plan of Notice .......................................................................................8

    F.  Opt-Outs and Objections .......................................................................................9

    G.  Attorneys' Fees and Expenses and Service Awards ...........................................11

IV. LEGAL STANDARD FOR PRELIMINARY APPROVAL ........................................11

V.   ARGUMENT ...............................................................................................................12

    A.  The Settlement Agreement warrants preliminary approval. ...............................12

        1.  Rule 23(e)(2)(B): The Settlement is the product of good-faith, informed, arms' length negotiations. ..........................................................13

        2.  Rule 23(e)(2)(C): The Settlement is fair, adequate, and reasonable. ..............14

            a.  The Strengths and Risks of Plaintiff's Case ..........................................14

            b.  The Risks, Complexity, and Likely Duration of Further Litigation ......15

            c.  The Risk of Maintaining Class Action Status .......................................16

            d.  The Amount Offered in Settlement ........................................................16

            e.  Rule 23(e)(2)(D): The Allocation of the Settlement ............................17

            f.  The Extent of Discovery Completed and Stage of Proceedings ...........17

            g.  The Views of Class Counsel ..................................................................18

            h.  Government Participant and Class Member Reaction .............................18

        3.  Rule 23(e)(2)(A): The Class Representatives and Class Counsel have adequately represented the proposed class. ...................................................18

4.  The proposed Fee and Expense Award is fair and reasonable.....................................................19

B.  Certification of the Settlement Class is appropriate...............................................................................20

1.  The Settlement Class Meets the Requirements of Rule 23(a).......................................20

2.  The Settlement Class satisfies the requirements of Rule 23(b)(3)..............................21

C.  The Court should approve the proposed Notice Plan. ..........................................................22

VI. CONCLUSION...................................................................................................................................24

# TABLE OF AUTHORITIES

CASES                                                                    PAGE(S)

*Adams v. Inter-Con Sec. Sys. Inc.*
   2007 WL 3225466 (N.D. Cal. Oct. 30, 2007) ............................................................13

*Avina v. Marriott Vacations Worldwide Corp.*
   2019 WL 8163642 (C.D. Cal. Oct. 25, 2019) ..........................................................18

*Banks v. Nissan N. Am., Inc.*
   2015 WL 7710297 (N.D. Cal. Nov. 30, 2015) .........................................................12

*Bravo v. Gale Triangle, Inc.*
   2017 WL 708766 (C.D. Cal. Feb. 16, 2017) ............................................................19

*Briseno v. Conagra Foods, Inc.*
   844 F.3d 1121 (9th Cir. 2017) .................................................................................23

*Briseno v. Henderson*
   998 F.3d 1014 (9th Cir. 2021) ..........................................................................1, 14

*Campbell v. Facebook, Inc.*
   951 F.3d 1106 (9th Cir. 2020) .................................................................................11

*Celano v. Marriott Int'l Inc.*
   242 F.R.D. 544 (N.D. Cal. 2007) ............................................................................20

*Chester v. TJX Companies, Inc.*
   2017 WL 6205788 (C.D. Cal. Dec. 5, 2017) ..........................................................15

*Churchill Vill., L.L.C. v. Gen. Elec.*
   361 F.3d 566 (9th Cir. 2004) ...................................................................................12

*Cohorst v. BRE Props.*
   2011 WL 7061923 (S.D. Cal. Nov. 9, 2011) ..........................................................13

*Cummings v. Connell*
   402 F.3d 936 (9th Cir. 2005)
   *as amended*, 2005 WL 1154321 (9th Cir. May 17, 2005) .......................................7

*Dennis v. Kellogg Co.*
   2013 WL 6055326 (S.D. Cal. Nov. 14, 2013)..........................................................15

*Eisen v. Carlisle and Jacquelin*
   417 U.S. 156 (1974).................................................................................................22

*Ellis v. Costco Wholesale Corp.*
   657 F.3d 970 (9th Cir. 2011)....................................................................................21

*Felix v. WM. Bolthouse Farms, Inc.*
   No. 1:19-cv-00312-AWI-JLT, 2020 WL 2175352 (E.D. Cal. May 4, 2020) ...........21

*Gonzalez-Tzita v. City of L.A.*
No. CV 16-0194 FMO(Ex), 2019 WL 7790440 (C.D. Cal. Dec. 9, 2019)..............................20

*Grimm v. American Eagle Airlines, Inc.*
No. LA CV 11-00406 JAK(MANx), 2014 WL 1274376 (C.D. Cal. Sept. 24, 2014)...........................16

*Hanlon v. Chrysler Corp.*
150 F.3d 1011 (9th Cir. 1998) ............................................................................................ 12, 21

*Hanon v. Dataproducts Corp.*
976 F.2d 497 (9th Cir. 1992)........................................................................................................21

*Heeger v. Facebook, Inc.*
No. 3:18-cv-06399 (N.D. Cal.) ....................................................................................................2

*Hefler v. Wells Fargo & Co.*
No. 16-cv-05479, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ..........................................17

*Hickcox-Huffman v. U.S. Airways, Inc.*
2019 WL 1571877 (N.D. Cal. April 11, 2019) ......................................................................19

*Hillman v. Lexicon Consulting, Inc.*
No. EDCV 16-01186-VAP(SPx), 2017 WL 10433869 (C.D. Cal. Apr. 27, 2017) ..........................17, 18

*In re Beef Indus. Antitrust Litig.*
607 F.2d 167 (5th Cir. 1979).........................................................................................................12

*In re Bluetooth Headset Prod. Liab. Litig.*
654 F.3d 935 (9th Cir. 2011)....................................................................................................12, 14

*In re Facebook Biometric Info. Privacy Litig.*
522 F.Supp.3d 617 (N.D. Cal. 2021) ......................................................................................17, 23

*In re Hyundai & Kia Fuel Econ. Litig.*
926 F.3d 539 (9th Cir. 2019)........................................................................................................13

*In re Mego Fin. Corp. Sec. Litig.*
213 F.3d 454 (9th Cir. 2000)........................................................................................................11

*Junkersfeld v. Medical Staffing Solutions, Inc.*
No. 19-cv-00236, 2022 WL 2318173 (E.D. Cal. June 28, 2022) ..........................................17

*Knutson v. Schwan's Home Serv., Inc.*
No. 3:12-cv-00964-GPC-DHB, 2014 WL 3519064 (S.D. Cal. 2014)....................................24

*Lane v. Facebook, Inc.*
696 F.3d 811 (9th Cir. 2012)....................................................................................................23, 24

*Local Joint Exec. Bd. of Culinary/ Bartender Trust Fund v. Las Vegas Sands, Inc.*
244 F.3d 1152 (9th Cir. 2001) ....................................................................................................22

*Longest v. Green Tree Servicing LLC*
308 F.R.D. 310 (C.D. Cal. 2015)................................................................................................21, 22

*McDonald v. Kiloo A/S*
    No. 17-cv-04334-JD, 2020 WL 5702113 (N.D. Ca. 2020) .................................................11

*Mission Beverage Co. v. Pabst Brewing Co.*
    15 Cal. App. 5th 686 (2017) ...............................................................................................7

*Moreno v. Cap. Bldg. Maint. & Cleaning Servs., Inc.*
    No. 19-cv-07087-DMR, 2021 WL 1788447 (N.D. Cal. May 5, 2021) ..................................18

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*
    221 F.R.D. 523 (C.D. Cal. 2004) .......................................................................................18

*Norcia v. Samsung Telecommunications Am., LLC*
    No. 14-CV-00582-JD, 2021 WL 3053018 (N.D. Cal. July 20, 2021) ...................................19

*Norton v. LVNV Funding, LLC*
    No. 18-cv-05051-DMR, 2021 WL 3129568 (N.D. Cal. July 23, 2021) .................................18

*Paz v. AG Adriano Goldschmied, Inc.*
    2016 WL 4427439 (S.D. Cal. Feb. 29, 2016) ..............................................................15, 16

*Perks v. Activehours, Inc.*
    No. 5:19-cv-05543-BLF, 2021 WL 1146038 (N.D. Cal. Mar. 25, 2021) ..............................12

*Phillips Petroleum Co. v. Shutts*
    472 U.S. 797 (1985) ..........................................................................................................22

