SABITA J. SONEJI (SBN 224262)
ssoneji@tzlegal.com
**TYCKO & ZAVAREEI LLP**
The Tower Building
1970 Broadway, Suite 1070
Oakland, California 94612
Telephone: (510) 254-6808

BARRETT J. VAHLE (*pro hac vice*)
vahle@stuevesiegel.com
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: (816) 714-7100

*Counsel for Plaintiffs and the Proposed Class*

*Additional Counsel on Signature Page*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

|  |  |
|---|---|
| BRENDAN LUNDY, MYRIAH WATKINS, ELIZABETH CHILDERS, MICHELLE AGNITTI, and ROBIN HODGE,<br><br>Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | Case No. 3:18-cv-6793-JD<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS**<br><br>**Date:** October 19, 2023<br>**Time:** 10 a.m.<br>**Place:** Courtroom 11, San Francisco, 19th Floor |

# TABLE OF CONTENTS

I.    INTRODUCTION...................................................................................................................1

II.   CLASS COUNSEL'S RELENTLESS EFFORT MADE THIS SETTLEMENT POSSIBLE ....2

III.  THE COURT SHOULD GRANT CLASS COUNSEL'S REQUESTED FEES .......................3

    A.   Class Counsel's Requested Fees Are Reasonable, Fair, and Appropriate Under the Percentage of the Recovery Method...................................................................................3

        1.   Class Counsel Achieved Exceptional Results .................................................4

        2.   This Case Presented a Heightened Risk of Total Loss....................................5

        3.   Class Counsel's Efforts Generated Benefits Beyond the Cash Settlement Fund ...............................................................................................................5

        4.   Class Counsel's Fees are Comparable to Market Rates..................................6

        5.   Class Counsel Assumed Significant Financial Burdens...................................7

        6.   Class Counsel Represented the Class on a Contingent Basis ..........................8

    B.   Class Counsel's Requested Fee Is Also Reasonable, Fair, and Appropriate Under a Lodestar Cross-Check.........................................................................................................8

        1.   Class Counsel Spent a Reasonable Number of Hours Successfully Pursuing This Litigation. ............................................................................................9

        2.   A 1.17 Multiplier Is Also Reasonable..........................................................10

            i.    The reputation, ability, and efficiency of Class Counsel supports the requested fees. ............................................................................11

            ii.   The requested multiplier is reasonable when compared to other similar litigation....................................................................................13

IV.   THE COURT SHOULD APPROVE REIMBURSEMENT OF CLASS COUNSEL'S REASONABLE LITIGATION EXPENSES.............................................................................14

V.    THE COURT SHOULD APPROVE REASONABLE SERVICE AWARDS FOR THE SETTLEMENT CLASS REPRESENTATIVES........................................................................14

VI.   CONCLUSION ....................................................................................................................15

# TABLE OF AUTHORITIES

CASES

*Abubaker v. Dominion Dental USA, Inc.,*
No. 1:19-cv-01050-LMB-MSN (E.D. Va.) ..................................................................... 13

*Athletic Grant-in-Aid Cap Antitrust Litig.,*
No. 4:14-md-2541-CW, 2017 WL 6040065, (N.D. Cal. Dec. 6, 2017) ........................... 4

*Carlin v. DairyAmerica, Inc.,*
380 F. Supp. 3d 998 (E.D. Cal. 2019) ......................................................................... 15

*Craft v. Cnty. of San Bernardino,*
624 F. Supp. 2d 1113 (C.D. Cal. 2008) ......................................................................... 8

*Cummings v. Connell,*
402 F.3d 936 (9th Cir. 2005) ......................................................................................... 5

*Customs Fraud Investigations, LLC v. Victaulic Co.,*
No. 13-2983, 2019 WL 4280494 (E.D. Pa. Sept. 9, 2019) ............................................. 6

*Dyer v. Wells Fargo Bank, N.A.,*
303 F.R.D. 326 (N.D. Cal. 2014) .................................................................................... 8

*Farrell v. Bank of Am. Corp., N.A.,*
827 F. App'x 628 (9th Cir. 2020) ................................................................................. 12

*Farrell v. Bank of Am., N.A.,*
327 F.R.D. 422 (S.D. Cal. 2018) .................................................................................. 12

*Fox v. Vice,*
563 U.S. 826 (2011) ....................................................................................................... 9

*Franchek v. Workrite Ergonomics, LLC,*
No. 16-cv-02789-JSW (DMR), 2022 WL 3137928 (N.D. Cal. May 9, 2022) ............... 11

*Hensley v. Eckerhart,*
461 U.S. 424 (1983) ....................................................................................................... 8

*Herrera v. Wells Fargo Bank, N.A.,*
No. 8:18-cv-00332-JVS-MRW, 2021 WL 9374975 (C.D. Cal. Nov. 16, 2021) ............. 7

*In re Apple Inc. Device Performance Litig.,*
50 F.4th 769 (9th Cir. 2022) .............................................................................. 3, 13, 14

*In re Bank of Am. Credit Prot. Mktg. & Sales Pracs. Litig.,*
No. 11-MD-2269 THE, 2013 WL 174056 (N.D. Cal. Jan. 16, 2013) ........................... 10

*In re Capital One Consumer Data Sec. Breach Litig.,*
2022 WL 17176495 (E.D. Va., November 17, 2022) .............................................. 12, 13

*In re Equifax Inc. Customer Data Sec. Breach Litig.,*
No. 1:17-md-2800-TWT, 2020 WL 256132 (N.D. Ga. March 17, 2020) ....................... 6

*In re Facebook Biometric Info. Priv. Litig.*,
  522 F. Supp. 3d 617 (N.D. Cal. 2021)................................................................................13

*In re High-Tech Emp. Antitrust Litig.*,
  No. 11-CV-02509-LHK, 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015)............................11

