1  SABITA J. SONEJI (SBN 224262)
   ssoneji@tzlegal.com
2  **TYCKO & ZAVAREEI LLP**
   The Tower Building
3  1970 Broadway, Suite 1070
   Oakland, California 94612
4  Telephone: (510) 254-6808

5  BARRETT J. VAHLE (*pro hac vice*)
   vahle@stuevesiegel.com
6  **STUEVE SIEGEL HANSON LLP**
   460 Nichols Road, Suite 200
7  Kansas City, Missouri 64112
   Telephone: (816) 714-7100

8
   *Settlement Class Counsel*
9
   *Additional Counsel on Signature Page*
10

11              **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
12                  **SAN FRANCISCO DIVISION**

13
   BRENDAN LUNDY, MYRIAH WATKINS,          Case No. 3:18-cv-6793-JD
14 ELIZABETH CHILDERS, MICHELLE
   AGNITTI, AND ROBIN HODGE,               **PLAINTIFFS' NOTICE OF**
15                                         **MOTION, MOTION FOR FINAL**
            Plaintiffs,                    **APPROVAL OF CLASS ACTION**
16                                         **SETTLEMENT, AND**
                                           **MEMORANDUM OF POINTS AND**
17         v.                              **AUTHORITIES IN SUPPORT**

18 META PLATFORMS, INC.,                   **Date:** October 19, 2023
                                           **Time:** 10 a.m.
19         Defendant.                       **Place:** Courtroom 11, San Francisco, 19th
                                                   Floor
20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................................1

II.   LITIGATION AND SETTLEMENT BACKGROUND .........................................................2

III.  SUMMARY OF THE SETTLEMENT BENEFITS ..............................................................6

IV.   CLASS NOTICE EFFECTIVELY REACHED THE CLASS ...............................................7

V.    LEGAL STANDARD FOR FINAL APPROVAL ................................................................9

VI.   THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE. ..................................10

      A.    The Circumstances of the Settlement Show Its Reasonableness. .......................10

            1.    The Settlement was negotiated at arm's length. ......................................10

            2.    The Settlement followed extensive and contentious discovery. ...............10

            3.    Experienced Class Counsel negotiated the Settlement. ...........................11

      B.    The Settlement is Adequate Under *Briseno*. ...................................................11

      C.    Additional Criteria Favor Final Approval of the Settlement. ...............................12

            1.    The Settlement provides substantial relief to the Class. ..........................12

            2.    The Settlement eliminates the risk of zero or significantly delayed recovery. ......12

            3.    The Settlement compares favorably to potential relief. ...........................13

            4.    The Settlement enjoys overwhelming Class support. ..............................13

            5.    The Settlement treats Class Members equitably relative to each other. ................13

      D.    Any *Cy Pres* Award Will Benefit the Class. ...................................................14

VII.  THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES. .........................14

VIII. CONCLUSION ..............................................................................................................15

# TABLE OF AUTHORITIES

**CASES**

*Adams v. Inter-Con Sec. Sys. Inc.*,
  No. C-06-5428 MHP, 2007 WL 3225466 (N.D. Cal. Oct. 30, 2007)........................................10

*Banks v. Nissan N. Am., Inc.*,
  2015 WL 7710297 (N.D. Cal. Nov. 30, 2015) ............................................................... 10, 11

*Briseno v. Henderson*,
  998 F.3d 1014 (9th Cir. 2021) ....................................................................................... 1, 9, 11

*Churchill Vill., L.L.C. v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004).....................................................................................................9

*Cummings v. Connell*,
  402 F.3d 936 (9th Cir. 2005).....................................................................................................7

*Dennis v. Kellogg Co.*,
  2013 WL 6055326 (S.D. Cal. Nov. 14, 2013)..........................................................................13

*Grimm v. Am. Eagle Airlines, Inc.*,
  2014 WL 12746376 (C.D. Cal. Sept. 24, 2014)........................................................................13

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ............................................................................................ 9, 12

*In re Bluetooth Headset Products Liability Litig.*,
  654 F.3d 935 (9th Cir. 2011) ..........................................................................................9, 10, 11

*In re Facebook Biometric Info. Privacy Litig.*,
  522 F.Supp.3d 617 (N.D. Cal. 2021) .......................................................................................13

*In re Vizio, Inc., Consumer Priv. Litig.*,
  2019 WL 12966638 (C.D. Cal. July 31, 2019) ..........................................................................7

*In re Vizio, Inc., Consumer Priv. Litig.*,
  2019 WL 12966639 (C.D. Cal. Jan. 4, 2019) ............................................................................6

*Lane v. Facebook, Inc.*,
  696 F.3d 811 (9th Cir. 2012) ...................................................................................................12

*Lowery v. Joffe*,
  214 L. Ed. 2d 25, 143 S. Ct. 107 (2022) ..................................................................................14

*Mission Beverage Co. v. Pabst Brewing Co.*,
  15 Cal. App. 5th 686 (2017)......................................................................................................7

*Nachshin v. AOL, LLC*,
  663 F.3d 1034 (9th Cir. 2011) .................................................................................................14

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ..................................................................................................10

**RULES**

Fed. R. Civ. P. 23 ...........................................................................................................2, 9, 13, 14

Fed. R. Civ. P. 12(b)(6) ................................................................................................................4

Fed. R. Civ. P. 30(b)(6) ................................................................................................................5

Fed. R. Evidence 502(d) ...............................................................................................................3