*Rannis v. Recchia*
    380 Fed. App'x 646 (9th Cir. 2010) ..................................................................................20

*Rodriguez v. W. Publ'g Corp.*
    563 F.3d 948 (9th Cir. 2009) .............................................................................................23

*Rosenburg v. I.B.M.*
    No. CV06–00430PJH, 2007 WL 128232 (N.D. Cal. Jan. 11, 2007) ...................................22

*Sarabri v. Weltman, Weinberg & Reis Co., L.P.A.*
    No. 10cv1777 AJB (NLS), 2012 WL 38091232 (S.D. Cal. Sept. 4, 2012) .........................24

*Schneider v. Chipotle Mexican Grill, Inc.*
    336 F.R.D. 588 (N.D. Cal. 2020) ......................................................................................23

*Tapia v. Zale Del. Inc.*
    No. 13cv1565-PCL, 2017 WL 1399987 (S.D. Cal. Apr. 18, 2017) .....................................22

*Tyson Foods, Inc. v. Bouaphakeo*
    136 S. Ct. 1036 (2016) ......................................................................................................22

*Vizcaino v. Microsoft Corp.*
    290 F.3d 1043 (9th Cir. 2002) ...........................................................................................16

*Wal-Mart Stores, Inc. v. Dukes*
    564 U.S. 338 (2011) ..........................................................................................................20

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:18-cv-6793-JD

*Wolin v. Jaguar Land Rover N. Am., LLC*
   617 F.3d 1168 (9th Cir. 2010) .................................................................................. 20, 22

**STATUTES**

28 U.S.C. § 1715 ......................................................................................................................... 9

**RULES**

Fed. R. Civ. P. 23 .............................................................................................................. passim

Fed. R. Civ. P. 23
   *Advisory Committee's Note to 2018 Amendment* .................................................................. 11

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on **Thursday, September 29, 2022, at 10:00 a.m.,** or as soon thereafter as this matter may be heard, in Courtroom 11, before the Honorable James Donato, Plaintiffs Brendan Lundy, Elizabeth Childers, Myriah Watkins, Michelle Agnitti, and Robin Hodge ("Plaintiffs" or "Settlement Class Representatives") respectfully move this Court to preliminarily approve the Settlement reached in this case, the terms of which are more specifically described in the Memorandum and Points of Authority filed in support of this Motion.

Plaintiffs request that the Court enter the proposed Preliminary Approval Order and:

1. Preliminarily approve the Settlement;

2. Preliminarily certify the Settlement Class;

3. Appoint Brendan Lundy, Elizabeth Childers, Myriah Watkins, Michelle Agnitti, and Robin Hodge as the Settlement Class Representatives;

4. Appoint Sabita J. Soneji of Tycko & Zavareei LLP and Barrett J. Vahle of Stueve Siegel Hanson LLP as Settlement Class Counsel;

5. Appoint Angeion Group LLP as the Settlement Administrator and direct it to carry out the duties assigned to it in the Settlement Agreement;

6. Approve the proposed Notice Plan and direct that Class Notice be distributed to the Settlement Class;

7. Approve the proposed Claim Form and the proposed procedures for submitting Claims, objecting to the Settlement, and requesting exclusion; and

8. Schedule a Final Approval Hearing.

This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Settlement Agreement and exhibits thereto (Ex. 1) and the Declaration of Class Counsel (Ex. 2), the pleadings and papers on file in this Action, and any other such evidence and argument as the Court may consider. Defendant Meta Platforms, Inc. does not oppose the relief requested in this motion.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs Lundy, Childers, Watkins, Agnitti, and Hodge (the "Settlement Class Representatives"), individually and on behalf of the proposed Settlement Class,[1] seek preliminary approval of a proposed Settlement of claims against Defendant Meta Platforms, Inc. ("Meta" or "Defendant") concerning Meta's Facebook application ("Facebook"). The Settlement Agreement, if approved, will create a $37,500,000 Common Fund and will resolve the claims of Plaintiffs and the Settlement Class Members who turned off Location Services on their devices when accessing the Facebook app but whose location was nonetheless inferred by Facebook using their IP addresses in contravention of Facebook's own policies in effect during the Class Period.

The proposed Settlement should be preliminarily approved because the terms are fair, reasonable, and adequate. The Settlement Agreement creates a non-reversionary Common Fund that will be distributed to Settlement Class Members who make claims on a *pro rata* basis, thus providing valuable relief to the Settlement Class Members. Per the Ninth Circuit in *Briseno v. Henderson*, 998 F.3d 1014, 1026-28 (9th Cir. 2021), the Settlement provides adequate compensation for the class, provides that no portion of the settlement fund will revert to Meta, and does not include a clear sailing provision. Considering the substantial and meaningful cash benefits conferred upon Settlement Class Members and the significant risks faced through continued litigation, the terms of the Settlement are "fair, reasonable, and adequate" in accordance with Federal Rule of Civil Procedure 23(e)(2).

Accordingly, the Settlement Class Representatives request that the Court (1) preliminarily approve the proposed Settlement, (2) certify the Settlement Class for settlement purposes only, (3) appoint Plaintiffs Lundy, Childers, Watkins, Agnitti, and Hodge as Settlement Class Representatives, (4) appoint Sabita J. Soneji of Tycko & Zavareei LLP and Barrett J. Vahle of Stueve Siegel Hanson LLP as Class Counsel, (5) order that Class Notice be distributed to the Settlement Class, and (6) schedule a Final Approval Hearing. In support

---

[1] Unless otherwise specifically defined herein, all capitalized terms have the same meanings as those set forth in the Parties' Settlement Agreement ("SA"), attached as Exhibit 1.

of this Motion, Plaintiffs submit the following exhibits: the Settlement Agreement and exhibits thereto[2] (Ex. 1) and the Declaration of Class Counsel (Ex. 2) ("Counsel Decl."). Meta does not oppose the relief sought in this Motion.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

The excellent result of this Settlement is due to several years of hard and strategic work by Plaintiffs and Class Counsel, which included the consolidation of two class actions, briefing four motions to dismiss between the two actions ultimately resulting in denial of the motion to dismiss the operative complaint, and hard-fought discovery resulting in the production and review of over 100,000 pages of internal Facebook documents.

In November 2018, Plaintiffs Brendan Lundy and Myriah Watkins initiated a class action lawsuit in this Court asserting privacy, consumer protection, and fraud claims based on Facebook's practice collecting and inferring location data from their IP address despite their choice to turn off Location Services when using the Facebook app on their phones. Doc. *See* Doc. 1, Class Action Complaint (filed Nov. 8, 2018). After Meta moved to dismiss in March 2019 (Doc. 48), Plaintiffs amended their Complaint on September 27, 2019, specifically adding a breach of contract claim centered on the contractual representation in Facebook's Effective Privacy Policy that it would not collect location information "depending on the permissions you've granted." Doc. 80 ("FAC").

Concurrently, Class Counsel were litigating a sister case entitled *Heeger v. Facebook, Inc.*, Case No. 3:18-cv-06399, Doc. 1 (filed first on October 19, 2018), which alleged privacy claims based on the improper collection and use of IP addresses. Meta moved to dismiss *Heeger* in January 2019 (*Heeger* Doc. 26) and a hearing was held on April 18, 2019, at which the Court ordered discovery to proceed while the Court took the motion under advisement (*Heeger* Doc. 41). In May 2019, Plaintiff Heeger served initial document requests and interrogatories, as did Meta. The Parties also negotiated a Protective Order, Rule 502(d) Order, and ESI Protocol – which included submitting a joint letter detailing the contested issues before the Court. Counsel

---

[2] The Settlement Agreement attaches the following exhibits: Proposed Preliminary Approval Order (Ex. A); Settlement Administration Protocol & Notice Plan as set forth in the Declaration of Steven Weisbrot on behalf of the proposed Settlement Administrator (Angeion Group LLP) (Ex. B) ("Admin. Decl."); Summary Notice (Ex. C); Long Form Class Notice (Ex. D); and Claim Form (Ex. E).