*In re Home Depot, Inc., Customer Data Sec. Breach Litig.*,
  2016 WL 11299474 (N.D. Ga. Aug. 23, 2016) .............................................................12, 13

*In re ICCU Data Breach Litig.*,
  No. CV03-20-00831 (District Court of the Sixth Judicial District of the State of Idaho) ...............12

*In re Intuit Data Litig.*,
  No. 15-CV-1778-EJD-SVK, 2019 WL 2166236 (N.D. Cal. May 15, 2019) .........................15

*In re Juul Labs, Inc., Mkg., Sales Pracs., and Prods. Liab. Litig.*,
  No. 19-md-02913-WHO (N.D. Cal.)................................................................................12

*In re Lenovo Adware Litig.*,
  No. 15-md-02624-HSG, 2019 WL 1791420 (N.D. Cal. Apr. 24, 2019) ..............................15

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..............................................................................14

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015)...................................................................................... 3, 4, 8

*In re Optical Disk Drive Prod. Antitrust Litig.*,
  No. 3:10-md-2143-RS, 2016 WL 7364803 (N.D. Cal. Dec. 19, 2016) ............................ 6, 8

*In re Syngenta AG MIR162 Corn Litig.*,
  No. 14-md-2591-JWL-JPO, Dkt. No. 3587-5 (D. Kan. July 10, 2018) ............................ 6, 7

*In re T-Mobile Customer Data Security Breach Litig.*,
  No. 4:21-MD-03019-BCW (W.D. Mo.)................................................................................12

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994) ..................................................................................................7

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
  2021 WL 926706 (N.D. Cal. Mar. 4, 2021) ..........................................................................6

*Kerr v. Screen Extras Guild, Inc.*,
  526 F.2d 67 (9th Cir. 1975)...................................................................................................11

*Kumar v. Salov N. Am. Corp.*,
  No. 14-CV-2411-YGR, 2017 WL 2902898 (N.D. Cal. July 7, 2017) ............................ 6, 12

*Mission Beverage Co. v. Pabst Brewing Co.*,
  15 Cal. App. 5th 686 (2017)...................................................................................................5

*Nitsch v. DreamWorks Animation SKG Inc.*,
  2017 WL 2423161 (N.D. Cal. June 5, 2017) ..........................................................................6

*Noll v. eBay, Inc.*,
   309 F.R.D. 593 (N.D. Cal. 2015) ................................................................................13

*Parkinson v. Freedom Fid. Mgmt., Inc.*,
   No. 10-CV-0345-TOR, 2012 WL 5194955 (E.D. Wash. Oct. 19, 2012)...............................11

*Perkins v. Linkedin Corp.*,
   No. 13-CV-04303-LHK, 2016 WL 613255 (N.D. Cal. Feb. 16, 2016).................................13

*Roberts v. Marshalls of CA, LLC*,
   2018 WL 510286 (N.D. Cal. Jan. 23, 2018)..........................................................10, 11

*Rodriguez v. Marshalls of CA, LLC*,
   No. EDCV181716MWFSPX, 2020 WL 7753300 (C.D. Cal. July 31, 2020)..........................11

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009)................................................................................14

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ..............................................................................3, 8

*Theodore Broomfield v. Craft Brew All., Inc.*,
   No. 17-cv-01027-BLF, 2020 WL 1972505 (N.D. Cal. Feb. 5, 2020) ..................................11

*Vedachalam v. Tata Consultancy Servs., Ltd*,
   No. C 06-0963 CW, 2013 WL 3941319 (N.D Cal. July 18, 2013)......................................14

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002).........................................................................8, 13

*Yellowdog Partners, LP v. CURO Group Holdings Corp.*,
   No. 18-cv-2662-JWL-KGG, Dkt. No. 99-14 (D. Kan. Nov. 13, 2020) ..................................6

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on **Thursday, October 19, 2023, at 10:00 a.m.**, or as soon thereafter as this matter may be heard, in Courtroom 11, before the Honorable James Donato, Plaintiffs Brendan Lundy, Elizabeth Childers, Myriah Watkins, Michelle Agnitti, and Robin Hodge ("Plaintiffs" or "Settlement Class Representatives") respectfully move this Court for: (1) approval of an attorneys' fee award of 25% of the common fund created by the proposed settlement; (2) reimbursement of the reasonable expenses counsel incurred litigating this action; and (3) service awards of $5,000 for each of the five Settlement Class Representatives. Plaintiffs' motion is based on this Notice, the accompanying Memorandum in Support, the Declaration of Sabita J. Soneji and Barrett J. Vahle in Support of Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards ("Class Counsel Decl.", **Exhibit 1** hereto); the complete files and records in this action; and such other evidence as the Court may allow.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Over more than four years, Class Counsel have committed thousands of hours of time and significant expenses on behalf of the Class and have successfully secured a $37.5 million common fund which will provide meaningful relief in the form of a *pro rata* cash payment to all settlement class members who filed a timely and valid claim. That result is exceptional by any metric, but particularly when compared to other similar settlements. *See* **Exhibit 2**, chart of comparator settlements. To achieve this result, Class Counsel worked tirelessly against a formidable and well-resourced defendant that resisted at every turn Plaintiffs' effort to advance this case to trial. Specifically, Class Counsel defeated multiple motions to dismiss the two consolidated cases and persistently fought for discovery over the course of four years as Defendant challenged every request. Moreover, when the Court dismissed the Class's statutory damage claims, they worked to identify another viable damages model that would provide meaningful recovery to the Class.

In pursuing this challenging and time-consuming litigation, Class Counsel undertook enormous risk. Class Counsel agreed to represent Plaintiffs on a fully contingent basis, knowing that Class Counsel would have to advance time and out-of-pocket costs with no guarantee of recovery. Indeed, the likelihood of prevailing in this case was particularly uncertain due to the Court's dismissal of several of Plaintiffs' claims, including for statutory damages. Class Counsel achieved an excellent result for the Class by vigorously litigating this case at each step, all while working efficiently and expending reasonable time and resources.