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:18-cv-6793-JD

**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL**

**OF CLASS ACTION SETTLEMENT**

**PLEASE TAKE NOTICE** that on **Thursday, October 19, 2023, at 10:00 a.m.**, in Courtroom 11, before the Honorable James Donato, Plaintiffs Brendan Lundy, Elizabeth Childers, Myriah Watkins, Michelle Agnitti, and Robin Hodge ("Plaintiffs" or "Settlement Class Representatives") respectfully move this Court for an Order granting final approval of the Parties' Amended Settlement Agreement dated February 15, 2023, the terms of which are more specifically described in the Memorandum and Points of Authorities filed in support of this Motion.[1]

Plaintiffs request that the Court enter the proposed Final Approval Order and:

1.    grant this Motion for final approval;

2.    finally approve the Amended Settlement Agreement;

3.    affirm the certification of the Settlement Class for settlement purposes only;

4.    affirm the appointment of Mr. Lundy, Ms. Childers, Ms. Watkins, Ms. Agnitti, and Ms. Hodge as Settlement Class Representatives;

5.    affirm the appointment of Sabita J. Soneji of Tycko & Zavareei LLP and Barrett J. Vahle of Stueve Siegel Hanson LLP as Class Counsel;

6.    retain jurisdiction over this matter to resolve any issues related to interpretation, administration, implementation, effectuation, and enforcement of the Settlement; and

7.    enter Final Judgment dismissing this action with prejudice.

This Motion is based upon this Notice of Motion; the accompanying Memorandum of Points and Authorities; the Declaration of Class Counsel (Ex. 1); the Declaration of Steven Weisbrot of Angeion (Ex. 2) ("Weisbrot Decl."), the Amended Settlement Agreement and the exhibits thereto ("SA", Dkt. No. 188-1); the pleadings and papers on file in this Action; and any other such evidence and argument as the Court may consider.

---

[1] All capitalized terms, unless otherwise defined herein, have the same meaning as set forth in the Amended Settlement Agreement.

Defendant Meta Platforms, Inc., does not oppose the relief requested in this motion.

Plaintiffs further note the following per Procedural Guidance for Class Action Settlements ("Guidelines"), Final Approval Rule 1, Class Members' Response, for the settlement class preliminarily certified in the Court's April 26, 2023 Order Granting Preliminary Approval of Class Action Settlement, (Dkt. No. 199):

    a.  The number of claim packets requested and mailed was 7.

    b.  The number of members of the Settlement Class who submitted facially valid claims by the August 11, 2023 deadline was 907,588 out of the estimated 70 million members of the Settlement Class. This amounts to an estimated claims rate of 1.3 percent for the Settlement Class.

    c.  The number of members of the Settlement Class who opted out by the August 11, 2023 deadline was 106 out of an estimated 70 million class members. This amounts to an opt-out rate of 0.00014% of the Settlement Class.

    d.  As of the date of this Motion, neither Class Counsel nor the Settlement Administrator are aware of any members of the Settlement Class who objected to the Amended Settlement Agreement in writing, pursuant to the process for such objections as set forth in ¶¶ 108-110 of the Settlement Agreement or otherwise.

*See* Weisbrot Decl. ¶¶ 29, 36-38.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiffs Lundy, Childers, Watkins, Agnitti, and Hodge (the "Settlement Class Representatives"), individually and on behalf of the proposed Settlement Class, seek final approval of an amended proposed Settlement of claims against Defendant Meta Platforms, Inc. ("Meta" or "Defendant") concerning Meta's Facebook application ("Facebook").[2] The Amended Settlement Agreement ("Settlement Agreement" or "SA") resolves the historic claims of the Class (which cover the time period of 2015 through early 2018) and provides meaningful relief to Class Members.

The Settlement Agreement creates a substantial $37,500,000 Common Fund that will resolve the claims of Plaintiffs and the Class Members who turned off Location Services on their devices when accessing Facebook but whose location was nonetheless inferred by Meta using the Class Members' IP addresses, which Plaintiffs alleged was in contravention of Meta's own policies in effect during the Class Period. The Settlement will distribute the Net Settlement Fund to Class Members on a *pro rata* basis based on the number of claims submitted, and will also cover administration costs, reasonable attorney's fees and expenses, and service awards. SA ¶¶ 61, 86-88. For the 907,588 claimants who submitted facially valid claims, that distribution will be substantial, about $29 each. The claims rate is 1.3 percent, consistent with multiple recent consumer privacy cases of less than 1 to 2%. The claims rate and ultimate payout compare favorably with comparable settlements. *See* Appx. A to Dkt. 188 (chart of comparator settlements).

Notably, the Settlement avoids any of the pitfalls flagged by the Ninth Circuit in *Briseno v. Henderson*, 998 F.3d 1014 (9th Cir. 2021). Here, the Parties did not discuss any award of attorneys' fees during their arm's-length negotiations with a mediator, and there is no "clear sailing" provision that prevents Defendant from challenging the fee award. The Settlement Agreement also maximizes redemption by paying Class Members electronically by default and provides that no portion of the settlement fund will revert to Defendant. This Settlement is a superb result for the Class, considering the hotly contested legal theories that

---

[2] Meta was formerly known as Facebook, Inc. For the sake of clarity, this motion refers to the company as "Meta"—regardless of whether the company was named Facebook or Meta at the time—and the social media application as "Facebook."

made continued litigation risky, with the chance of no recovery at all.