Decl. ¶ 10; *Heeger* Docs. 48 (Rule 502(d) Order); 49 (ESI Protocol); 50 (Joint Discovery Letter Regarding Protective Order); 51 (Order on Protective Order); 55 (Stipulated Proposed Protective Order). Throughout the Fall of 2019, the Parties exchanged multiple meet and confer letters and conducted numerous calls to negotiate discovery, culminating in discovery letters filed in front of the Court. Counsel Decl. ¶ 11; Docs. 65, 68, 69.

In October 2019, the *Heeger* and *Lundy* actions were related in front of this Court. *Heeger* Doc. 62. In November 2019, Meta moved to dismiss *Lundy*'s FAC. Doc. 82. On December 27, 2019, the Court issued an order granting in part and denying in part Meta's motion to dismiss the *Heeger* Complaint but did not rule in *Lundy*. *Heeger* Doc. 70. Plaintiff Heeger then filed a First Amended Complaint on February 10, 2020, adding three named plaintiffs and amending the privacy-related allegations. *Heeger* Doc. 74. On March 6, 2020, Meta moved to dismiss the *Heeger* FAC, and briefing concluded in April 2020. *Heeger* Docs. 76, 80, 81, 82, 83.

While Meta's motions to dismiss *Lundy* and *Heeger* were pending, the Parties continued to conduct discovery. Given the relation of the cases, discovery was coordinated – with the *Lundy* case adopting the Protective Order and ESI Protocol negotiated in *Heeger* (Doc. 120), as well as the document requests and interrogatories in *Heeger*. Counsel Decl. ¶ 14. Throughout the summer and fall of 2020, the Parties conferred on numerous occasions, served additional discovery, exchanged multiple rounds of discovery correspondence, and worked to negotiate search terms and custodians. *Id.* ¶ 15.

On December 24, 2020, the Court dismissed *Heeger* in its entirety for lack of Article III standing and granted in part and denied in part Meta's motion to dismiss *Lundy*. Doc. 130 at 9, 15. The Court found that Article III standing existed in *Lundy* but dismissed all claims under Rule 12(b)(6) with leave to amend. *Id.* at 9-15. On January 21, 2021, *Heeger* Plaintiff Childers joined the *Lundy* Plaintiffs to file a Second Amended Class Action Complaint ("SAC"), adding putative class representatives Hodge and Agnitti, omitting the previously-pled privacy claims, and amending the allegations to focus on contract, fraud, and unjust enrichment claims. Doc. 132, SAC.[3] Specifically, the SAC alleged that Facebook improperly collected Plaintiffs' IP addresses and used those IP addresses to infer Plaintiffs' location in contravention of

---

[3] The SAC is the operative complaint in this case.

Facebook's own policies in effect during the Class Period, thus breaching its contract with Plaintiffs and intentionally misleading them as to whether Facebook collected their location information. SAC ¶¶ 1-13, 56-124. The SAC further alleged that Plaintiffs each had turned off Location Services on their mobile devices for the Facebook app because they did not want to share their location with Facebook, but Facebook nonetheless inferred their location using their IP addresses when they accessed Facebook and used the information to target ads, entitling Plaintiffs and the Class to disgorgement of the associated profits, or, in the alternative, nominal damages. SAC ¶¶ 16-45.

Meta moved to dismiss the SAC and the Parties fully briefed that motion. Docs. 135, 137, 141. In its September 30, 2021 Order (Doc. 145), the Court largely denied Meta's motion to dismiss, finding Plaintiffs had sufficiently stated claims for contract, fraud, and unjust enrichment. Doc. 145 at 3. The Court stated: "Facebook says that 'plaintiffs' breach of contract claim also fails because plaintiffs cannot establish any breach. Facebook's practices are entirely consistent with its disclosed policies.' The point is not well taken because the Court has already rejected its misrepresentation underpinnings." *Id.* The Court also found Plaintiffs could seek nominal damages and disgorgement. *Id.*

The Parties then conducted extensive discovery pursuant to the Court's scheduling order (Doc. 157), which was slightly revised in March 2022 (Doc. 168). Altogether, Plaintiffs served Meta with six sets of requests for production (97 requests); three sets of interrogatories (23 questions); and one set of requests for admission (73 requests). Counsel Decl. ¶ 19. Meta served two sets of requests for production (28 requests); two sets of interrogatories (9 questions for each named plaintiff); and three sets of demands for inspection. *Id.* The Parties met and conferred extensively, including through dozens of telephone and video conferences and email correspondence. *Id.* Plaintiffs filed two discovery letters with the Court during this time regarding disputed discovery issues. Docs. 159, 163. Plaintiffs additionally served document subpoenas on third-parties Apple and Google to determine whether the phone operating system providers could identify whether users had Location Services on or off on their devices given Meta's interrogatory responses indicating it could not identify the class members. Counsel Decl. ¶ 20. Apple and Google responded that they could not identify the class members. *Id.*

During discovery, Plaintiffs produced 3,351 pages of documents, and, pursuant to negotiated search terms and custodians, Meta produced 106,677 pages of documents. *Id.* ¶ 21. Plaintiffs retained two experts in anticipation of class certification, which was due shortly after the close of fact discovery in July 2022. *Id.* ¶ 22. Meta took the depositions of four named plaintiffs in May 2022, and noticed the depositions of the other two. *Id.* ¶ 23. Plaintiffs issued a Rule 30(b)(6) deposition notice to Meta and requested the depositions of five initial fact witnesses. *Id.* On June 2, 2022, Plaintiffs took the deposition of a key witness (Scott Bratsman, head of the IP address location project for Facebook) as to his designated Rule 30(b)(6) topics and were scheduled to take the remaining depositions during the month of June and the first two weeks of July. *Id.*

After a large portion of fact discovery had been completed, the Parties agreed to mediate with Randall Wulff, an experienced mediator familiar with Meta from mediating other cases. On June 7, 2022, the Parties mediated before Mr. Wulff for a full day. *Id.* ¶ 26. Class Counsel entered the mediation fully informed of the merits of the Settlement Class members' claims and were prepared to continue to litigate rather than accept a settlement that was not in the Plaintiffs' and Settlement Class's best interests. *Id.* After a full day of negotiations, where both sides made presentations to the mediator and each other, both Parties accepted the mediator's proposal and reached an agreement on all material terms, including the amount of the Common Fund. *Id.* ¶ 27. The Parties informed the Court of the Settlement on June 14, 2022 and signed a term sheet on July 13, 2022. The Parties then negotiated the precise terms and language of the Agreement now before the Court. *Id.* ¶ 28.

## III.   SUMMARY OF MATERIAL SETTLEMENT TERMS

### A.  The Proposed Settlement Class

The Settlement Agreement contemplates certification of the following Settlement Class for settlement purposes only:

> All natural persons residing in the United States who used Facebook between January 30, 2015 and April 18, 2018, inclusive, and whose iOS or Android Location Services setting for the Facebook application was turned off at any point during that period, but whose location information was inferred by Facebook via the user's IP Addresses.

SA ¶ 54. The Settlement Class consists of approximately 70 million Facebook Users.[4] *Id.* ¶ 46.

The Settlement Class is more precisely defined than the class set out in the SAC, which contemplated the following nationwide class:[5]

> **Nationwide Class**: All natural persons residing in the United States who used Facebook after January 30, 2015, whose Location Services was turned off on their devices, but whose location information was nevertheless collected by Facebook via their IP Addresses and used for advertising purposes.

SAC ¶ 142. The Settlement Class definition is revised to clarify who is in the Settlement Class as well as to conform with the discovery in the case. *First*, the original class definition did not set forth an end date for the Class Period, even though the allegations in the SAC set forth an end date for the claims. *See* SAC ¶¶ 71-78. The Settlement Class is therefore more precisely defined to state that the Class Period ends on April 18, 2018 because that is the date on which Facebook changed its Effective Privacy Policy – the contract Plaintiffs allege was breached – to disclose that it was using IP addresses to determine users' location regardless of a Facebook User's Location Services settings. *See id. Second*, the Settlement Class is defined to specify that only iOS and Android Users are in the Settlement Class, given those operating systems have the "Location Services" setting at issue in the Action. *Third*, the Settlement Class definition clarifies that Facebook Users are part of the Settlement Class if they had Location Services set to off for any length of time during the Class Period; whereas, the original class definition did not specify. This revision is appropriate given that, as alleged by Plaintiffs, Facebook breached its agreement with each Facebook User who turned off Location Services, regardless of whether Location Services was turned back on for that User during the Class Period.