As compensation for the skill, commitment, and time they dedicated to this challenging case, Class Counsel now seek a fee award of 25% of the common fund, or $9,375,000, which amounts to a 1.17 multiplier of their lodestar. That 25% award is reasonable, in line with the benchmark set by the United States Court of Appeals for the Ninth Circuit, and appropriate and fair given the complexity of this case. Class Counsel also seek reimbursement of reasonable litigation expenses. Finally, Class Counsel seek a service award of $5,000 for each Settlement Class Representative to compensate them for their efforts and the successful result they achieved on behalf of the Class. A $5,000 award is also in line with District standards.

## II.     CLASS COUNSEL'S RELENTLESS EFFORT MADE THIS SETTLEMENT POSSIBLE

Plaintiffs and Class Counsel achieved the excellent result for the Class through over four years of thorough and strategic litigation, which included the consolidation of two class actions, briefing four motions to dismiss between the two actions (ultimately resulting in denial of the motion to dismiss the operative complaint), and hard-fought discovery resulting in the production and review of over 100,000 pages of internal Meta documents, numerous interrogatory responses, several depositions, and retention and development of expert witnesses. Only after that work were the Parties able to reach a proposed settlement—under the supervision of mediator Randall Wulff—that creates a $37.5 million common fund.

After the Court initially denied preliminary approval, *see* Dkt. No. 182, the Parties renegotiated at arm's length the Amended Settlement Agreement over the course of two months. Specifically, and in response to the Court's comments at the first preliminary approval hearing, the Parties negotiated an alternative *cy pres* mechanism that could be used if the Court were to determine that the number of claims for settlement payments, and the resulting dollar amount of individual settlement payments, rendered processing and delivery of those payments administratively infeasible. The Parties proposed potential *cy pres* recipients and worked with those proposed recipients to submit information regarding their qualifications to receive any potential *cy pres* funds from this settlement. Dkt. No. 190. After a hearing, the Court preliminarily approved the Amended Settlement Agreement on April 26, 2023. Dkt. No. 199. The case history and background facts demonstrating Class Counsel's efforts on behalf of the Class are summarized in the Declaration of Class Counsel submitted herewith, and, pursuant to the Procedural Guidance for Class Action Settlements, will be detailed in greater depth only in Plaintiffs' forthcoming Motion for Final Approval.

Although the proposed settlement provides a potential alternative award whereby approved *cy pres* recipients would receive the entire net settlement fund, Class Counsel expect it will be practicable to distribute the fund as originally intended, with cash *pro rata* payments to all claimants that are significantly larger than the nominal damages that may have been available to them at trial. While the Court-appointed administrator Angeion continues to assess the validity of claims, based on its current assessment Angeion anticipates that there are approximately 910,000 valid and timely claims. Assuming a net settlement fund of approximately $26.44 million, after payment of the costs of notice and administration and payment of approved fees,

expenses, and service awards, Class Counsel expect each claimant to receive a cash settlement payment of approximately $29. More complete and precise information regarding the number of timely and valid claims will be submitted with the Motion for Final Approval, but Class Counsel expect the *pro rata* cash payments to be easily within a range that is economically and administratively feasible to distribute to settlement class members who submitted claims, giving them meaningful relief for claims based primarily on alleged insufficient contractual disclosures in a period during 2015 through 2018. This settlement represents a compromise that is an excellent recovery for the Class and reflects the tremendous work of Class Counsel and the Settlement Class Representatives.

## III.   THE COURT SHOULD GRANT CLASS COUNSEL'S REQUESTED FEES

Under the Settlement Agreement, Class Counsel may seek fees of up to 30 percent of the common fund. SA ¶ 86. However, Class Counsel now request a lower "benchmark" fee of only 25 percent of the fund, or $9,375,000. This is justified because Class Counsel assumed significant litigation risk, worked tirelessly yet efficiently throughout this litigation, and obtained excellent relief for the Class. *See Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003) (explaining that the Ninth Circuit "has established 25% of the common fund as a benchmark award for attorney fees"); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) (explaining that "courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award"). The Ninth Circuit has approved two methods for awarding attorneys' fees: (1) as a "percentage of the recovery" made available to the settlement class, including costs, fees, and injunctive relief, or (2) the "lodestar" method under which the hours reasonably spent by class counsel are multiplied by the reasonable rate for their time. *See, e.g.*, *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 784 (9th Cir. 2022). Class Counsel's fee request is reasonable under either method.

### A.   Class Counsel's Requested Fees Are Reasonable, Fair, and Appropriate Under the Percentage of the Recovery Method.

The Ninth Circuit identified "several factors" that district courts "may consider in assessing a request for attorneys' fees that was calculated using the percentage-of-recovery method." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954 (9th Cir. 2015). These factors include:

the extent to which class counsel achieved exceptional results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash

3

settlement fund, the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis.

*Id.* at 954-955 (internal quotation marks omitted).

### 1.    Class Counsel Achieved Exceptional Results

Class Counsel achieved an exceptional outcome. The Parties are in serious disagreement on the merits of this case. Plaintiffs believe that their claims are meritorious and that they would prevail if this case proceeded to trial. Meta contends that Plaintiffs' claims are unfounded, denies liability, and has demonstrated a willingness to litigate vigorously. Nevertheless, the Parties have come to an agreement that both sides find reasonable and fair.