On April 26, 2023, the Court preliminarily approved the Settlement after finding that the Settlement Agreement "was negotiated at arms' length" and was "fair, reasonable, and adequate." Dkt. No. 199. Since then, the Parties have provided notice to the Class in compliance with the terms of the Settlement Agreement and the Court's Preliminary Approval Order. The response rate confirms that the Class Notice effectively provided the best notice practicable as required by due process. Indeed, there were more than 3 million unique visitors to the settlement website, and 58,242 of those visitors engaged with Angeion's informational chatbot. Angeion also handled 930 telephone calls from potential claimants. Weisbrot Decl. ¶¶ 26, 28-30.

After this robust social media notice campaign, the response to the Settlement has been completely favorable. Only 106 putative class members excluded themselves from the Settlement Class. *Id.* ¶ 38. As of the date of this filing, there are also no objections to the Settlement. *Id.*

For all of these reasons and Plaintiffs submit that the Settlement is fair, adequate, and reasonable pursuant to Fed. R. Civ. P. 23(e) and should be finally approved. Therefore, Plaintiffs respectfully request that this Court: (1) grant this Motion; (2) finally approve the proposed Settlement; (3) affirm the certification of the Settlement Class for settlement purposes only; (4) affirm the appointment of Lundy, Childers, Watkins, Agnitti, and Hodge as Settlement Class Representatives; (5) affirm the appointment of Sabita J. Soneji of Tycko & Zavareei LLP and Barrett J. Vahle of Stueve Siegel LLP as Class Counsel; (6) retain jurisdiction over this matter to resolve issues related to interpretation, administration, implementation, effectuation, and enforcement of the Settlement; and (7) enter Final Judgment dismissing this action.

## II.        LITIGATION AND SETTLEMENT BACKGROUND

The excellent result of this Settlement is due to over four years of thorough and strategic work by Plaintiffs and Class Counsel, which included the consolidation of two class actions, briefing four motions to dismiss between the two actions (ultimately resulting in denial of the motion to dismiss the operative complaint), and hard-fought discovery resulting in the production and review of over 100,000 pages of internal Meta documents. That history is detailed in the Declaration of Class Counsel. Counsel Decl. ¶¶ 5-21, 44.

In November 2018, Plaintiffs Brendan Lundy and Myriah Watkins initiated a class action lawsuit in

this Court asserting privacy, consumer protection, and fraud claims based on Meta's practice of collecting and inferring location data from their IP address despite their choice to turn off Location Services when using the Facebook app on their phones. *See* Dkt. No. 1, Class Action Complaint (filed Nov. 8, 2018). After Meta moved to dismiss in March 2019, (Dkt. No. 48), Plaintiffs amended their Complaint on September 27, 2019, specifically adding a breach of contract claim centered on the contractual representation in Meta's Effective Privacy Policy that it would not collect location information "depending on the permissions you've granted." Dkt. No. 80 ("FAC"); Counsel Decl. ¶ 6-16.

Concurrently, Class Counsel were litigating a sister case entitled *Heeger v. Facebook, Inc.*, Case No. 3:18-cv-06399, Dkt. No. 1 (filed first on October 19, 2018), which alleged privacy claims based on the improper collection and use of IP addresses. Meta moved to dismiss *Heeger* in January 2019, (*Heeger* Dkt. No. 26), and at an April 18, 2019 hearing, the Court ordered discovery to proceed while taking the motion under advisement (*Heeger* Dkt. No. 41). Throughout the Spring and Summer of 2019, the Parties served initial document requests and interrogatories, and negotiated a Protective Order, Rule 502(d) Order, and ESI Protocol—which included submitting a joint letter detailing the contested issues to the Court. *Heeger* Dkt. Nos. 48 (Rule 502(d) Order); 49 (ESI Protocol); 50 (Joint Discovery Letter Regarding Protective Order); 51 (Order on Protective Order); 55 (Stipulated Proposed Protective Order). During the Fall of 2019, the Parties exchanged multiple meet-and-confer letters and conducted numerous calls to negotiate discovery, culminating in discovery letters filed in front of the Court. Dkt. Nos. 65, 68, 69; Counsel Decl. ¶ 7-9.

In October 2019, the *Heeger* and *Lundy* actions were related in front of this Court. *Heeger* Dkt. No. 62. In November 2019, Meta moved to dismiss *Lundy*'s FAC. Dkt. No. 82. On December 27, 2019, the Court granted in part and denied in part Meta's motion to dismiss the *Heeger* Complaint but did not rule in *Lundy*. *Heeger* Dkt. No. 70. Plaintiff Heeger then filed a First Amended Complaint on February 10, 2020, adding three named plaintiffs and amending the privacy-related allegations. *Heeger* Dkt. No. 74. On March 6, 2020, Meta moved to dismiss the *Heeger* FAC, and briefing concluded in April 2020. *Heeger* Dkt. Nos. 76, 80, 81, 82, 83; Counsel Decl. ¶ 10-11.

While Meta's motions to dismiss *Lundy* and *Heeger* were pending, the Parties continued to conduct discovery. Given the relation of the cases, discovery was coordinated. Throughout the summer and fall of

2020, the Parties conferred on numerous occasions, served additional discovery, exchanged multiple rounds of discovery correspondence, conducted often contentious meet-and-confer sessions, and worked to negotiate search terms and custodians. Counsel Decl. ¶ 12-13.