### B. Benefits to the Settlement Class

The Settlement Agreement provides monetary benefits in the form of a Common Fund of $37,500,000, from which shall be used to cover (1) all payments to Settlement Class members, (2) all Administrative Costs, and (3) any Fee and Expense Award or Service Awards approved by the Court. *See* SA ¶¶ 58-60.

---

[4] This is the best estimate available according to Meta's Interrogatory Responses and is subject to certain limitations given Meta is unable to identify the class members with the available data.

[5] A nationwide class is appropriate because Facebook's policies contain a California choice of law provision.

The Court found Plaintiffs adequately pled both disgorgement and nominal damages. Doc. 145 at 2-3. However, discovery showed that Plaintiffs would have faced challenges proving their disgorgement theory because Facebook did not track revenues or profits from advertising based solely on location. Counsel Decl. ¶ 34. If the case had gone to trial, Plaintiffs likely would have been limited to nominal damages, which are frequently set at $1 per class member. *Mission Beverage Co. v. Pabst Brewing Co.*, 15 Cal. App. 5th 686, 710-711 (2017) ("A plaintiff suing for breach of contract is entitled to recover . . . nominal damages."); *Cummings v. Connell*, 402 F.3d 936, 940 (9th Cir. 2005), *as amended*, 2005 WL 1154321 (9th Cir. May 17, 2005) (holding that "every member is entitled to nominal damages, just as if each one had brought his or her own lawsuit" and that damages would be limited to $1 per class member). Assuming a class size of approximately 70 million users, the settlement amount represents 53% of what Plaintiffs could have recovered under a nominal damages theory based on a judgment of $1 per class member. Plaintiffs believe this discount accurately reflects the risks of going forward with the litigation. Counsel Decl. ¶ 35.

After payment of costs of administration and notice and any fees, expenses, and service awards authorized by the Court, the Net Settlement Fund will be distributed to Settlement Class Members *pro rata*. SA ¶ 60. Settlement Class Members will submit claims via an easily accessible and simple online Claim Form on the Settlement Website. Admin. Decl. ¶ 32; SA at Ex. E, Claim Form. Should any Settlement Class Member so require, they will be able to request that a paper claim form by mailed to them. Admin. Decl. ¶ 33. Settlement Class Members will be able to receive their payments by an electronic payment option via the Settlement Website or can opt for a mailed check if preferred. Admin. Decl. ¶ 42. Given the Settlement Fund will be distributed *pro rata*, all Settlement Funds will be distributed at once, with no funds remaining. Should any of the Settlement Fund remain for any reason (for example, uncashed checks), the Parties will return to the Court regarding the remaining funds. In no event shall any portion of the Settlement Fund revert to Meta.

### C.  Settlement Administrator and Administration Costs

Subject to Court approval, the Settlement Administrator is Angeion Group, a leading class action administration firm in the United States. Admin. Decl. ¶¶ 9-10. Class Counsel reviewed competitive proposals from four prominent settlement administrators before deciding on Angeion. Counsel Decl. ¶ 36. All

Administrative Costs shall be paid from the Settlement Fund. SA ¶ 82. Assuming one million claims, the Settlement Administrator estimates that the costs of notice and administration will be approximately $1,147,097. Counsel Decl. ¶ 38. The Settlement Administrator will oversee providing Notice to the Settlement Class Members and administration of the Common Fund. Admin Decl. ¶ 11.

### D. Class Member Release

In exchange for the benefits conferred by the Settlement, all Settlement Class Members will be deemed to have released the Released Parties from all claims that were or could have been asserted by the Settlement Class Representatives or Settlement Class Members arising out of, based upon, or related in any way to the practices and claims that were alleged in the Action. SA ¶¶ 68-77. The release is appropriately tailored, in that it is limited to claims arising from the factual predicate to the claims asserted in the SAC.

### E. Proposed Plan of Notice

The Parties' proposed Notice Plan is designed to reach as many Settlement Class Members as possible and is the best notice practicable under the circumstances. Admin. Decl. ¶ 34-35, 44. Meta is unable to identify the Settlement Class Members from its records on a systematic basis.[6] Meta's sworn interrogatory responses state, in short, that since Location Services is a device setting, not a Facebook application setting, it is impossible to identify from Facebook's records which users had Location Services turned off during the class period. Additionally, Meta will be prepared to explain to the Court the steps it took to try to determine whether it could identify other methods of generating a reliable proxy class list, in order to provide direct notice to Settlement Class Members. Notice will thus be effectuated via an online advertising campaign, including by advertising on the Facebook platform where the Settlement Class Members have user accounts. Admin. Decl. ¶ 16-24, 28-31. The 45-day campaign is designed to reach 80.69% of 74,182,00 Facebook Users in the United States (the "Target Audience") an average of 3.01 times. It will include the use of banners, posts, and online advertisements directing Settlement Class Members to the Settlement Class Website. *Id.* ¶

---

[6] Even though Meta cannot identify Settlement Class Members, Settlement Class Members can easily identify themselves based on objective criteria explained in the Notice and Claim Form, *i.e.*, being a Facebook user whose iOS or Android Location Services setting for the Facebook application was turned off at any point during the Class Period.

13, 17-19. The Notice campaign will also include a paid search campaign on Google, publication notice in People magazine, and sponsored class action website listings. *Id.* ¶ 15, 25, 26.

The Settlement Administrator shall establish the Settlement Website. *Id.* ¶ 32. The Settlement Website shall contain: (1) the Long Form Notice in downloadable PDF format in both English and Spanish; (2) the Long Form Notice in HTML format with a clickable table of contents, described as answers to frequently asked questions; (3) a contact information page with contact information for the Settlement Administrator; (4) the Settlement Agreement; (5) the signed Preliminary Approval Order and publicly filed motion papers and declarations in support thereof; (6) the SAC in the Action; and (7) when available, the Fee and Service Award Application, the motion for entry of the Final Approval Order, and any motion papers and declarations filed publicly in support thereof. *Id.* Additionally, the Settlement Administrator shall mail or email the Long Form Notice to any Settlement Class Member who requests a copy. *Id.* ¶ 33.

The Settlement Administrator shall also establish a 24-hour toll-free telephone line with information about frequently asked questions about the Settlement. The number shall be included in the Class Notice and posted on the Settlement Website. *Id.* The Settlement Administrator will also work with Meta to ensure that the necessary and timely notice is provided to any state and federal officers as required by the Class Action Fairness Act, 28 U.S.C. § 1715. *Id.* ¶ 36.

### F. Opt-Outs and Objections

The long-form Class Notice will advise Settlement Class Members of their right to opt out of the Settlement or to object to the Settlement and/or to Class Counsel's application for Attorneys' Fees and Expenses, and/or Service Award to the Class Representative, and of the associated deadlines. SA ¶¶ 27, 87-88, Ex. D, Class Notice.

Settlement Class Members who wish to object must mail a written objection to the Court on or before the Objection Deadline (60 days after the Notice Date), providing: (i) the case name and number; (ii) the name, address, and telephone number of the objecting Settlement Class Member and, if represented by counsel, of his/her counsel; (iii) the Facebook account URL (if reasonably available) and email and phone number associated with their Facebook account; (iv) state that the individual had Location Services off during the Class Period and accessed Facebook while it was disabled; (v) a statement of whether the objection applies

only to the objector, to a specific subset of the class, or to the entire class; (vi) a statement of the number of times in which the objector (and, where applicable, objector's counsel) has objected to a class action settlement within the three years preceding the date that the objector files the objection, along with the caption of each case in which the objector has made such objection; (vii) a statement of the specific grounds for the objection; and (viii) a statement of whether the objecting Settlement Class Member intends to appear at the Final Approval Hearing, and if so, whether personally or through counsel; (ix) the objector's signature. SA ¶ 101. If an objector wishes to appear at the Final Approval Hearing, the objector must include a statement stating that fact, as well as a description of any evidence the objecting Settlement Class Member may offer at the Final Approval Hearing and copies of any exhibits the objecting Settlement Class Member may introduce at the Final Approval Hearing. *Id.* ¶ 102. Settlement Class Members who fail to make timely objections in the manner specified shall be foreclosed from making any objections (whether by appeal or otherwise) to the Settlement. *Id.* ¶ 103.