This Settlement saves the Parties the unnecessary additional expense of briefing and likely appealing class certification as well as trial and provides the Class with more timely compensation for their injuries. This Settlement provides for a $37.5 million common fund that amounts to more than 50% of a possible recovery under a nominal-damages theory. Class Counsel Decl. ¶¶ 30. *See In re Nat'l Collegiate Athletic Assoc. Athletic Grant-in-Aid Cap Antitrust Litig.*, No. 4:14-md-2541-CW, 2017 WL 6040065, at *7 (N.D. Cal. Dec. 6, 2017) (finding that a 3.66 multiplier was "strongly support[ed]" where "class members will receive approximately 50% of their damages, a result almost never achieved in large, complex antitrust cases"). The Settlement Agreement provides that the Common Fund of $37.5 million shall be used to cover (1) monetary payments to Class Members on a *pro rata* basis, or in the alternative, payment to *cy pres* recipients, (2) all Administrative Costs, and (3) any Fee and Expense Award or Service Awards approved by the Court. *See* SA ¶¶ 61-70. Although the estimated class size is large, $37.5 million is a substantial settlement that compares favorably to relief the Class might have secured at trial, especially given Plaintiffs' potentially difficult path to proving damages.

Indeed, while the Court found Plaintiffs adequately pled disgorgement and nominal damages, Dkt. No. 145 at 2-3, discovery revealed that Meta did not track revenues or profits from advertising associated with users who had Location Services turned off, nor did it track revenue or profits associated solely with location given each advertisement is targeted based on numerous factors and demographic information. Class Counsel Decl. ¶ 41. Thus, if this case had gone to trial and Plaintiffs prevailed on the merits, there was a

significant risk of a successful *Daubert* challenge to Plaintiffs' disgorgement theory and Plaintiffs may have been limited to nominal damages, which are generally cabined to $1 per class member in this Circuit. *Mission Beverage Co. v. Pabst Brewing Co.*, 15 Cal. App. 5th 686, 710-711 (Cal. Ct. App. 2017) ("A plaintiff suing for breach of contract is entitled to recover . . . nominal damages."); *Cummings v. Connell*, 402 F.3d 936, 944-45 (9th Cir. 2005), *as amended*, No. 03-17095, 2005 WL 1154321 (9th Cir. May 17, 2005) (holding that "every member is entitled to nominal damages, just as if each one had brought his or her own lawsuit" and that damages would be limited to $1 per class member). If the Class consists of 70 million users, which is a reasonable estimate, this Settlement amount represents 53% of what Plaintiffs likely could have recovered for their breach-of-contract claim under a nominal-damages theory. Class Counsel Decl. ¶ 30. And if the fund is ultimately distributed *pro rata* to approved claimants, each claimant will likely recover approximately $29, which significantly exceeds what could have been recovered under a nominal-damages theory. For these reasons, the settlement Class Counsel achieved represents an exceptional result.

### 2.    This Case Presented a Heightened Risk of Total Loss

Class Counsel brought this case knowing that, should the case proceed in litigation, Plaintiffs' claims could be dismissed or narrowed by a motion for summary judgment, at trial, or on a subsequent appeal. Plaintiffs also faced both the risk that class certification could be denied and certain challenges with respect to proving damages based on the discovery obtained in the case. And Class Counsel knew that even if Plaintiffs prevailed at trial, any recovery would likely be delayed for a year or more by appeals. The likelihood of prevailing in this case was uncertain and the case became all the riskier once the Court dismissed Plaintiffs' statutory-damages claims. *See* Dkt. No. 70 at 4-5 (dismissing, among other things, claims under the California Invasion of Privacy Act, Cal. Pen. Code §§ 630, *et seq.*, and the federal Stored Communications Act, 18 U.S.C. §§ 2701, *et seq.*). Class Counsel's willingness to take on these substantial risks in order to vindicate Plaintiffs' privacy rights should factor into the Court's calculation of Class Counsel's fees.

### 3.    Class Counsel's Efforts Generated Benefits Beyond the Cash Settlement Fund

Beyond the cash recovery to Class members, Class Counsel and Plaintiffs have achieved several non-cash benefits for the Class. By filing and litigating this case, and through the Settlement notice program, Class

Counsel and Plaintiffs have raised awareness regarding social media companies' privacy practices, in general, and Meta's privacy policies, more specifically. As a result of this heightened awareness, the general public is hopefully less susceptible to companies' efforts to mislead consumers regarding the tracking of user data. Further, this Settlement itself serves a deterrent effect, by demonstrating that companies that track users' location data (and other personal data) without users' fully informed consent can be held to account for privacy invasions. Finally, in the event the Court were to approve the alternative *cy pres* mechanism, the proposed *cy pres* recipients will provide valuable non-monetary benefits to the Class through their work involving technology, law, and privacy. *See* Dkt. No. 190.

### 4.     Class Counsel's Fees are Comparable to Market Rates

The hourly rates sought are based on the prevailing market rates in this locality for attorneys of similar skill and ability performing similar work. *E.g.*, *Nitsch v. DreamWorks Animation SKG Inc.*, No. 14-CV-04062-LHK, 2017 WL 2423161, at *9 (N.D. Cal. June 5, 2017) (awarding rates of up to $870.00 to $1,200.00); *In re Wells Fargo & Co. S'holder Derivative Litig.*, 523 F. Supp. 3d 1108, at 1118 (N.D. Cal. 2021) (explaining that rates of up to $1,075.00 for partners or "of counsel" attorneys and up to $660.00 for associates are reasonable for Co-Lead Counsel); *In re Optical Disk Drive Prods. Antitrust Litig.*, No. 3:10-md-2143-RS, 2016 WL 7364803, at *8 (N.D. Cal. Dec. 19, 2016) (approving hourly rates of $250 to $950). The rates utilized by Class Counsel also reflect rates awarded to them by other courts in complex litigation. *E.g.*, *Kumar v. Salov N. Am. Corp.*, No. 14-CV-2411-YGR, 2017 WL 2902898, at *7 (N.D. Cal. July 7, 2017), *aff'd*, 737 F. App'x 341 (9th Cir. 2018) (approving Tycko & Zavareei LLP's hourly rates as being "reasonable and commensurate with those charged by attorneys with similar experience in the market"); *Customs Fraud Investigations, LLC v. Victaulic Co.*, No. 13-2983, 2019 WL 4280494, at *8 (E.D. Pa. Sept. 9, 2019) (approving Tycko & Zavareei LLP's hourly rates as "reasonable"); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-md-2800-TWT, 2020 WL 256132, at *39 (N.D. Ga. March 17, 2020), *aff'd in relevant part*, 999 F.3d 1247 (11th Cir. 2021) (approving as reasonable Stueve Siegel's 2019 rates up to $935 and co-counsel's rates up to $1,050); *Yellowdog Partners, LP v. CURO Group Holdings Corp.*, No. 18-cv-2662-JWL-KGG, Dkt. No. 99-14 at 2 (D. Kan. Nov. 13, 2020) (approving Stueve Siegel's 2020 rates, including $845 for a Stueve Siegel partner); *id.*, Dkt. No. 107 (D. Kan. Dec. 18, 2020) (approving the motion for attorneys' fees); *In re Syngenta AG MIR162 Corn Litig.*, No. 14-md-2591-JWL-JPO, Dkt. No. 3587-5 (D. Kan. July 10, 2018) (expert analyzing submitted rates of counsel in the MDL,

MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS
Case No. 3:18-cv-6793-JD

including rates from Stueve Siegel, and finding that hourly rates submitted in 2017 ranging up to $985 per hour for a partner were reasonable and commensurate with market rates in Kansas City for complex litigation); *id.* at Dkt. No. 3849 at 33-34 (approving motion for attorneys' fees); *Herrera v. Wells Fargo Bank, N.A*, No. 8:18-cv-00332-JVS-MRW, 2021 WL 9374975, at *13 (C.D. Cal. Nov. 16, 2021) (in Franklin D. Azar & Associates case finding rates ranging from $900 to $1000 for partners; $550-$875 for mid-level attorneys, staff attorneys, and senior-level attorneys; $350-$550 for junior attorneys and associates; and $150-$450 for paralegals "compares favorably to what other courts within the Ninth Circuit have found to be reasonable rates in complex, high-stakes litigation"). *See also* Class Counsel Decl. ¶¶ 45-46.

The use of Class Counsel's current, rather than historical, rates is also appropriate given the deferred and contingent nature of counsel's compensation. *See In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994) ("The district court has discretion to compensate delay in payment in one of two ways: (1) by applying the attorneys' current rates to all hours billed during the course of litigation; or (2) by using the attorneys' historical rates and adding a prime rate enhancement."). Using current rates, rather than historical rates, will fairly compensate counsel for the significant risk of nonpayment and deferred payment taken on in connection with this matter.

Finally, and as explained in further detail below, Class Counsel's expenditure through July 31, 2023, of 11,147 hours in this litigation and securing its resolution is reasonable given the duration and complexity of the litigation and the multiple obstacles that Class Counsel overcame to reach this settlement.

## 5.    Class Counsel Assumed Significant Financial Burdens

Class Counsel collectively devoted over 11,147 hours in attorney and staff time in litigating this matter through July 31, 2023. Class Counsel Decl. ¶ 47; **Exhibit 3**, Declaration of Paul R. Wood ¶ 5; **Exhibit 4**, Declaration of Ivy T. Ngo ¶ 6. They have also spent $322,464.95 in expenses in this litigation. Class Counsel Decl. ¶ 58; Wood Decl. ¶ 7; Ngo Decl. ¶ 8. This commitment of time, personnel, and money to advocating on behalf of the Class supports the requested award. Class Counsel overcame multiple motions to dismiss and successfully fought for and obtained discovery—in part through dozens of meet-and-confers—from a reluctant and well-resourced defendant that eventually produced over 100,000 pages of discoverable documents. Class Counsel Decl. ¶¶ 5-18. Class Counsel also deftly reframed the liability and damages model

after the Court dismissed all of Plaintiffs' statutory damages claims. Class Counsel's significant financial investment in this case, therefore, supports the requested award.

### 6.  Class Counsel Represented the Class on a Contingent Basis

Class Counsel agreed to represent the Plaintiffs on a fully contingent basis, knowing that they would have to advance time and out-of-pocket costs with no guarantee of recovery. In doing so, Class Counsel forwent representing other litigants in other cases so that they could dedicate a team of experienced class-action attorneys and their staff to this case. Class Counsel Decl. ¶ 42. Given the risk Class Counsel undertook in prosecuting this uncertain case on a fully contingent basis, and the tremendous result achieved for the Class, Class Counsel's request for a fee award of 25% of the common fund is reasonable. *See Staton*, 327 F.3d at 968 (explaining that the Ninth Circuit "has established 25% of the common fund as a benchmark award for attorney fees"); *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 333-34 (N.D. Cal. 2014) (granting class counsel's request for "the standard 25% benchmark in attorneys' fees," which included costs and expenses); *Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113, 1123 (C.D. Cal. 2008) (awarding class counsel 25% of the class fund).

### B.  Class Counsel's Requested Fee Is Also Reasonable, Fair, and Appropriate Under a Lodestar Cross-Check.

The Ninth Circuit has "encouraged courts using the percentage-of-recovery method to perform a cross-check by applying the lodestar method to confirm that the percentage-of-recovery amount is reasonable." *In re Optical Disk*, 959 F.3d at 930 (citing *Online DVD-Rental*, 779 F.3d at 949); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, at 1050 (9th Cir. 2002) (explaining that lodestar "measures the lawyers' investment of time in the litigation" and "may provide a useful perspective on the reasonableness of a given percentage award"). Class Counsel's requested fees are also reasonable under that lodestar cross-check.

*First*, Class Counsel's lodestar of $8,021,521 is the result of the expenditure of reasonable hours multiplied by reasonable hourly market rates. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (explaining that the lodestar figure is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate"). Here, Class Counsel worked a total of 11,147 hours as they persevered at every stage of four years of litigation. *See* Class Counsel Decl. ¶ 47. And, as explained above, courts regularly find that Class

Counsel's rates are reasonable in awarding them fees.