On December 24, 2020, the Court dismissed *Heeger* in its entirety for lack of Article III standing and granted in part and denied in part Meta's motion to dismiss *Lundy*. Dkt. No. 130 at 9, 15. The Court found that Article III standing existed in *Lundy* but dismissed all claims under Rule 12(b)(6) with leave to amend. *Id.* at 9-15. On January 21, 2021, *Heeger* Plaintiff Childers joined the *Lundy* Plaintiffs to file a Second Amended Class Action Complaint ("SAC"), adding putative class representatives Hodge and Agnitti, omitting the previously pled privacy claims, and amending the allegations to focus on contract, fraud, and unjust enrichment claims. Dkt. No. 132, SAC. Specifically, the SAC, which is the operative complaint, alleges that Meta improperly collected Plaintiffs' IP addresses and used those IP addresses to infer Plaintiffs' location in contravention of Meta's own policies in effect during the Class Period, thus breaching its contract with Plaintiffs and misleading them as to whether Meta collected their location information. Counsel Dec. ¶ 14. SAC ¶¶ 1-13, 56-124. The SAC further alleged that Plaintiffs each had turned off Location Services on their mobile devices for the Facebook app because they did not want to share their location with Meta, but Meta nonetheless inferred their location using their IP addresses when they accessed Facebook and used the information to target ads, entitling Plaintiffs and the Class to disgorgement of the associated profits, or, in the alternative, nominal damages. SAC ¶¶ 16-45.

Meta moved to dismiss the SAC and the Parties fully briefed that motion. Dkt. Nos. 135, 137, 141. In its September 30, 2021 Order (Dkt. No. 145), the Court largely denied Meta's motion to dismiss, finding Plaintiffs had sufficiently stated claims for contract, fraud, and unjust enrichment. Dkt. No. 145 at 3. The Court stated: "Facebook says that 'plaintiffs' breach of contract claim also fails because plaintiffs cannot establish any breach. Facebook's practices are entirely consistent with its disclosed policies.' The point is not well taken because the Court has already rejected its misrepresentation underpinnings." *Id.* The Court also found Plaintiffs could seek nominal damages and disgorgement. *Id.*

The Parties then conducted extensive discovery in a short timeframe pursuant to the Court's scheduling order. Altogether, Plaintiffs served Meta with six sets of requests for production (97 requests

total); three sets of interrogatories (23 questions total); and one set of requests for admission (73 requests). Meta served two sets of requests for production (28 requests total); two sets of interrogatories (9 questions for each named plaintiff); and three sets of demands for inspection. The Parties met and conferred extensively, including through dozens of telephone and video conferences. Plaintiffs filed two discovery letters with the Court during this time regarding disputed discovery issues. Dkt. Nos. 159, 163. Given Meta's interrogatory responses indicating it could not identify the class members, Plaintiffs additionally served document subpoenas on third-parties Apple and Google to determine whether the phone operating system providers could identify whether users had Location Services on or off on their devices. Apple and Google responded that they could not identify the class members. Counsel Decl. ¶¶ 17-18.

During discovery, which spanned over three years, Plaintiffs produced 3,351 pages of documents, and, pursuant to negotiated search terms and custodians, Meta produced 106,677 pages of documents. Plaintiffs retained two testifying experts in anticipation of class certification, which was due shortly after the close of fact discovery in July 2022. Meta took the depositions of four named plaintiffs in May 2022, and noticed the deposition of the other. Plaintiffs issued a Rule 30(b)(6) deposition notice to Meta and requested the depositions of five initial fact witnesses. On June 2, 2022, Plaintiffs took the deposition of a key witness (Scott Bratsman, head of the IP address location project for Facebook) as to his designated Rule 30(b)(6) topics and were scheduled to take the remaining depositions during the month of June and the first two weeks of July. Counsel Decl. ¶¶ 19-21.

After fact discovery had nearly been completed, and on the eve of the deadline for Plaintiffs to file their Motion for Class Certification, the Parties with the assistance of mediator Randall Wulff reached a tentative settlement including a $37.5 million common fund. *Id.* ¶¶ 22-25. On December 15, 2022, the Court denied the motion for preliminary approval without prejudice. *Lundy* Dkt. No. 182. Thereafter, the Parties renegotiated at arm's length the Amended Settlement Agreement over the course of two months. Specifically, and in response to the Court's comments at the first preliminary approval hearing, the Parties negotiated an alternative *cy pres* mechanism that could be approved if the Court determined that the number of claims for settlement payments, and the resulting dollar amount of individual settlement payments, rendered processing and delivery of those payments administratively infeasible. Counsel Dec. ¶ 27. The Parties proposed potential

*cy pres* recipients and worked with those proposed recipients to submit information regarding their qualifications to receive any potential *cy pres* funds from this settlement. *Lundy* Dkt. No. 190. After a hearing, the Court preliminarily approved the Amended Settlement Agreement and directed the issuance of class notice on April 26, 2023. *Lundy* Dkt. No. 199.