Settlement Class Members may exclude themselves from the Settlement by submitting to the Settlement Administrator a written Request to Opt-Out on or before the Opt-Out Deadline (60 days after the Notice Date), which must include: (i) identification of the case name; (ii) name and current address; (iii) personal signature of the individual seeking to opt-out; (iv) a statement clearly indicating the individual's intent to be excluded from the Settlement; (v) request an opt-out only for that one individual whose personal signature appears on the request; (vi) the Facebook account URL (if reasonably available) and email and phone number associated with their Facebook account; (vii) state that the individual had Location Services off during the Class Period and accessed Facebook while it was disabled. SA ¶ 95. The opt-out request must be submitted online at at the Settlement Website, after which the opt-out must be verified at the email address provided or via U.S. mail at the address of the Settlement Administrator. *Id.* ¶ 96. Opt-out requests seeking exclusion on behalf of more than one individual shall be deemed invalid by the Settlement Administrator. *Id.* ¶ 97. Any individual who does not submit a valid and timely request for exclusion in the manner described herein shall be deemed to be a Settlement Class Member upon expiration of the Opt-Out Deadline, and shall be bound by all subsequent proceedings, orders, and judgments applicable to the Settlement Class. *Id.* ¶¶ 98-99.

### G.  Attorneys' Fees and Expenses and Service Awards

The Settlement Agreement contemplates Class Counsel petitioning the Court for attorneys' fees, not to exceed thirty percent (30%) of the Common Fund, as well as reasonable expenses incurred in the litigation. SA ¶ 78. Any approved Fee and Expense Award will be paid from the Settlement Fund prior to distribution to the Settlement Class Members. SA ¶ 60. Plaintiffs and Meta have not agreed to any award of attorneys' fees or expenses and Meta may object to the Fee and Service Award Application. SA ¶ 78. Class Counsel may also petition the Court for Service Awards of up to $5,000 for each Settlement Class Representative to compensate them for their involvement in the Action. SA ¶ 80. Meta can oppose this request, and final approval is not contingent upon approval of the requested Fee and Expense Award or Service Awards. SA ¶¶ 81, 109.

## IV.    LEGAL STANDARD FOR PRELIMINARY APPROVAL

The Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020); *McDonald v. Kiloo A/S*, No. 17-cv-04334-JD, 2020 WL 5702113, at *4 (N.D. Ca. 2020) (same). Whether to approve a class action settlement is committed to the sound discretion of the trial judge. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).

Rule 23 was amended in 2018 to codify the "preliminary approval" process that is customary in class settlements. Fed. R. Civ. P. 23 Advisory Committee's Note to 2018 Amendment. Under Rule 23(e)(1), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Rule 23(e)(2) allows the court to approve a proposal "only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement

required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other."

Courts in the Ninth Circuit have traditionally used a multi-factor balancing test to analyze whether a given settlement is fair, adequate, and reasonable. *See, e.g.*, *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). That test includes the following factors: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Id.*; *accord Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). "This list is not exclusive and different factors may predominate in different factual contexts." *Perks v. Activehours, Inc.*, No. 5:19-cv-05543-BLF, 2021 WL 1146038, at *4 (N.D. Cal. Mar. 25, 2021).

## V. ARGUMENT

### A. The Settlement Agreement warrants preliminary approval.

Each of the relevant factors weighs in favor of Preliminary Approval of this Settlement. The Settlement was reached when both Parties accepted a mediator's proposal after a full day of good-faith, informed, arms' length negotiation between competent counsel facilitated by an experienced mediator, and satisfies each factor for preliminary approval in the Ninth Circuit and under Rule 23. *See Hanlon*, 150 F.3d at 1026; Fed. R. Civ. P. 23(e).

Generally, heightened scrutiny applies if settlement is achieved prior to certification of a litigated class. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). But courts have noted that certain factors obviate the concerns that lead to imposition of a higher standard, such as where the settlement is achieved prior to certification but after extensive discovery. *See Banks v. Nissan N. Am., Inc.*, 2015 WL 7710297, at *8 (N.D. Cal. Nov. 30, 2015) ("[U]nlike most pre-certification cases, extensive discovery has been conducted in this case, lessening the concern over informational deficiencies between the parties."); *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 180 (5th Cir. 1979) (settlement discussions began after six months of discovery; action pending for three years, court fully briefed). Here, the Settlement was reached after the

Parties completed almost all document discovery, took key depositions, and Plaintiffs retained and worked with technical and damages experts. Counsel Decl. ¶ 22.

Any settlement requires the Parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay. Plaintiffs believe their claims are meritorious and that they would prevail if this case proceeded to trial. *Id.* ¶ 47. Meta argues that Plaintiffs' claims are unfounded, denies liability, and has indicated a willingness to litigate vigorously. *Id.* Plaintiffs face the challenge of a motion for summary judgment and opposition to a motion for class certification, as well as the risk of a loss at trial. *Id.* The only thing that is certain is that if this case continues in litigation, the Settlement Class Members will have to wait much longer before receiving any recovery. In Class Counsel's experience and informed judgment, the benefits of settling outweigh the risks and uncertainties of continued litigation, as well as the attendant time and expenses associated with litigation, discovery, and possible appellate review. *Id.* ¶¶ 46-47. The proposed settlement is an excellent result for the Class and can withstand whatever level of scrutiny is applied. *Id.*

### 1. Rule 23(e)(2)(B): The Settlement is the product of good-faith, informed, arms' length negotiations.

The Ninth Circuit "put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" in analyzing whether to approve a class action settlement. *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 570 (9th Cir. 2019); *see* Fed. R. Civ. P. 23(e)(2)(B). Moreover, "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Adams v. Inter-Con Sec. Sys. Inc.*, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007). *See also Cohorst v. BRE Props.*, 2011 WL 7061923, at *12 (S.D. Cal. Nov. 9, 2011) ("[V]oluntary mediation before a retired judge in which the parties reached an agreement-in-principle to settle the claims in the litigation are highly indicative of fairness.") (cleaned up).

Here, the Settlement is the result of intensive, arms' length negotiation between experienced attorneys who are familiar with the legal and factual issues in this Action, as well as class action litigation generally. Before agreeing upon the terms of the Settlement, the Parties mediated for a full day before Randall Wulff. Counsel Decl. ¶ 26. In advance of that mediation, the Parties engaged in and almost completed fact discovery

and began working with experts to evaluate the evidence and calculate damages. *Id.* ¶ 25. Moreover, Plaintiffs requested and Meta produced its internal data demonstrating its estimated size of the Settlement Class, which is subject to limitations due to the lack of data reflecting users with Location Services off. *Id.* Class Counsel has litigated and settled other cases involving similar factual and legal issues and understands what information is critical to determine membership in the Settlement Class and how to calculate damages. *Id.* The Parties' vigorous negotiation of the claims in this action evidence an absence of collusion and the presence of fairness and good faith.

In addition, the Settlement does not include any of the indicia of collusion identified by the Ninth Circuit, including whether (i) plaintiffs' counsel receive a disproportionate distribution of the settlement, (ii) the settlement agreement includes a "clear sailing" provision, or (iii) the agreement contains a reverter clause. *Briseno*, 998 F.3d at 1025-28; *In re Bluetooth*, 654 F.3d at 946-47. Unlike the claims-made settlements in *Bluetooth* and *Briseno*, this settlement is a true common fund. Because of that, Settlement Class Members who submit claims will receive substantial cash benefits, and Class Counsel intends to seek Fees and Expenses well within the range of reasonableness. There is no clear sailing agreement; rather, Meta has reserved the right to object to any Fee and Service Award Application it deems unreasonable. And there is no reversionary component: all funds will be distributed *pro rata* to Settlement Class Members who make valid claims and under no circumstances will any funds be returned to Meta. The absence of any indicia of collusion under *Bluetooth* provides further evidence that the Settlement is non-collusive and fair.

### 2. Rule 23(e)(2)(C): The Settlement is fair, adequate, and reasonable.

A review of the relevant factors supports the conclusion that the Settlement falls within the "range of reason" such that the Court should preliminarily approve the Settlement, order that notice be sent to the Settlement Class, and schedule a Final Approval Hearing.