*Second*, the quality of representation, the novelty and complexity of the issues in the case, the results obtained for the Class, and the contingent risk that Class Counsel undertook easily supports the request for a modest 1.17 multiplier, especially since this multiplier request is well within the range of multipliers regularly awarded in similar consumer cases. *See infra* pp. 10-11.

**1.      Class Counsel Spent a Reasonable Number of Hours Successfully Pursuing This Litigation.**

Class Counsel litigated this action vigorously but efficiently and expended a reasonable number of hours in light of the work performed. In evaluating the reasonableness of the hours spent litigating an action, "trial courts need not, and indeed should not, become green-eyeshade accountants" because "[t]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). Here, Class Counsel's efforts to date include, without limitation:

- Pre-filing investigation;
- Drafting and filing multiple class action complaints and a consolidated amended complaint;
- Successfully defending against four motions to dismiss;
- Preparing initial disclosures, interrogatories, requests for admission, requests for the production of documents, responses and objections to discovery requests, and third-party subpoenas;
- Reviewing thousands of documents, expert testimony, defending depositions of the class representatives, and deposing Defendant's witnesses, all of which related to Defendant's collection and inference of user location data, damages, and the merits of the claims;
- Retaining and working with experts on privacy, location tracking, inference technology, and damages;
- Preparing various routine filings;
- Grueling and lengthy meet and confers with Meta's counsel on discovery requests;
- Drafting a mediation statement and participating in a mediation session;
- Negotiating and drafting the Settlement Agreement along with corresponding documents, including claim forms, summary notice, and long-form notice;
- Filing the motion for preliminary approval and renewed motion for preliminary approval and supporting documents to each, including a proposed preliminary approval order and a proposed final judgment;

- Identifying and investigating potential *cy pres* recipients;
- Supervising the work of the Claims Administrator; and
- Preparing this motion and supporting documentation.

Class Counsel Decl. ¶¶ 5-26, 31, 51. The hours spent on these tasks were appropriately expended and necessary to achieve the significant benefits obtained through this litigation. All Plaintiffs' counsel kept contemporaneous time records reported on a monthly basis pursuant to Class Counsel's timekeeping protocol. *Id.* ¶ 48 & Attachment A thereto. Plaintiffs respectfully submit that the Court can easily find that Class Counsel and their staff expended a reasonable number of hours on this litigation. *See, e.g.*, *Roberts v. Marshalls of CA, LLC*, No. 13-cv-04731-MEJ, 2018 WL 510286, at *15 (N.D. Cal. Jan. 23, 2018) (finding that a reasonable number of hours were spent on the litigation where "Class Counsel's records show they spent their time investigating claims; conducting and reviewing discovery; communicating with Plaintiffs, Class Members, and co-counsel; performing legal research; drafting pleadings and motions; participating in mediation; and preparing for and making court appearances").

### 2.  A 1.17 Multiplier Is Also Reasonable.

A modest multiplier here of 1.17 is a reasonable adjustment to the base lodestar. Multipliers are used to reward efficient and successful resolution of cases—like the one achieved here——and thus serve the policy goals of settlement and avoiding wasteful litigation. *In re Bank of Am. Credit Prot. Mktg. & Sales Pracs. Litig.*, No. 11-md-2269 TEH, 2013 WL 174056, at *1 (N.D. Cal. Jan. 16, 2013) ("The multiplier of approximately 1.6 is justified by the risk Counsel undertook and the results achieved for the Class in an efficient manner.").

In assessing whether an "upwards adjustment to a lodestar (through a positive multiplier)" is warranted, *In re Nat'l Collegiate Athletic Assoc.*, 2017 WL 6040065, at *7, courts consider the *Kerr* reasonableness factors, which are:

> (1) the time and labor required, (2) the novelty and difficulty of the question involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Theodore Broomfield v. Craft Brew All., Inc.*, No. 17-cv-01027-BLF, 2020 WL 1972505, at *12 (N.D. Cal. Feb. 5,

2020) (citing, inter alia, *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)). "Foremost among these considerations, however, is the benefit obtained for the class." *In re Bluetooth*, 654 F.3d at 942. As explained above, the benefit obtained for the Class is significant, awarding class members 53% of the damages they likely could have received at trial under a nominal-damages theory.

In addition, many of the *Kerr* reasonableness factors weigh in favor of giving Class Counsel a slight upward adjustment of the lodestar in this case. Over the course of four years, Class Counsel expended significant time and labor litigating the difficult and contentious questions presented in this matter-and did so on a contingent basis. *See* discussion *supra* Sections III.A.1, III.A.6. Multipliers are particularly appropriate in cases, like this one, where the legal issues are uncertain, and thus the risk is high. *Rodriguez v. Marshalls of CA, LLC*, No. ED CV 18-1716-MWF (SPx), 2020 WL 7753300, at *10 (C.D. Cal. July 31, 2020) (granting 1.5 multiplier where risks to the litigation made a favorable outcome uncertain); *Roberts v. Marshalls of CA, LLC*, No. 13-CV-04731-MEJ, 2018 WL 510286, at *16 (N.D. Cal. Jan. 23, 2018) (granting multiplier of 1.65); *In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5158730, at *10 (N.D. Cal. Sept. 2, 2015) (granting Class Counsel a 2.2 multiplier where "the issues presented in the case were sufficiently complex and novel"); *Parkinson v. Freedom Fid. Mgmt., Inc.*, No. 10-CV-0345-TOR, 2012 WL 5194955, at *5 (E.D. Wash. Oct. 19, 2012) (granting 1.1 multiplier where success on claims was uncertain).