### III.        SUMMARY OF THE SETTLEMENT BENEFITS

The Settlement Agreement provides for a Common Fund of $37,500,000 to cover (1) monetary payments to Class Members on a *pro rata* basis or, in the alternative, payment to *Cy Pres* Recipients; (2) all Administrative Costs; and (3) any Fee and Expense Award or Service Awards approved by the Court. *See* SA ¶¶ 61-70; Guideline 1(c). Although Class Counsel believe the *pro rata* cash distributions of about $29 per claimant are an excellent result and feasible to efficiently distribute to claimants, should the Court determine that the distribution is not economically or administratively feasible, the entire Net Settlement Fund may be distributed to approved *Cy Pres* Recipients. SA ¶ 64. The Ninth Circuit has recognized that *cy pres* only settlements may be appropriate because they provide an indirect benefit to class members. *Joff v. Google*, 21 F.4th 1102, 1116 (9th Cir. 2021). The proposed *Cy Pres* Recipients are advocates for consumer protection and online privacy goals aligned with the Class Members' interests at stake in this case; are independent from the parties, the parties' counsel, and the Court; will use the funds appropriately; and have set forth their previous court approvals as *cy pres* beneficiaries. *See* Dkt. No. 190; *see also In re Vizio, Inc., Consumer Priv. Litig.*, 2019 WL 12966639, at *12 (C.D. Cal. Jan. 4, 2019); Guideline 8; Counsel Decl. ¶¶ 40-43.

Although the estimated class size is large, $37.5 million is a substantial settlement that compares favorably to relief the class might have gotten at trial. Although the Court found Plaintiffs adequately pled both disgorgement and nominal damages, (Dkt. No. 145 at 2-3), discovery revealed that Meta did not track revenues or profits from advertising associated with users who had Location Services turned off, nor did it track revenue or profits associated solely with location given that each advertisement is targeted based on numerous factors and demographic information. Counsel Decl. ¶ 45; *see also Oracle Am. v. Google, Inc.*, No C 10-03561, 2016 WL 2342365, at *5 (N.D. Cal. May 3, 2016). If the case had gone to trial, there was a significant risk of a successful *Daubert* challenge to Plaintiffs' disgorgement theory and Plaintiffs may have been limited to nominal damages, which are generally limited to $1 per class member in this Circuit. *See*

*Mission Beverage Co. v. Pabst Brewing Co.*, 15 Cal. App. 5th 686, 710-711 (2017) ("A plaintiff suing for breach of contract is entitled to recover . . . nominal damages."); *Cummings v. Connell*, 402 F.3d 936, 944-45 (9th Cir. 2005), *as amended*, 2005 WL 1154321 (9th Cir. May 17, 2005) (holding that "every member is entitled to nominal damages, just as if each one had brought his or her own lawsuit" and that damages would be limited to $1 per class member). If the class consists of 70 million users, which is a reasonable estimate, the settlement amount represents 53% of what Plaintiffs could have recovered under a nominal damages theory based on a judgment of $1 per class member. Counsel Decl. ¶ 31; Guideline 1(c). Plaintiffs believe this discount accurately reflects the risks of going forward with the litigation and is in line with similar discounts approved in other settlements. Counsel Decl. ¶ 42; *In re Vizio, Inc. Consumer Priv. Litig.*, 2019 WL 12966638, at *6 (C.D. Cal. July 31, 2019) (approving monetary settlement where recovery represented 22% of the potential liability and commenting that "this amount and percentage of recovery is consistent with settlements approved in other consumer and user privacy class actions"), *judgment entered sub nom.* 2019 WL 3818854 (C.D. Cal. Aug. 14, 2019).

After payment of costs of administration and notice and any fees, expenses, and service awards authorized by the Court, the Net Settlement Fund will be distributed to Class Members *pro rata*. SA ¶ 63; Guideline 1(e). In the alternative, if the Court determines the proposed *pro-rata* distribution to Class Members is not economically or administratively feasible, the full amount of the Net Settlement Fund will be distributed to approved *Cy Pres* Recipients. No portion of the Settlement Fund will revert to Meta. Guideline 1(g).

## IV.    CLASS NOTICE EFFECTIVELY REACHED THE CLASS

After preliminary approval, the Parties provided Notice of the Settlement in conformance with this Court's Preliminary Approval Order. The Court-approved Notice informed the Class about the proposed Settlement; their rights as to the $37,500,000 Settlement Amount; their rights to object or opt-out of the Settlement; and the prospective request for attorneys' fees and expenses and service awards. Weisbrot Decl. at Exs. H-J. The Class Notice was easily understandable and included: contact information for Class Counsel; the address for the Settlement Website; instructions on how to access the case docket via PACER or in person at the Court's locations; a note advising Class Members to check the Settlement Website for updates; and the date and time of the final approval hearing. *Id.*; SA Ex. D; Guideline 3(a)-(e).

Beginning on May 11, 2023, Angeion provided the Court-approved Notice Plan to the Class as follows: (1) programmatic display advertising resulting in 138,216,017 impressions of banner ads with 86,116 click throughs to the Settlement Website; 2) a social media campaign via Facebook and Instagram which resulted in 62,101,254 impressions served and 41,613 click throughs to the Settlement Website; 3) a paid search campaign on Google that generated 267,323 impressions and 63,345 click throughs; 4) sponsored class action website postings that resulted in 57,021 click throughs to the Settlement Website; and 5) publication notice in the June 12, 2023 national edition of *People* that ran in both the print and digital edition. Weisbrot Decl. ¶¶ 7-24. The media notice program exceeded Angeion's expectations by delivering an approximate 81.23% reach with an average frequency of 3.45 times. *Id.* ¶ 7.