### a. The Strengths and Risks of Plaintiff's Case

*First*, the Settlement is fair, adequate, and reasonable in light of the strengths and risks of Plaintiffs' case. While confident in the strength of their claims, Plaintiffs and Class Counsel are also pragmatic and recognize the risks inherent in litigation of this magnitude. *See* Counsel Decl. ¶ 47. Should the case proceed in litigation, Plaintiffs could see their claims dismissed or narrowed by a motion for summary judgment, at

trial, or on a subsequent appeal. *Id.* They also face the risk that class certification could be denied. *Id.* Each risk, by itself, could impede the successful prosecution of these claims at trial and in an eventual appeal—which would result in *zero* recovery to the class. *Id.* ¶ 46. Plaintiffs further faced challenges with respect to proving damages based on the discovery obtained in the case. *Id.* ¶¶ 34-35. And even if Plaintiffs prevailed at trial, any recovery would likely be delayed for a year or more by appeals. *Id.* ¶ 48.

Plaintiffs face substantial risks to their claims should the Settlement not be approved. While the Court largely denied Meta's motion to dismiss, indicating that it resolved many of the issues in this case, that is not ultimately a guarantee of success on the merits. Doc. 145. Meta likely would appeal any order granting class certification or any judgment rendered for Plaintiffs, which could take years to resolve. "Regardless of the risk, litigation is always expensive, and both sides would bear those costs if the litigation continued." *Paz v. AG Adriano Goldschmied, Inc.*, 2016 WL 4427439, at *5 (S.D. Cal. Feb. 29, 2016).

While litigation presents serious risks at many stages, not to mention substantial expense and delay without any guarantee of additional benefit to the Settlement Class, the Settlement provides immediate and substantial benefits to Settlement Class Members: Settlement Class Members will receive a *pro rata* share of the Settlement Fund in the form of a cash payment. The Settlement Fund, as explained *supra*, represents a 53% recovery of what Plaintiffs could have received should they have proceeded to trial and received nominal damages on their contract claim. It is "plainly reasonable for the parties at this stage to agree that the actual recovery realized, and risks avoided here outweigh the opportunity to pursue potentially more favorable results through full adjudication." *Dennis v. Kellogg Co.*, 2013 WL 6055326, at *3 (S.D. Cal. Nov. 14, 2013). "Here, as with most class actions, there was risk to both sides in continuing towards trial." *Chester v. TJX Companies, Inc.*, 2017 WL 6205788, at *6 (C.D. Cal. Dec. 5, 2017). "The settlement avoids uncertainty for all Parties involved." *Id.*

### b.     The Risks, Complexity, and Likely Duration of Further Litigation

***Second***, the risks, expense, complexity, and likely duration of further litigation support preliminary approval of the Settlement. Counsel Decl. ¶ 46. This case is settling after years of hard-fought discovery but prior to dispositive motions; if the Settlement is not approved, the Parties will need to litigate through a motion for class certification and motions for summary judgment. *Id.* ¶ 47. Even if Plaintiffs succeed at class

1    certification and the merits, any recovery would likely be delayed by appeals. Yet there is no guarantee that

2    further lengthy litigation and expensive discovery would lead to greater benefits for the Settlement Class

3    Members. *Id.* ¶ 46. Instead, there would be multiple points at which the Class's claims could be narrowed or

4    dismissed. *Id.* ¶ 47. "Regardless of the risk, litigation is always expensive, and both sides would bear those

5    costs if the litigation continued." *Paz v. AG Adriano Goldschmeid, Inc.*, 2016 WL 4427439, at *5.

6              **c.      The Risk of Maintaining Class Action Status**

7         ***Third***, the risk of maintaining class action status through trial supports preliminary approval of the

8    Settlement. Counsel Decl. ¶ 47. The class has not yet been certified, and Meta will oppose certification if the

9    case proceeds. Thus, Plaintiffs "necessarily risk losing class action status." *Grimm v. American Eagle Airlines,*

10   *Inc.*, No. LA CV 11-00406 JAK(MANx), 2014 WL 1274376, at *10 (C.D. Cal. Sept. 24, 2014).

11             **d.      The Amount Offered in Settlement**

12        ***Fourth***, the amount offered in settlement supports preliminary approval. The Common Fund of

13   $37,500,000 is an excellent recovery for the class, representing approximately 53% of what Plaintiffs could

14   have recovered under a nominal damages theory. Counsel Decl. ¶ 35. Considering the difficulties and

15   expenses Class Members would face to pursue individual claims, and the likelihood that they might be

16   unaware of their claims, which cover a time period from 2015 to early 2018, this Settlement Amount

17   represents an excellent result for the class. *Id.* The Settlement is on par with other settlements involving

18   collection and use of personal data without consent. *See* Appendix A.

19        Class Counsel intends to seek attorneys' fees in an amount not to exceed 30% of the Common Fund

20   ($11,250,000), as well as reasonable expenses incurred in the litigation. Class Counsel have diligently tracked

21   time throughout the case, and as of July 2021, had spent 10,180.8 hours litigating the case totaling $6,965,079

22   in lodestar with $302,279.58 in expenses, including $147,630 in expert fees. Counsel Decl. ¶ 43. Counsel

23   expects to spend significant additional time throughout the approval process, notice,   and claims

24   administration. *Id.* A conservative estimate of the multiplier sought is 1.6, which is well within the range

25   commonly awarded in the Ninth Circuit. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n.6 (9th Cir. 2002)

26   (surveying cases and finding 83% of multipliers between 1.0 and 4.0, and 54% between 1.5 and 3.0). Any

27   multiplier will diminish over time given the substantial work needed to finalize and administer the settlement.

28

### e. Rule 23(e)(2)(D): The Allocation of the Settlement

*Fifth*, the proposed method of distributing relief will be effective. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii). The Parties have agreed upon an experienced Settlement Administrator to administer the settlement. Counsel Decl. ¶ 24. The claim form is a simple online form in which Settlement Class Members will be able to choose a payment option, including the option to be paid via digital means. SA at Ex. E. The Settlement Administrator will mail checks to those who request it. Admin. Decl. ¶ 42.

Moreover, the settlement proposal "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). The allocation of the Settlement is fair and reasonable because it provides equal relief to all Settlement Class Members. This allocation is consistent with the distribution of funds in other settlements of common fund class cases and treats Settlement Class Members equitably relative to each other. *See, e.g., In re Facebook Biometric Info. Privacy Litig.*, 522 F.Supp.3d 617, 629 (N.D. Cal. 2021) (distribution that would provide "pro rata" share of common fund treated class members equitably to one another and "weigh[ed] in favor of final approval"); *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479, 2018 WL 6619983, at *8 (N.D. Cal. Dec. 18, 2018) (pro rata distribution of common fund treated class members equitably); *Junkersfeld v. Medical Staffing Solutions, Inc.*, No. 19-cv-00236, 2022 WL 2318173, at *9 (E.D. Cal. June 28, 2022) (pro rata distribution of common fund to class members was "equitable" and "favors" final approval of settlement).

### f. The Extent of Discovery Completed and Stage of Proceedings

*Sixth*, the extent of discovery completed and the stage of proceedings favor preliminary approval. The Parties have been engaged in discovery since 2019, document production and review were substantially complete, and fact discovery was almost complete at the time the Parties engaged in the mediation that resulted in the Settlement Agreement. Plaintiffs have conducted sufficient discovery to permit Class Counsel and the Court to intelligently and fairly evaluate the fairness and adequacy of the Settlement. Thus, "the efficiency with which the Parties were able to reach an agreement need not prevent this Court from granting preliminary approval." *Hillman v. Lexicon Consulting, Inc.*, No. EDCV 16-01186-VAP(SPx), 2017 WL 10433869, at *8 (C.D. Cal. Apr. 27, 2017).

### g.      The Views of Class Counsel

*Seventh*, Class Counsel's view is that this Settlement is an outstanding recovery for the Settlement Class given the risk of continuing the litigation. Counsel Decl. ¶ 35. Class Counsel are experienced in class action litigation, including cases concerning data privacy. *Id.* ¶¶ 3-6. "Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *See, e.g., Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (internal quotations omitted). This factor supports preliminary approval.