Class Counsel's significant efforts led to an early resolution of the case that saved all parties and the Court from expending resources on further protracted litigation. *See, e.g.*, *Franchek v. Workrite Ergonomics, LLC*, No. 16-cv-02789-JSW (DMR), 2022 WL 3137928, at *6 (N.D. Cal. May 9, 2022), *report and recommendation adopted*, No. 16-cv-02789-JSW, 2022 WL 3137918 (N.D. Cal. May 31, 2022) (determining that reasonableness of fee petition was supported by the fact that "counsel's significant efforts led to a meaningful early resolution of the case and saved all parties and the court from expending resources on protracted litigation"). For these reasons and those detailed above, the *Kerr* reasonableness factors weigh in favor of an upward adjustment of the lodestar in this case for purposes of a lodestar cross-check.

### i. The reputation, ability, and efficiency of Class Counsel supports the requested fees.

In addition to the preceding analysis, the experience, reputation, and ability of Class Counsel weigh

in favor of an upward adjustment of the lodestar. The firms requesting attorneys' fees in this matter are among the most well-respected class action litigation firms in the country. *See, e.g.*, *In re Capital One Consumer Data Sec. Breach Litig.*, 2022 WL 17176495 at *2 (E.D. Va., November 17, 2022) (In approving $190 million settlement secured by Stueve Siegel Hanson, Judge Anthony Trenga remarked: "Class Counsel were carefully selected for their skill and experience in a process that featured more than three dozen applications for class leadership. The performance of counsel and the strong result for class members demonstrates Class Counsel's skill and efficiency and validates the Court's selection.") (cleaned up); *Kumar v. Salov N. Am. Corp.*, No. 14-CV-2411-YGR, 2017 WL 2902898, at *7 (N.D. Cal. July 7, 2017), *aff'd*, 737 F. App'x 341 (9th Cir. 2018) ("The Court also finds that [Tycko & Zavareei] represented their clients with skill and diligence and obtained an excellent result for the class, taking into account the possible outcomes at, and risks of proceeding to, trial."); *Farrell v. Bank of Am., N.A.*, 327 F.R.D. 422, 431 (S.D. Cal. 2018), aff'd sub nom. *Farrell v. Bank of Am. Corp., N.A.*, 827 F. App'x 628 (9th Cir. 2020) ("As explained above under the settlement fairness analysis, the result obtained here by [Tycko & Zavareei, among others] is remarkable. . . . Class Counsel achieved this result through tenacity and great skill."); *In re Home Depot, Inc., Customer Data Sec. Breach Litig.*, 2016 WL 11299474, at *1 (N.D. Ga. Aug. 23, 2016) (Barrett Vahle served as co-lead counsel in MDL resulting in settlement that presiding judge referred to as an "exceptional result" and was at the time "the most comprehensive settlement achieved in large-scale data breach litigation.").

Ms. Soneji is a partner in the California office of Tycko & Zavareei LLP, where she serves as the head of the firm's Privacy and Data Breach Group. As explained further in Class Counsel's declaration, Ms. Soneji has tremendous experience leading complex class actions and multidistrict litigation, including in the areas of data privacy. *See* Class Counsel Dec. ¶ 43. *See e.g.*, *In re T-Mobile Customer Data Security Breach Litig.*, No. 4:21-MD-03019-BCW (W.D. Mo.) (service on Executive Committee in case involving claims resulting from a data breach that compromised the personal data of tens of millions of consumers and which resulted in a settlement of $350 million); *In re ICCU Data Breach Litig.*, No. CV03-20-00831 (District Court of the Sixth Judicial District of the State of Idaho) (data breach class action in which she secured a $1.55 million common fund that resulted in hundreds of dollars awarded to each participating settlement class member); *In re Juul Labs, Inc., Mkg., Sales Pracs., and Prods. Liab. Litig.*, No. 19-md-02913-WHO (N.D. Cal.) (multidistrict

litigation in which she helped secure a $300 million common fund to resolve claims against JLI and Altria for misleading marketing of their Juul vaping device).

Mr. Vahle is a partner at Stueve Siegel Hanson, where he devotes the majority of his practice to consumer class litigation with a specific focus on data breach and data privacy violations. As noted in the Class Counsel Declaration, Mr. Vahle is a well-respected and experienced data privacy and cybersecurity litigator. *See* Class Counsel Dec. ¶ 44; *See e.g., In re Capital One Consumer Data Breach Litig.*, No. 1:19-md-2915 (AJT/JFA) (E.D. Va.) (data breach case which resulted in a $190 million settlement and received final approval in September 2022); *Abubaker v. Dominion Dental USA, Inc.*, No. 1:19-cv-01050-LMB-MSN (E.D. Va.) (appointed class counsel in data breach class action which resulted in a multi-million-dollar settlement and received final approval in November 2021); *In re The Home Depot, Inc., Consumer Data Sec. Data Breach Litig.*, No. 1:14-md-02583-TWT (N.D. Ga.) (appointed co-lead class counsel in data breach MDL).

## ii. The requested multiplier is reasonable when compared to other similar litigation.

The modest 1.17 multiplier requested here is also reasonable in light of this Court's and the Ninth Circuit's general approval of similar—if not higher—multipliers. *See Vizcaino*, 290 F.3d at 1051 n.6 (surveying class action fee awards, and noting that 83% applied multiplier of 1.0-4.0, and 54% applied multiplier of 1.5-3.0); *In re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d 617, 633 (N.D. Cal. 2021), *aff'd*, No. 21-15553, 2022 WL 822923 (9th Cir. Mar. 17, 2022) (determining that a multiplier of 4.71 was warranted in that case); *In re Apple Inc. Device Performance Litig.*, No. 5:18-md-02827-EJD, 2023 WL 2090981, at *18 (N.D. Cal. Feb. 17, 2023) (approving lodestar multiplier of 2.232 in a dispute regarding performance-diminishing software updates); *Perkins v. Linkedin Corp.*, No. 13-CV-04303-LHK, 2016 WL 613255, at *16 (N.D. Cal. Feb. 16, 2016) (holding that "[t]he reported lodestar multiplier—1.45—is within the range of reasonableness"); *Noll v. eBay, Inc.*, 309 F.R.D. 593, 610 (N.D. Cal. 2015) (listing multipliers as high as 5.2 among "the range of acceptable lodestar multipliers"). The fact that the multiplier requested here is well within range of multipliers in other cases weighs heavily in favor of the requested fees.