Additionally, during July 2023, Angeion ran two supplemental digital banner ad campaigns totaling 21 days and resulting in an additional 7,825,790 impressions served and 7,942 additional click throughs to the Settlement Website. *Id.* ¶¶ 11-12. Combined, the programmatic display advertising and social media notice efforts resulted in 210,499,034 impressions served to the Target Audience, exceeding Angeion's original estimate of 172 million impressions. *Id.* ¶ 17.

The Administrator also established the Settlement Website. *Id.* ¶ 25; Guideline 3(b). The Settlement Website contained: (1) the Long Form Notice in downloadable PDF format in both English and Spanish; (2) the Long Form Notice in HTML format with a clickable table of contents, described as answers to frequently asked questions; (3) a contact information page with contact information for the Administrator; (4) the Settlement Agreement; (5) the signed Preliminary Approval Order and publicly filed motion papers and declarations in support thereof; (6) the SAC; and (7) when available, the Fee and Service Award Application, and this motion for entry of the Final Approval Order. *Id.* ¶¶ 25-26. Additionally, the Administrator mailed the Class Notice to any Class Member who requested a copy. *Id.* ¶ 29. The Administrator also established a 24-hour toll-free telephone line, with answers to frequently asked questions about the Settlement, which was included in the Class Notice and posted on the Settlement Website. *Id.*

In conclusion, the Notice Program met the requirements of due process, Fed. R. Civ. P. 23, and the Northern District's Procedural Guidance for Class Action Settlements, provided the best notice that was

practicable under the circumstances, and incorporated contemporary media and best practices to alert and engage the participation of Class Members in the proposed Settlement. *Id.* ¶ 39.

## V.    LEGAL STANDARD FOR FINAL APPROVAL

To grant final approval of a settlement, "Fed. R. Civ. P. 23(e) requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (internal citations and quotations omitted). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Id.* Courts in the Ninth Circuit have traditionally used a multi-factor balancing test to analyze whether a given settlement is fair, adequate, and reasonable. *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). That test includes the following factors: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Id.*.

Moreover, to determine whether the settlement is "adequate" the Court must "balance the 'proposed award of attorney's fees' vis-à-vis the 'relief provided for the class.'" *Briseno*, 998 F.3d at 1023-24 (quoting Fed. R. Civ. P. 23(e)(2)(c)(iii)). To scrutinize attorneys' fees arrangements, district courts should apply the factors established in *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935 (9th Cir. 2011). *Id.* at 1026. The "red flags" identified in *Bluetooth* that may lead to a determination that the settlement is inadequate are: (1) when class counsel receives "'a disproportionate distribution of the settlement'"; (2) when there is a clear sailing provision "under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee"; and (3) when the settlement contains a reverter allowing unawarded fees to return to the defendant and not the class. *Id.* at 1023 (quoting *Bluetooth*, 654 F.3d at 947).

The proposed Settlement meets all the requirements for final approval.

## VI.    THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE.

### A.    The Circumstances of the Settlement Show Its Reasonableness.

Generally, heightened scrutiny applies if settlement is achieved prior to certification of a litigated class. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). But courts have noted that certain factors obviate the concerns that lead to imposition of a higher standard, such as where the settlement is achieved prior to certification but after extensive discovery. *See Banks v. Nissan N. Am., Inc.*, 2015 WL 7710297, at *8 (N.D. Cal. Nov. 30, 2015) ("[U]nlike most pre-certification cases, extensive discovery has been conducted in this case, lessening the concern over informational deficiencies between the parties."). The Court should conclude this settlement is fair because (1) it is the result of arms' length negotiations, (2) there has been investigation and discovery sufficient to permit Class Counsel and the Court to act intelligently, and (3) Class Counsel are experienced in similar litigation. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (stating that the Ninth Circuit "put[s] a good deal of stock in the product of an arm's-length, non-collusive, negotiated resolution"); *see also In re Bluetooth*, 654 F.3d at 967 ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation.").

### 1.    The Settlement was negotiated at arm's length.

The Settlement was negotiated at arm's length during an all-day mediation session before Randall Wulff followed by weeks of negotiating specific terms of the agreement. Counsel Decl. ¶¶ 22-24. *See Adams v. Inter-Con Sec. Sys. Inc.*, No. C-06-5428 MHP, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."). Additionally, the Parties did not discuss attorneys' fees or service awards until after they had agreed upon the material terms of the Settlement. Counsel Decl. ¶ 25. Based on the Court's comments at the initial preliminary approval hearing, the Parties then negotiated at arm's length the Amended Settlement Agreement. *Id.* ¶ 27. Thus, nothing should disturb the Court's preliminary determination that the Settlement is the product of informed, hard-fought discussions and negotiations between Plaintiffs and Meta.

### 2.    The Settlement followed extensive and contentious discovery.

In advance of mediation, the Parties engaged in and almost completed extensive fact discovery and began working with experts to evaluate the highly technical evidence and calculate damages. *Id.* ¶ 17-21, 23. Moreover, Plaintiffs requested, and Meta produced, internal data that the Parties used to make a reasonable estimate of the number of Class Members. *Id.* Class Counsel has litigated and settled other cases involving similar factual and legal issues and understands what information is critical to determine membership in the Settlement Class and how to calculate damages. *Id.* The Parties' vigorous negotiation of the claims in this action evidence an absence of collusion and the presence of fairness and good faith. *See Banks*, 2015 WL 7710297, at *8 ("[U]nlike most pre-certification cases, extensive discovery has been conducted in this case, lessening the concern over informational deficiencies between the parties.").