### h.      Government Participant and Class Member Reaction

*Last*, there is no government participant and, because the Court has not yet approved the Class Notice, the Settlement Class has not had an opportunity to react, so these factors are neutral. *See Hillman*, 2017 WL 10433869, at *8.

### 3.      Rule 23(e)(2)(A): The Class Representatives and Class Counsel have adequately represented the proposed class.

Under Rule 23(e)(2)(A), the Court should also consider whether the Settlement Class Representatives and Class Counsel have adequately represented the class, including the nature and amount of discovery undertaken in the litigation. *See Avina v. Marriott Vacations Worldwide Corp.*, 2019 WL 8163642, at *6 (C.D. Cal. Oct. 25, 2019). Here, Plaintiffs Childers, Watkins, Agnitti, Hodge, and Lundy have adequately represented the class by "actively participat[ing] in the prosecution of this case," *Norton v. LVNV Funding, LLC*, No. 18-cv-05051-DMR, 2021 WL 3129568, at *8 (N.D. Cal. July 23, 2021), and "[t]here are no indications that [Plaintiffs have] failed to adequately represent the interests of the class," *Moreno v. Cap. Bldg. Maint. & Cleaning Servs., Inc.*, No. 19-cv-07087-DMR, 2021 WL 1788447, at *10 (N.D. Cal. May 5, 2021). Plaintiffs assisted Class Counsel by reviewing the pleadings, responding to interrogatories, searching for and producing documents, sitting for their depositions, being available during settlement conferences, and reviewing the Settlement Agreement. Counsel Decl. ¶ 44. The Class Representatives have no conflicts with the other Settlement Class Members. *Id.*

Class Counsel have also adequately represented the class. Class Counsel are particularly experienced in the litigation, certification, trial, and settlement of nationwide class action cases. *Id.* ¶¶ 3-6. Here, Class

Counsel briefed four rounds of motions to dismiss, resulting in the successful defense of the SAC. *See* Doc. 145. Class Counsel vigorously sought and successfully obtained the discovery detailed above, including serving six sets of document requests, three sets of interrogatories, two sets of requests for admission, countless meet and confers and letters, and negotiating the search terms that resulted in over 100,000 pages of internal Facebook documents produced and reviewed in the litigation. Counsel Decl. ¶¶ 7-23. Class Counsel also deposed a key corporate witness prior to the mediation. *Id.* ¶ 23. Further, Class Counsel assisted Plaintiffs in responding to numerous interrogatories and document requests and defended four named plaintiff depositions. *Id.* ¶¶ 19, 23.

### 4. The proposed Fee and Expense Award is fair and reasonable.

Finally, and subject to the Court's consideration of a detailed fee application, the terms of the proposed award of attorneys' fees are also fair. *See* Fed. R. Civ. P. 23(e)(2)(c)(iii). Class Counsel will file a separate motion seeking approval of Attorneys' Fees and Expenses in an amount not to exceed thirty percent (30%) of the total Settlement value, plus their reasonable expenses of litigation. *See, e.g.*, *Norcia v. Samsung Telecommunications Am., LLC*, No. 14-CV-00582-JD, 2021 WL 3053018, at *5 (N.D. Cal. July 20, 2021) (granting attorneys' fee award amounting to 30% of the common fund).

Class Counsel will also seek a reasonable and fair Service Award for Plaintiffs Lundy, Childers, Watkins, Agnitti, and Hodge. The Settlement Agreement authorizes each Class Representative to seek a service award of up to $5,000. SA ¶ 80. The Settlement Class Representatives all took considerable time in assisting with the complaints, responding to document requests and interrogatories, preparing for depositions, being deposed (for four of the five), and reviewing the key terms of the Settlement Agreement. Counsel Decl. ¶ 44. This amount is well within the range of approval for class action settlements that provide significant benefits to the class. *See Bravo v. Gale Triangle, Inc.*, 2017 WL 708766, at *19 (C.D. Cal. Feb. 16, 2017) ("Generally, in the Ninth Circuit, a $5,000 incentive award is presumed reasonable."); *Hickcox-Huffman v. U.S. Airways, Inc.*, 2019 WL 1571877, at *2 (N.D. Cal. April 11, 2019) (approving service award of $10,000).

Neither final approval, nor the size of the Common Fund, are contingent upon approval of the requested Fee and Expense Award or Service Award, and Meta retains the right to object to the Fee and Expense Award. SA ¶ 109.

**B. Certification of the Settlement Class is appropriate.**

On a motion for preliminary approval, the Parties must also show that the Court "will likely be able to … certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(ii). The Settlement Class meets all of the requirements of Fed. R. Civ. P. 23(a) and (b)(3).

**1.    The Settlement Class Meets the Requirements of Rule 23(a)**

The Settlement Class as defined meets Rule 23(a)'s numerosity requirement. The class definition encompasses an estimated 70,000,000 Class Members. SA ¶ 46. This number of Class Members demonstrates that joinder is a logistical impossibility. *See, e.g.*, *Celano v. Marriott Int'l Inc.*, 242 F.R.D. 544, 549 (N.D. Cal. 2007) (numerosity is generally satisfied when a class has at least 40 members); *see also Rannis v. Recchia*, 380 Fed. App'x 646, 651 (9th Cir. 2010) (same).

The Settlement Class also satisfies the commonality requirement, which requires that class members' claims "depend upon a common contention" of such a nature that "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Commonality requires a plaintiff "to demonstrate that their claims 'depend upon a common contention . . . [whose] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Gonzalez-Tzita v. City of L.A.*, No. CV 16-0194 FMO(Ex), 2019 WL 7790440, at *5 (C.D. Cal. Dec. 9, 2019) (alteration in original) (quoting *Dukes*, 564 U.S. at 350); *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010). The Settlement Class's claims here depend on the common contention that, during the Class Period, Facebook's collection and inference of their location from their IP addresses breached their agreement with Facebook. There are several common questions in this case, including, but not limited to: (1) whether Facebook's Effective Privacy Policy constitutes a contract with Plaintiffs and Class members; (2) whether Facebook breached its contract with Plaintiffs and Class members by collecting and exploiting for its own gain Plaintiffs' and Class members' location data derived through their IP addresses without their permission; and (3) whether Plaintiffs and Class members were damaged as a result of Facebook's collection and use of their location data without their consent. SAC ¶ 145.

Typicality is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). To satisfy typicality, a claim or defense is not required to

be identical, but rather "reasonably coextensive" with those of the absent class members. *Felix v. WM. Bolthouse Farms, Inc.*, No. 1:19-cv-00312-AWI-JLT, 2020 WL 2175352, at *5 (E.D. Cal. May 4, 2020) (quoting *Hanlon*, 150 F.3d at 1020). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks and citation omitted). Here, the Settlement Class Representatives' claims are typical of the claims of Settlement Class Members because they arise from the same course of alleged conduct: Facebook collected and used their location information derived from their IP addresses even though they turned off Location Services to the Facebook application, and contrary to Facebook's then-operative policies and statements that it would not infer location without user permission.

Finally, the adequacy requirement is satisfied where the class representative will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To make this determination, "courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (quoting *Hanlon*, 150 F.3d at 1020); *Longest v. Green Tree Servicing LLC*, 308 F.R.D. 310, 325 (C.D. Cal. 2015). Here, the Settlement Class Representatives have no conflicts of interest with other Settlement Class Members, and they and Class Counsel have vigorously prosecuted this case on behalf of the class. *See* Counsel Decl. ¶ 7-23, 44.

### 2.      The Settlement Class satisfies the requirements of Rule 23(b)(3).

Class certification is appropriate under Rule 23(b)(3) when "questions of law or fact common to class members predominate over any questions affecting only individual members, and … a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Common questions predominate over any questions affecting only individual members here. The questions common to all Settlement Class members include: (1) whether Facebook's Effective Privacy Policy constitutes a contract; (2) whether Facebook breached its contract; and (3) whether Plaintiffs and the Class members were damaged as a result of Facebook's collection and use of their location data without their consent. SAC ¶ 145. These questions can be resolved using the same evidence for all class members and are

exactly the kind of predominant common issues that make class certification appropriate. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ("When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3)." (citation and quotation marks omitted)). "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." *Longest*, 308 F.R.D. at 326-28, 331 (finding predominance met in class action alleging breach of contract and UCL violations against mortgage servicer for charging inflated charges and alleged kickbacks for forced place insurance because claims could be proven through common evidence of defendants' uniform policies).