**IV.   THE COURT SHOULD APPROVE REIMBURSEMENT OF CLASS COUNSEL'S REASONABLE LITIGATION EXPENSES**

Class Counsel additionally requests that the Court grant its application for reimbursement of $322,464.95 in expenses incurred in connection with the prosecution of this litigation. These expenses are set forth by firm and by category of expense in the attached Declaration of Class Counsel, ¶¶ 58-59 & Attachment C thereto.

These expenses, which include expert costs, filing fees, discovery costs, court and deposition transcripts, travel to depositions, and computer research expenses, are reasonable and reimbursable. *See In re Nat'l Collegiate Athletic Assoc.*, 2017 WL 6040065, at *11 (finding reasonable plaintiffs' counsel's request to be reimbursed for experts, filing fees, travel expenses, costs of court and depositions transcripts, and computer research expenses); *Vedachalam v. Tata Consultancy Servs., Ltd*, No. C 06-0963 CW, 2013 WL 3941319, at *3-4 (N.D Cal. July 18, 2013) ("Plaintiffs' Counsel have incurred unreimbursed costs prosecuting this case on behalf of the Class. . . . Plaintiffs' Counsel put forward these out-of-pocket costs without assurance that they would be repaid. These litigation expenses were necessary to secure the resolution of this litigation."); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1048 (N.D. Cal. 2008) ("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters"). The Court should approve reimbursement of these reasonable costs.

**V.   THE COURT SHOULD APPROVE REASONABLE SERVICE AWARDS FOR THE SETTLEMENT CLASS REPRESENTATIVES**

Class Counsel respectfully requests that the Court authorize service awards of $5,000 each for the five Settlement Class Representatives. The Ninth Circuit has "repeatedly held that reasonable incentive awards to class representatives are permitted." *In re Apple Inc. Device Performance Litig.*, 50 F.4th at 785 (quotation marks and citation omitted). Indeed, service awards are "fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009). Service awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Id.* at 958-59.

Here, the Class Representatives were essential to securing relief for the Class. *See* Class Counsel Decl. ¶¶ 34-39. They undertook personal risk to do so, subjecting themselves to aggressive discovery by the company they accused of violating their privacy, and by producing documents containing personal information and sitting for adversarial depositions. In addition, the Class Representatives communicated and worked with Class Counsel; presented their individual experiences with Facebook to demonstrate common claims; searched for and provided documentation to support their claims; reviewed pleadings; produced hundreds or thousands of documents; prepared for and sat for lengthy depositions; consulted with Class Counsel regarding potential settlement remedies; and carefully reviewed the Settlement Agreement. *See id.*. The Class Representatives' commitment to the Class's interests and desire to hold Meta accountable to the entire Class was essential to the successful and timely prosecution of this class action and warrants the reasonable service awards requested here.

Service awards of $5,000 are routinely approved in this Circuit where class representatives have participated in ways comparable to the Class Representatives' activities here. *See Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1024 (E.D. Cal. 2019) ("In the Ninth Circuit, courts have found that $5,000 is a presumptively reasonable service award")*; In re Intuit Data Litig.*, No. 15-CV-1778-EJD-SVK, 2019 WL 2166236, at *2 (N.D. Cal. May 15, 2019) (awarding class plaintiffs $5,000 each to compensate them for their commitments and efforts on behalf of other class members); *In re Lenovo Adware Litig.*, No. 15-md-02624-HSG, 2019 WL 1791420, at *10 (N.D. Cal. Apr. 24, 2019) (finding a $5,000 service award reasonable).

For their commitment and service to the Class and its claims, these Class Representatives should be awarded $5,000 each.

## VI.    CONCLUSION

For the foregoing reasons, Class Counsel respectfully requests that the Court approve the requested fee of 25% percent of the Common Fund, or $9,375,000, reimbursement of litigation expenses in the amount of $322,464.95 (subject to being updated before the final approval hearing), and service awards of $5,000 to each of the five Class Representatives.

Dated: August 31, 2023                                    Respectfully Submitted,

_/s/ Sabita J. Soneji_
SABITA J. SONEJI (SBN 224262)
ssoneji@tzlegal.com
**TYCKO & ZAVAREEI LLP**
The Tower Building
1970 Broadway, Suite 1070
Oakland, California 94612
Telephone: (510) 254-6808

BARRETT J. VAHLE (_pro hac vice_)
vahle@stuevesiegel.com
JILLIAN R. DENT (_pro hac vice_)
dent@stuevesiegel.com
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: (816) 714-7100

_Settlement Class Counsel_

FRANKLIN D. AZAR (_pro hac vice_)
azarf@fdazar.com
PAUL R. WOOD (_pro hac vice_)
woodp@fdazar.com
MICHAEL D. MURPHY (_pro hac vice_)
murphym@fdazar.com
**FRANKLIN D. AZAR &
ASSOCIATES, P.C.**
14426 East Evans Avenue
Aurora, CO 80014
Telephone: (303) 757-3300

IVY T. NGO (SBN 249860)
ingo@fnf.law
**FREEDMAN NORMAND
FRIEDLAND LLP**
1 SE 3rd Avenue, Suite 1240
Miami, FL 33131
Telephone: (646) 876-3568

_Counsel for Plaintiffs and the Class_

MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS
Case No. 3:18-cv-6793-JD