### 3.    Experienced Class Counsel negotiated the Settlement.

Class Counsel have extensive experience in complex consumer class litigation, particularly data privacy cases. Based on their experience, including comparable cases that they have settled, Class Counsel concluded that the Settlement provides exceptional results for the class while sparing the class from the uncertainties of continued and protracted litigation. Counsel Decl. ¶ 44.

### B.    The Settlement is Adequate Under *Briseno*.

The Settlement Agreement reached by the parties here is adequate in accordance with *Briseno*, 998 F.3d at 1026-28. Namely, it avoids all of the red flags of a class settlement discussed in *Bluetooth*. First, as discussed in more detail in the Plaintiffs' August 31, 2023 Motion for Attorney's Fees, Class Counsel do not receive a disproportionate amount of the Settlement Fund when compared to the benefit to the class. Rather, Class Counsel seek a fee of 25% of the common fund, which amounts to approximately a 1.17 multiplier of their lodestar, well within the range of reasonableness in this district. *See generally* Dkt. No. 200, 201. Second, the Settlement Agreement does not contain a clear-sailing provision. Finally, under no circumstances will any of the Settlement Fund revert to Meta.

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:18-cv-6793-JD

### C.    Additional Criteria Favor Final Approval of the Settlement.

The Court must independently analyze the Settlement to determine whether it is in the best interests of the class, considering:

> [t]he strength of plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (quoting *Hanlon*, 150 F.3d at 1026). Each of these factors weighs in favor of finally approving the Settlement.

#### 1.    The Settlement provides substantial relief to the Class.

This Settlement saves the parties the unnecessary additional expense of briefing and likely appealing class certification as well as trial and provides Plaintiffs with more timely compensation for their injuries. This Settlement provides for a $37.5 million common fund and amounts to more than 50% of a possible recovery under a nominal-damages theory. Counsel Decl. ¶¶ 31. The Settlement Agreement provides that the fund will be used to cover (1) monetary payments to Class Members on a *pro rata* basis, or in the alternative payment to *Cy Pres* Recipients, (2) all Administrative Costs, and (3) any Fee and Expense Award or Service Awards approved by the Court. *See* SA ¶¶ 61-70. Although the class size is large, $37.5 million is a substantial settlement that compares favorably to relief the Class might have gotten at trial. For these reasons, the Settlement negotiated by Class Counsel provides substantial relief to the Class.

#### 2.    The Settlement eliminates the risk of zero or significantly delayed recovery.

The Settlement is fair, adequate, and reasonable in light of the strengths and risks of Plaintiffs' case. The parties are in serious disagreement on the merits of this highly technical case. Plaintiffs believe that their claims are meritorious and that they would prevail if this case proceeded to trial. Meta contends that Plaintiffs' claims are unfounded, denies liability, and has shown a willingness to litigate vigorously. Should this case proceed in litigation, Plaintiffs face the risk that their claims could be dismissed or narrowed by a motion for summary judgment, at trial, or on subsequent appeal. Plaintiffs also face both the risk that class certification could be denied and challenges with respect to proving damages based on the discovery obtained in the case.

Even if Plaintiffs were to prevail at trial, any recovery would likely be delayed for a year or more by appeals. Plaintiffs' case became all the riskier once the Court dismissed the Class's statutory damages claims. While continued litigation presents serious risks, the Settlement provides immediate and substantial benefits to Class Members whose claims arose in the time period from January 2015 to April 2018. It is "plainly reasonable for the parties at this stage to agree that the actual recovery realized, and risks avoided here outweigh the opportunity to pursue potentially more favorable results through full adjudication." *Dennis v. Kellogg Co.*, 2013 WL 6055326, at *3 (S.D. Cal. Nov. 14, 2013). Moreover, the risk of maintaining class action status through trial supports approval of the Settlement. Counsel Decl. ¶ 45. The Class has not yet been certified, and Meta will oppose certification if the case proceeds. Plaintiffs "necessarily risk losing class action status." *Grimm v. Am. Eagle Airlines, Inc.*, 2014 WL 12746376, at *10 (C.D. Cal. Sept. 24, 2014).

### 3. The Settlement compares favorably to potential relief.

The Common Fund of $37,500,000 is an excellent recovery for the Class, representing approximately 53% of what Plaintiffs could have recovered under a nominal damages theory and will result in meaningful payments of about $29 for each Class Member who submits a claim. Counsel Decl. ¶ 33; Guideline 1(c), (e), (f). As detailed above, Plaintiffs face considerable risk in pursuing their disgorgement damages theory. Considering the difficulties and expenses Class Members would face to pursue individual claims, and the likelihood that they might be unaware of their claims—which cover a time period from 2015 to early 2018— this Settlement Amount represents an excellent result for the class. Counsel Decl. ¶ 31. The Settlement is on par with or better than other settlements involving collection and use of personal data without consent. *See* Appx. A to Dkt. No. 188; Guideline 11.

### 4. The Settlement enjoys overwhelming Class support.

The fact that only 106 putative class members excluded themselves from the Settlement Class is a strong indication of class support. Weisbrot Decl ¶ 37. Additionally, while the time to object has not yet expired, there have been no objections to date. *Id.* ¶ 38.