Class certification here is also "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Class-wide resolution is the only practical method of addressing the alleged violations at issue in this case. There are millions of class members with modest individual claims, most of whom likely lack the resources necessary to seek individual legal redress. *See Local Joint Exec. Bd. of Culinary/ Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) (cases involving "multiple claims for relatively small individual sums" are particularly well suited to class treatment); *see also Wolin*, 617 F.3d at 1175 ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification.") (citations omitted).

**C.  The Court should approve the proposed Notice Plan.**

The Parties' proposed Notice Plan is formulated to conform with the procedural and substantive requirements of Rule 23. Due process under Rule 23 requires that class members receive notice of the settlement and an opportunity to be heard and participate in the litigation. *See* Fed. R. Civ. P. 23(c)(2)(B); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 175-76 (1974) ("[I]ndividual notice must be provided to those class members who are identifiable through reasonable effort."). The mechanics of the notice process are left to the discretion of the Court, subject only to the broad "reasonableness" standards imposed by due process. *See Tapia v. Zale Del. Inc.*, No. 13cv1565-PCL, 2017 WL 1399987, at *4 (S.D. Cal. Apr. 18, 2017); *see also Rosenburg v. I.B.M.*, No. CV06–00430PJH, 2007 WL 128232, *5 (N.D. Cal. Jan. 11, 2007) (stating that notice should inform class members of essential terms of settlement including claims procedure and their rights to accept, object or opt-out of settlement).

Here, where direct notice is not possible based on Meta's records, the Parties must use publication notice. Settlement Class Members can easily identify themselves based on objective criteria explained in the notice and claim form, *i.e.*, being a Facebook user whose iOS or Android Location Services setting for the Facebook application was turned off at any point during the class period. Publication Notice will be effectuated by a robust media campaign consisting of state-of-the-art targeted internet notice, social media notice, a paid search campaign, and sponsored listings on class action settlement websites. Admin. Decl. ¶¶ 12, 15-31, SA at Ex. C, Summary Notice. The Notice Program is designed to reach 80.69% of the Target Audience an average of 3.01 times, such that the vast majority of Settlement Class Members will receive notice several times. *Id.* ¶¶ 13-14. The Settlement Administrator will establish the Settlement Website, where the Long Form Notice will be available, along with important case documents, and all publication notice will direct Settlement Class Members to the Settlement Website. *Id.* ¶ 32. Further, a toll-free telephone number will be available to Settlement Class Members with questions. *Id.* ¶ 33.

The proposed Notice Plan is the best notice practicable and is reasonably designed to reach the Settlement Class Members. *See id.* ¶ 44; *see also Briseno v. Conagra Foods, Inc.*, 844 F.3d 1121, 1129 (9th Cir. 2017) ("Courts have routinely held that notice by publication in a periodical, on a website, or even at an appropriate physical location is sufficient to satisfy due process."); *In re Facebook Biometric Info. Privacy Litig.*, 522 F.Supp.3d 617, 624-25 (N.D. Cal. 2018) (approving notice program that included publication via, among other things, newspaper, a dedicated settlement website, and internet ad campaigns), *aff'd* 932 F.3d 1264 (9th Cir. 2019); *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 596 (N.D. Cal. 2020) (approving notice plan of digital internet advertising and magazine publication).

Moreover, the substance of long-form Class Notice will fully apprise class members of their rights. Under Rule 23(e), notice to class members "must 'generally describe[ ] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012) (alteration in original) (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F. 3d 948, 962 (9th Cir. 2009)) (alteration in original). The Notice contains all the critical information required to apprise Settlement Class Members of their rights under the settlement, directs them to the Settlement Website, where they can obtain more detailed information, and provides a toll-free number

for Settlement Class Members to call with questions. SA at Ex. D, Class Notice. This approach to notice is adequate. *See, e.g., Sarabri v. Weltman, Weinberg & Reis Co., L.P.A.*, No. 10cv1777 AJB (NLS), 2012 WL 3809123, at *2 (S.D. Cal. Sept. 4, 2012) (approving mailed notice where notice would include the settlement website with full settlement details and the claim administrator's toll free number); *Knutson v. Schwan's Home Serv., Inc.*, No. 3:12-cv-00964-GPC-DHB, 2014 WL 3519064, at *5 (S.D. Cal. 2014) (same). This information undoubtedly provides "sufficient detail" to allow class members with adverse viewpoints to conduct further investigation and "come forward to be heard." *Lane*, 696 F.3d at 826 (holding the sufficient detail standard "does not require detailed analysis of the statutes or causes of action forming the basis for the plaintiff class's claims"). Accordingly, this Notice Plan will fully apprise Settlement Class Members of their rights under Rule 23(e) and should be approved.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs Lundy, Childers, Watkins, Agnitti, and Hodge request that the Court preliminarily approve the Settlement, enter the Preliminary Approval Order, appoint them as Settlement Class Representatives, appoint Sabita J. Soneji of Tycko & Zavareei LLP and Barrett J. Vahle of Stueve Siegel Hanson LLP as Class Counsel, direct that Notice be distributed to the Settlement Class, and schedule a Final Approval Hearing.

Dated: August 22, 2022                      Respectfully Submitted,


   */s/ Sabita J. Soneji*
SABITA J. SONEJI (SBN 224262)
ssoneji@tzlegal.com
**TYCKO & ZAVAREEI LLP**
The Tower Building
1970 Broadway, Suite 1070
Oakland, California 94612
Telephone: (510) 254-6808


BARRETT J. VAHLE (*pro hac vice*)
vahle@stuevesiegel.com
JILLIAN R. DENT (*pro hac vice*)
dent@stuevesiegel.com
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200

Kansas City, Missouri 64112
Telephone: (816) 714-7100

FRANKLIN D. AZAR (*pro hac vice*)
azarf@fdazar.com
PAUL R. WOOD (*pro hac vice*)
woodp@fdazar.com
MICHAEL D. MURPHY (*pro hac vice*)
murphym@fdazar.com
**FRANKLIN D. AZAR &
ASSOCIATES, P.C.**
14426 East Evans Avenue
Aurora, CO 80014
Telephone: (303) 757-3300

IVY T. NGO (SBN 249860)
ingo@rochefreedman.com
**ROCHE FREEDMAN LLP**
1 SE 3rd Avenue, Suite 1240
Miami, FL 33131
Telephone: (305) 971-5943
Facsimile: (646) 392-8842

*Counsel for Plaintiffs and the Proposed Class*

**APPENDIX A**

| Case Name | *In re Facebook Internet Tracking Litigation*, Case No. 5:12-md-02314-EJD, Docs. 212, 232, 247-1 (N.D. Cal.) | *In re Ashley Madison Customer Data Security Breach Litigation*, 4:15-md-02669-JAR, Docs. 344, 383, 384, 389 (E.D. Mo.) |
|---|---|---|
| Claims | Wiretap Act, CIPA, intrusion upon seclusion, invasion of privacy, statutory larceny, trespass, Cal. Computer crime law, statutory fraud | Breach of contract, unjust enrichment, negligence, negligent misrepresentation, consumer protection violations, CCRA, state data breach claims, violations of Racketeer Influenced and Corrupt Organizations Act and Federal Stored Communications Act |
| Settlement Fund | $90,000,000 | $11,200,000 |
| # of Class Members | 124 million | Tens of millions |
| # of Class Members to whom Notice was sent | Anticipated email notice to the 124 million class members | Media only |
| Notice Methods | Email, social media, digital ads, paid search campaign | Print and digital media, press release |
| Claim Forms Submitted | Not yet announced | 4,236 claim submissions, of which 3,849 were valid |
| Avg. Claimant Recovery | Not yet announced | $944.82 |
| Distribution to *Cy Pres* | Not yet announced | Yes |
| Admin. Costs | Estimated at $1,567,044 to $3,582,576 for claims rates of 1% to 5% | $309,240 |
| Attorneys' Fees and Costs | Intend to seek $26.1 million plus reasonable expenses | $3,733,333.33 fees and $78,032.38 costs |