### 5. The Settlement treats Class Members equitably relative to each other.

The settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). The *pro rata* allocation of the Settlement is fair and reasonable because it provides equal relief to all Class

Members who make a claim and is consistent with the distribution of funds in other settlements of common fund class cases. *See, e.g.*, *In re Facebook Biometric Info. Privacy Litig.*, 522 F.Supp.3d 617, 629 (N.D. Cal. 2021) (distribution that would provide "pro rata" share of common fund treated class members equitably to one another and "weigh[ed] in favor of final approval").

The Parties believe that if the Settlement Proceeds are distributed, Class Members will receive a significant payment of about $29. However, should the Court determine that distribution to the *Cy Pres* Recipients is appropriate, all Class Members will still be treated the same. *See, e.g.*, *Fraley*, 966 F. Supp. 2d at 943 (approving similar settlement structure); *In re Google Inc. St. View Elec. Commc'ns Litig.*, 21 F.4th at 1111 (explaining that *cy pres* provisions are tools for "distribut[ing] unclaimed or non-distributable portions of a class action settlement fund to the 'next best' class of beneficiaries"), *cert. denied sub nom. Lowery v. Joffe*, 214 L. Ed. 2d 25, 143 S. Ct. 107 (2022).

### D. Any *Cy Pres* Award Will Benefit the Class.

Should the Court determine that the distribution to Class Members is not economically or administratively feasible, an award of the Settlement Proceeds by the Court to *Cy Pres* Recipients will benefit the Class. The *Cy Pres* Recipients identified by the Parties satisfy the requirement that there be "a driving nexus between the plaintiff class and the cy pres beneficiaries." *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011). The proposed *Cy Pres* Recipients are organizations that advocate for consumer data privacy goals aligned with the Class Members' interests at stake in this case. The identified organizations advance the Class Members' interests through policy advocacy, educational programs, and practitioner trainings aimed at ensuring consumers are informed about their online choices and that there exist better safeguards against companies' abuse of consumers' rights and data. *See* Dkt. No. 190. For this reason, an award to the *Cy Pres* Recipients would benefit the Class.

### VII. THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES.

The Parties agreed to certification of the Settlement Class, the Court conditionally certified it, and the Court should now certify it at final approval pursuant to Fed. R. Civ. P. 23(a) and b(3). The Settlement Class is numerous—tens of millions of Facebook users received notice in this case. There are common issues concerning Meta's practices and policies that predominate over individual issues. Indeed, class-wide

resolution is the only practical method of addressing the alleged violations at issue in this case. The Settlement Class's claims here depend on the common contention that Meta breached its agreement with them by inferring and collecting their location from their IP addresses. The Settlement Class Representatives' claims are typical of the claims of Class Members because they arise from the same agreement with and conduct by Meta. Moreover, Plaintiffs more than adequately performed their duties as class representatives and do not possess any conflict of interest with the Class Members. As demonstrated in Plaintiffs' Motion for Award of Attorneys' Fees, Expenses, and Service Awards, (Dkt. Nos. 200, 201), also set to be heard at the final approval hearing, Class Counsel have deep experience in complex data privacy litigation, zealously prosecuted the putative Class's claims, have adequately represented the Settlement Class to date, and are well qualified to represent the Settlement Class. Finally, class treatment is superior because individual claims are small, the Parties agreed to certification of the Settlement Class (SA ¶ III), the Court conditionally certified it, and the Court should now certify it at final approval.

## VIII.        CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court (1) grant this Motion, (2) finally approve the proposed Settlement, (3) affirm the certification of the Settlement Class for settlement purposes only, (4) affirm their appointment as Settlement Class Representatives, (5) affirm the appointment of Sabita J. Soneji and Barrett J. Vahle as Class Counsel, (6) retain jurisdiction over this matter to resolve issues related to interpretation, administration, implementation, and enforcement of the Settlement, and (7) enter Final Judgment dismissing this action. By the separate motion filed on August 31, 2023, Plaintiffs also request that the Court grant a benchmark fee of 25% percent of the Common Fund, or $9,375,000, reimbursement of reasonable litigation expenses in the amount of $322,464.95 (subject to being updated before the final approval hearing), and service awards of $5,000 to each of the five Class Representatives.


Dated: September 11, 2023                    Respectfully Submitted,

                                             _/s/ Sabita J. Soneji_
                                             SABITA J. SONEJI (SBN 224262)
                                             ssoneji@tzlegal.com
                                             **TYCKO & ZAVAREEI LLP**
                                             The Tower Building

1970 Broadway, Suite 1070
Oakland, California 94612
Telephone: (510) 254-6808

BARRETT J. VAHLE (*pro hac vice*)
vahle@stuevesiegel.com
JILLIAN R. DENT (*pro hac vice*)
dent@stuevesiegel.com
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: (816) 714-7100

*Settlement Class Counsel*

FRANKLIN D. AZAR (*pro hac vice*)
azarf@fdazar.com
PAUL R. WOOD (*pro hac vice*)
woodp@fdazar.com
MICHAEL D. MURPHY (*pro hac vice*)
murphym@fdazar.com
**FRANKLIN D. AZAR &
ASSOCIATES, P.C.**
14426 East Evans Avenue
Aurora, CO 80014
Telephone: (303) 757-3300

IVY T. NGO (SBN 249860)
ingo@fnf.law
**FREEDMAN NORMAND
FRIEDLAND LLP**
1 SE 3rd Avenue, Suite 1240
Miami, FL 33131
Telephone: (305) 971-5943
Facsimile: (646) 392-8842

*Counsel for Plaintiffs and the Class*